# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2013-1433

MRC INNOVATIONS, INC.,

*Plaintiff-Appellant,*

v.

HUNTER MFG., LLP,

*Defendant-Appellee,*

and

CDI INTERNATIONAL, INC.

*Defendant-Appellee.*

Appeal from the United States District Court for the Northern District of Ohio in Case No. 12-CV-0684, Judge Patricia A. Gaughan.

---

# BRIEF OF APPELLANT, MRC INNOVATIONS, INC.

---

**RANDOLPH E. DIGGES, III (OH# 0059298)**
**ROBERT A. SIDOTI (OH# 0069700)**
*Rankin, Hill & Clark LLP*
23755 Lorain Road, Suite 200
North Olmsted, OH 44070
Tel: (216) 566-9700
Fax: (216) 566-9711
digges@rankinhill.com
sidoti@rankinhill.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTEREST

The undersigned counsel for Appellant certifies the following:

1.    The full name of every party represented by me is:

MRC Innovations, Inc.

2.    The name of the real party in interest represented by me is:

MRC Innovations, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

None.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:

Rankin, Hill & Clark LLP
    Randolph E. Digges, III
    Robert A. Sidoti
    Jonathan A. Withrow

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................................. i

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ v

STATEMENT OF RELATED CASES ................................................................ 1

JURISDICTIONAL STATEMENT .................................................................... 1

INTRODUCTION ................................................................................................ 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................ 4

STATEMENT OF THE CASE ............................................................................ 4

STATEMENT OF THE FACTS ......................................................................... 6

SUMMARY OF ARGUMENT .......................................................................... 11

ARGUMENT ...................................................................................................... 12

    I.       APPLICABLE LAW ...................................................................... 12

          A.     This Court's Standard of Review ......................................... 12

          B.     The Summary Judgment Standard ....................................... 12

          C.     The Standard for Invalidating a Patent ............................... 13

          D.     The Application of 35 U.S.C. §103(a) to Design Patents ....... 13

II.    THE DISTRICT COURT'S LEGAL ERRORS REGARDING
       THE VALIDITY OF THE '488 PATENT REQUIRE
       REVERSAL OF THE FINAL JUDGMENT AND REMAND
       FOR TRIAL. .................................................................... 16

       A.    The District Court Erred In Concluding That The Eagles
             Jersey Could Serve As A Reference To Something In
             Existence, The Design Characteristics Of Which Are
             Basically The Same As The Claimed Design. ........................ 16

       B.    The District Court Erred In Concluding That The V2
             And Sporty K9 Jerseys Constituted "Secondary"
             References That Could Be Used To Modify The Eagles
             Jersey To Create A Design That Has The Same Overall
             Visual Appearance As The Claimed Design. ......................... 22

       C.    The District Court Erred In Failing To Conclude That
             There Were Secondary Considerations Supporting A
             Finding of Non-Obviousness Insofar As The '488 Patent
             Is Concerned. ........................................................ 28

       D.    The District Court Erred In Discounting Evidence
             Submitted By MRC That Shows That In The Field Of
             Fashion Design, Subtle Differences In Ornamentation
             Are Sufficient To Affect the Overall Visual Appearance
             of A Design And Thus Support A Finding Of
             Nonobviousness And Patentability. ................................. 30

III.   THE DISTRICT COURT'S LEGAL ERRORS REGARDING
       THE VALIDITY OF THE '487 PATENT REQUIRE
       REVERSAL OF THE FINAL JUDGMENT AND REMAND
       FOR TRIAL. .................................................................... 33

       A.    The District Court Erred In Concluding That The Sporty
             K9 Jersey Could Serve As A Reference To Something In
             Existence, The Design Characteristics Of Which Are
             Basically The Same As The Claimed Design. ........................ 33

B.    The District Court Erred In Concluding That The V2 And
      Eagles Jerseys Constituted "Secondary" References
      That Could Be Used To Modify The Sporty K9 Jersey To
      Create A Design That Has The Same Overall Visual
      Appearance As The Claimed Design. .................................... 37

C.    The District Court Erred In Discounting Evidence
      Submitted By MRC That Shows That In The Field Of
      Fashion Design, Subtle Differences In Ornamentation Are
      Sufficient To Affect the Overall Visual Appearance of A
      Design And Thus Support A Finding Of Nonobviousness. ... 39

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................ 40

ADDENDUM ................................................................. 41

    Judgment of May 17, 2013 ............................................ 42

    Memorandum Opinion and Order of January 31, 2013 ............................ 43

CERTIFICATE OF SERVICE ................................................. 64

CERTIFICATE OF COMPLIANCE ................................................. 65

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................................... 12, 13

*Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314 (Fed. Cir. 2012) ......... 20-22, 37

*Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718 (Fed. Cir. 2002)..................... 13

*Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564 (6th Cir. 2008)........................ 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................... 12

*Durling v. Spectrum Furniture Co.*, 101 F.3d 100 (Fed. Cir. 1996) ......... 14, 19, 33

*Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955 (Fed. Cir. 2001) .............................. 13

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ................................... 14, 16, 28, 30

*Grober v. Mako Prods., Inc.*, 686 F.3d 1335 (Fed. Cir. 2012)............................. 12

*In re Borden*, 90 F.3d 1570 (Fed Cir 1996) ............................................... 15

*In re Carter*, 673 F.2d 1378 (C.C.P.A. 1982)...................................... 19, 26

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063 (Fed. Cir. 2012) ....................................... 16

*In re Harvey*, 12 F.3d 1061 (Fed. Cir. 1993)........................................... 19

*In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982)........................................ 14, 15

*Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233 (Fed. Cir. 2009)............................................................... 15, 27

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342 (Fed. Cir. 2012).............................................................. 28

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007)............................................. 14

*L.A. Gear, Inc. v. Thom McAn Shoe Company*, 988 F.2d 1117
(Fed. Cir. 1993) ...................................................................... 15, 24, 38

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............ 12

*Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372 (Fed. Cir. 2012)........................... 16

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007)................................. 14

*P&G v. Teva Pharms. USA, Inc.,* 566 F.3d 989 (Fed. Cir. 2009) ........................ 14

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009)...... 14

**Statutes**

28 U.S.C. §§1331 ..................................................................................... 1

28 U.S.C. §1338(a) .................................................................................. 1

28 U.S.C. §1295(a)(1) .............................................................................. 1

35 U.S.C. §103(a) ................................................. 3-5, 11, 13, 14, 25, 30

35 U.S.C. §282 ...................................................................................... 13

**Rules**

Fed. R. Civ. P. 30(b)(6)........................................................................... 4

Fed. R. Civ. P. 56(a).......................................................................... 12, 28

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action or proceeding in the lower court has previously been before this or any other appellate court.  Counsel for Plaintiff-Appellant, MRC Innovations Inc. ("MRC"), is not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction in this design patent infringement case under 28 U.S.C. §§1331 and 1338(a).  The District Court issued its final judgment on May 17, 2013, and Appellant timely appealed on May 29, 2013.  This Court has exclusive jurisdiction pursuant to 28 U.S.C. §1295(a)(1).

## INTRODUCTION

MRC is the owner, by assignment, of U.S. Design Pat. Nos. D634,488 S ("the '488 Patent") (A29-A34) and D634,487 S ("the '487 Patent") (A23-A28), which claim ornamental designs for a football jersey and a baseball jersey for a dog, respectively, that were invented by Mark R. Cohen ("Cohen").  Initially, Defendant-Appellee, Hunter MFG. LLP ("Hunter"), purchased jerseys that embodied the designs from another of Cohen's companies, Fun-in-Games, Inc.

1

("FiG"). However, when Cohen complained to Hunter of slow payment issues and threatened to cease shipping jerseys to Hunter in the future, Hunter provided samples of both FiG jerseys to Defendant-Appellee, CDI International Inc. ("CDI"), and later awarded CDI a contract to manufacture and ship jerseys to Hunter that unabashedly copied MRC's designs. The following illustrations of the football jerseys for a dog make clear what this case is about:



The jerseys produced by CDI for Hunter are so imitative of the jerseys produced by MRC's licensee that Hunter's President could not tell them apart when

asked to do so (A198-A200). And CDI's self-designated representative testified that it would also be difficult for him to do (A205).

Promptly after MRC identified that it was CDI that was supplying Hunter with copies of the patented football jersey, MRC filed a Complaint against Hunter and CDI for willful infringement of the '488 Patent and sought a preliminary injunction against the importation and sale of the product. The District Court denied the injunction without holding an evidentiary hearing. A few months later, after MRC added claims against Hunter and CDI for infringement of the '487 Patent, the District Court granted summary judgment in favor of Appellees on grounds that both patents in suit are invalid under 35 U.S.C. §103(a) (A2-A22). The granting of summary judgment to Appellees is the subject of this appeal.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Did the District Court err in granting summary judgment in favor of Appellees in holding that the '488 Patent is invalid under 35 U.S.C. §103(a)?

2.    Did the District Court err in granting summary judgment in favor of Appellees in holding that the '487 Patent is invalid under 35 U.S.C. §103(a)?

## STATEMENT OF THE CASE

This case commenced on March 20, 2012, when MRC filed a Complaint in the District Court against Hunter and CDI for willful infringement of the '488 Patent.    After obtaining discovery sufficient to confirm that CDI was also supplying Hunter with copies of the FiG baseball jersey for a dog, MRC filed an amended pleading on September 10, 2012, which further asserted a claim against Hunter and CDI for willful infringement of the '487 Patent (A74).   Hunter and CDI filed counterclaims against MRC seeking declaratory judgments and other relief.

On October 10, 2012, Hunter and CDI filed a joint motion for summary judgment as to all of MRC's claims asserted against them.   MRC opposed the joint motion based, in part, upon the Declaration of Cohen and also, in part, based on portions of the depositions of Thomas Neth, Hunter's President, and Denis Casey, CDI's Rule 30(b)(6) designee.   On January 31, 2013, the District Court denied MRC's request for oral argument and entered a Memorandum Opinion and Order

4

(A2-A22), which granted summary judgment in favor of Hunter and CDI on grounds that both of the design patents in suit were invalid under 35 U.S.C. §103(a).

After seeking leave to conduct additional discovery related to their unresolved counterclaims against MRC, and then conducting such discovery, Hunter and CDI elected to filed a joint motion to voluntarily dismiss their counterclaims on May 10, 2013 rather than proceed to trial thereon. On May 17, 2013, the District Court granted the joint motion to dismiss the counterclaims and entered a final, appealable Judgment Entry (A1), which made reference to and incorporated the prior Memorandum of Opinion and Order dated January 31, 2013 (A2-A22).

Appellant timely filed its Notice of Appeal from the District Court's final judgment on May 29, 2013. No cross-appeals have been filed.

## STATEMENT OF THE FACTS

The District Court's Memorandum of Opinion and Order of January 31, 2013 succinctly recites most of the facts giving rise to this case as follows:

> Plaintiff MRC Innovations, Inc. (MRC) is the owner by written assignment of all right, title, and interest to two design patents: U.S. Design Patent No. D634, 488 (the '488 patent), entitled "Football Jersey for a Dog," and U.S. Design Patent No. D634,487 (the '487 patent), entitled "Baseball Jersey for a Dog." (Second Am. Complt., Exs. A and B.) The '488 patent claims an ornamental design for a football jersey for a dog "as shown and described" in the patent. The '487 patent claims an ornamental design for a baseball jersey for a dog as "shown and described." The description in the '488 patent includes four figures depicting various views (side, front, and back) of the claimed pet football jersey and states that "[t]he material of the football jersey is primarily of a mesh and interlock fabric." The description in the '487 patent likewise includes four figures depicting various views of the claimed pet baseball jersey and states that "[t]he material of the baseball jersey is primarily of mesh fabric." Both patents issued on March 15, 2011 upon applications filed with the United States Patent and Trademark Office (USPTO) on September 8, 2010 by Mark Cohen. Cohen is the named inventor of the patents and is the principal shareholder of MRC. Cohen assigned both patents to MRC.

> For over twenty years, Hunter has been a retailer of licensed sports consumer products. (Doc. 9, Neth Dec.) Hunter has sold pet jerseys since at least as early as 2006. (Neth Dec., ¶3.) Prior to the issuance of the design patents in suit, and in particular prior to September 9, 2009, Cohen – through companies with which he was/is affiliated – supplied Hunter with pet jerseys for dogs that Hunter sold.

> For example, Hunter sold a so-called "V2" pet jersey, depicted on page 2 of defendants' memorandum, prior to September 9, 2009. (Neth Dec., ¶1.) Hunter purchased the V2 pet jersey, which was manufactured in and imported from China, from Stephen Gould Corporation. Mark Cohen was a salesperson for Stephen Gould

Corporation at least as early as 2008. (Neth Dec., ¶¶2, 3.)  Hunter sold V2 jerseys purchased from Stephen Gould to customers within the United States prior to September 9, 2009. (Id. at ¶4.)

Beginning on or about September 2008, Cohen supplied V2 pet jerseys to Hunter through Fun-in-Games, Inc. (FiG), another company with which Cohen had a relationship.  Cohen states that FiG normally supplied pet jerseys to Hunter in specified colors, and Hunter then applied "transfers" to the pet jerseys for particular markets.  For example, red pet jerseys supplied by FiG would be decorated with Ohio State logos or St. Louis Cardinals logos.  Orange pet jerseys might be decorated with Cleveland Browns or Cincinnati Bengals logos.  In some instances, FiG applied the transfers itself and shipped the finished product to Hunter.

In addition, between the years of 2007 and 2009, Cohen also designed and supplied to Hunter, through FiG, a pet football jersey developed by Hunter for a special NFL program. (Cohen Dep. at 47-48.)  A sample of this jersey is depicted on page 3 of defendants' memorandum.  It is a green pet jersey bearing a Philadelphia Eagles logo.  Cohen arranged for this "Eagles" pet football jersey to be manufactured in China for Hunter sometime prior to July 30, 2009. (Id. at 50.)  Hunter sold the "Eagles" pet jersey through third-party retailers (Wal-Mart and PetSmart) prior to July 30, 2009.

Cohen asserts that in 2009, he designed another pet jersey, a so-called "V3" jersey, which FiG subsequently also supplied to Hunter. (Cohen Dec., ¶12.)  The "V3" pet jersey is depicted on page 5 of Cohen's Declaration bearing a Kentucky Wildcats logo. (Cohen Dec., p. 5.)  Hunter began purchasing the V3 jersey from FiG sometime after September 8, 2009.

In December 2010, "issues" arose between Hunter and Cohen, including that Hunter was experiencing financial difficulties making Hunter "slow" at times to pay FiG.  For this reason, Cohen informed Hunter that he did not want to do business with Hunter any longer. Cohen asserts, however, that FiG continued to supply Hunter with pet jerseys "for several months thereafter." (Cohen Dec., ¶19.)  Hunter meanwhile sought proposals from other companies requesting that they manufacture and supply it with pet jerseys like the V3 jersey.

Ultimately, Hunter contracted with another supplier, CDI, to manufacture and supply Hunter with pet jerseys.

After the '487 and '488 patents issued on March 15, 2011, Cohen "assigned" both patents to MRC, which granted a license to FiG to produce the patented football and baseball pet jerseys. (Id., ¶22.)  Cohen asserts that after the patents were issued, Hunter continued to buy some V3 pet football jerseys from FiG, including those that bore labels marking them as patented.  Hunter did not purchase any baseball jerseys from FiG after the '487 patent issued although Hunter had purchased pet baseball jerseys from FiG prior to the issuance of the patents. (Id. at ¶¶18, 22, 23.)  By December 2011, FiG "had stopped shipping V3 Jerseys to Hunter" completely.

Plaintiff filed this lawsuit against Hunter and CDI on March 20, [2012], alleging infringement of the '487 and '488 patents. (Second Am. Complt., Doc. 37.)  Plaintiff's Second Amended Complaint alleges that defendants have infringed the '488 and '487 patents by importing into the United States, offering to sell and selling, either directly or through third party retailers such as Petco, pet apparel (in particular, football and baseball jerseys for dogs) that are substantially the same as the designs covered by the '487 and '488 patents.  As evidence of such infringement, plaintiff attaches to its complaint pages from Hunter's website and the website of third-party retailer Petco (through which Hunter also sells pet jerseys).  These pages depict pet football and baseball jerseys for dogs currently being offered for sale by Hunter and supplied by CDI. (Sec. Am. Complt., Exs. C-H)  Plaintiff contends these pet football and baseball jerseys have designs that are substantially the same as the designs covered in the '488 and '487 patents and infringe the patents.

(A2-A6 - footnotes omitted - filing date of Complaint corrected)

The District Court's recitation of the facts, however, does not mention that

CDI copied the jerseys supplied by FiG to Hunter so identically that it is nearly

impossible to determine which company manufactured them, even upon close

inspection.  Although Hunter's president, Neth, denied under oath that the V3 jerseys supplied by CDI were "copies" of V3 jerseys supplied by FiG, Neth could not tell them apart when asked to do so (A198-A200).  Cohen also could not tell them apart (A213).  And CDI's representative, Denis Casey, testified that it would also be difficult for him to do (A205).  The same near exactness of copying is also true for the accused baseball jerseys for a dog produced by CDI for Hunter.

The District Court's recitation of facts also omits the fact that Hunter knew that Cohen had filed patent applications covering the design of the V3 jersey and the baseball jersey for a dog when it made the decision to send samples of jerseys embodying the designs to CDI to be copied.  The evidence of record shows that on September 7, 2010, Cohen advised one of Hunter's principals, John T. Fitzgerald ("Fitzgerald"), of his intention to file patent applications on his designs for the pet jerseys that FiG was supplying to Hunter, including the V3 jersey (A211).  On that same date, Fitzgerald (with a copy to the other principal of Hunter, Dan Campbell) sent an e-mail to Cohen that referenced Cohen's intention to file patent applications (A211; A227).  And on December of 2010, Hunter's President, Thomas Neth, had a telephone conversation with Cohen, which included a discussion of Cohen's design patent applications (A212).  Thus, the evidence of record shows that although Hunter had actual knowledge of Cohen's then-pending patent applications covering his designs for pet jerseys, Hunter nevertheless sent a Request for Proposal

9

("RFP") to two companies requesting that they manufacture the V3 jersey Cohen had designed and supplied to Hunter through FiG, all without Cohen's knowledge or consent (A196-A197; A204; and A212). The RFP's sent by Hunter included actual samples of jerseys that had been produced by FiG and supplied to Hunter (A197; and A204). Hunter could have sent CDI samples of the V2 jersey or other unpatented pet jerseys jerseys. But Hunter chose to send the V3 jersey to CDI to be copied notwithstanding its knowledge of the pending design patent applications.

Finally, the District Court's recitation of facts does not identify how many jerseys embodying the patented designs have been imported into the United States by CDI, delivered to Hunter and presumably sold in U.S. commerce after the issue date of the patents-in-suit. One of the primary reasons for this omission is that in their answers to MRC's first set of interrogatories served on May 2, 2012, CDI and Hunter designated the substantial amount of V3 jerseys imported, on hand and/or sold by them as of that date as "Confidential - Attorney's Eyes Only" and thereafter declined to supplement their responses, particularly after the District Court's grant of summary judgment in their favor. Sales of both accused dog jerseys continued during this litigation. And, MRC thus does not know the exact quantity of V3 jerseys that have been imported into the United States by CDI and/or sold by Hunter to date, and likewise does not know the exact quantity of baseball jerseys for a dog that have been imported by CDI and/or sold by Hunter to date.

## SUMMARY OF ARGUMENT

The District Court improperly construed the evidence of record in this case and erred in granting summary judgment in favor of Hunter and CDI on grounds that both the '488 Patent and the '487 Patent are invalid under 35 U.S.C. §103(a). The evidence of record, when properly construed, demonstrates that Hunter and CDI failed to meet their burden to prove by clear and convincing evidence that the '488 Patent and the '487 Patent are invalid under 35 U.S.C. §103(a) or, at the very least, such evidence demonstrates that there are genuine issues of material fact that preclude the entry of judgment in favor of Hunter and CDI as a matter of law.

## ARGUMENT

## I.    APPLICABLE LAW

### A.    This Court's Standard of Review

This Court reviews a district court's decision concerning summary judgment under the law of the regional circuit. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012).   The Sixth Circuit reviews a district court's grant of summary judgment *de novo*.  *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 569 (6th Cir. 2008).

### B.    The Summary Judgment Standard

In deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A

factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

### C.    The Standard for Invalidating a Patent

A patent is presumed valid under 35 U.S.C. §282.  Consequently, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955, 962 (Fed. Cir. 2001); see also *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002) (holding that a party seeking to establish particular claims as invalid must overcome the presumption of validity in 35 U.S.C. §282 by clear and convincing evidence).

### D.    The Application of 35 U.S.C. §103(a) to Design Patents

A patent is obvious, and, therefore, invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35

13

U.S.C. §103(a).   Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

A party seeking to invalidate a patent on the basis of obviousness must "demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so.'" *P&G. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)).   While an analysis of any teaching, suggestion, or motivation to combine elements from different prior art references is useful in an obviousness analysis, the overall inquiry must be expansive and flexible. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415, 419 (2007).

In *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380-1381 (Fed. Cir. 2009), this Court stated that:

> Our precedents teach that "the ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (citing *In re Rosen*, 673 F.2d 388, 390 (CCPA 1982)).   *Durling* explains that this general principle translates into "whether one of ordinary skill would have combined teachings of the prior art to create the same

14

overall visual appearance as the claimed design," Id. (citing *In re Borden*, 90 F.3d 1570, 1574 (Fed Cir 1996)), and that this in turn requires that "one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" Id. (quoting *In re Rosen*, 673 F.2d at 391). Once the primary reference is found, other "secondary" references "may be used to modify it to create a design that has the same overall visual appearance as the claimed design." Id. Further, these secondary references must be "'so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other.'" Id. (quoting *In re Borden*, 90 F.3d at 1575 (alteration in original)).

In *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1241 (Fed. Cir. 2009), this Court stated that:

> For design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference. Once that piece of prior art has been constructed, obviousness, like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art.

And, in *L.A. Gear, Inc. v. Thom McAn Shoe Company*, 988 F.2d 1117, 1124 (Fed. Cir. 1993), this Court stated that:

> A reconstruction of known elements does not invalidate a design patent, absent some basis whereby a designer of ordinary skill would be led to create this particular design.

15

This Court has further explained that the obviousness inquiry requires examination of all four *Graham* factors. See, e.g., *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1375 (Fed. Cir. 2012).  Indeed, this Court has held that district courts must consider all of the *Graham* factors prior to reaching a conclusion with respect to obviousness. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1076-77 (Fed. Cir. 2012) (collecting cases). At all times, the burden is on the defendant to establish by clear and convincing evidence that the patent is obvious. *Id*. at 1077-78.

## II.    THE DISTRICT COURT'S LEGAL ERRORS REGARDING THE VALIDITY OF THE '488 PATENT REQUIRE REVERSAL OF THE FINAL JUDGMENT AND REMAND FOR TRIAL.

### A.    The District Court Erred In Concluding That The Eagles Jersey Could Serve As A Reference To Something In Existence, The Design Characteristics Of Which Are Basically The Same As The Claimed Design.

In the Memorandum of Opinion and Order of January 31, 2013, the District Court stated that the Eagles jersey was sufficient to constitute "a single reference" that is "something in existence, the design characteristics of which are basically the same as the claimed design" (A15).  On this point, the District Court stated that:

> The Eagles jersey is clearly a pet football jersey having an opening at the collar portion for the head of the pet, two openings and sleeves stitched to the body of the jersey on either side for limbs of the dog, and a body portion on which a football logo is applied (extending

16

from the top of the jersey to the bottom of the jersey and covering a
portion of the body of the pet).  As Cohen himself states in his
declaration, the Eagles jersey is made "primarily of a mesh and
interlock fabric," exactly what is claimed in the description of the
'488 patent. (*See* Cohen Dec. at ¶10. '488 Patent, Description.)  In
addition, the Eagles jersey exhibits ornamental surge stitching, which
plaintiff emphasizes exists in the claimed design. The only differences
identified by the plaintiff between the Eagles jersey and the pet
football jersey of the '488 patent relate to the V-neck collar depicted
in the patented design, additional ornamental surge stitching
appearing on the claimed design (*i.e.*, unlike the Eagles jersey, the
claimed design uses ornamental surge stitched down the *rear* portion
of the jersey in addition to ornamental serge stitching at the top of the
jersey and in between the sleeves), and to "an interlock fabric panel"
that appears on the side portion of the claimed design.

(A15-A16)

The three differences identified by the District Court above were highlighted

with red arrows in a composite image included with MRC's memorandum in

opposition to Appellees' joint motion for summary judgment (A179).  Arrow "A"

points to an interlock fabric panel that is present in the claimed design, which is

not present in the Eagles jersey (A219).  Arrow "B" points to a V-neck collar,

which is present in the claimed design and which is not present in the Eagles jersey

because the Eagles jersey features a crew neck (A220).  And, arrow "C" points to a

vertical line of ornamental surge stitching, which appears on the rear of the

claimed design and which is not present in the Eagles jersey (A219-A220).  The

composite image is reproduced for the Court's convenience on the following page:

17

The '488 Patent - Fig. 2 (Front)



The '488 Patent - Fig. 4 (Back)



Eagles Jersey - Front



Eagles Jersey - Back



MRC respectfully submits that the District Court clearly erred in focusing on the very broad similarities between the Eagles jersey and the patented design (namely that they both have "an opening at the collar portion for the head of the pet, two openings and sleeves stitched to the body of the jersey on either side for limbs of the dog, and a body portion on which a football logo is applied") rather

than upon whether the Eagles jersey creates the same visual impression as the patented design, which it clearly does not.

As this Court has noted, prior art must create "basically the same" visual impression as the patented design to serve as a primary reference. *Durling*, 101 F.3d at 103.  The "basically the same" test requires consideration of the "visual impression created by the patented design as a whole." *Id*.  A reference does not convey "basically the same" visual impression as a patented design when there are "significant differences" between the two. *Id*. at 104.  This Court has noted that "major modifications" cannot be required to change a primary reference into the claimed design. *In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993).   And,  in  *In re Harvey*, this Court made reference to an implication made by the Court in *In re Carter*, 673 F.2d 1378, 1380 (C.C.P.A. 1982) that "if prior art designs are to be modified in more than one respect to render a claimed design obvious, then those modifications must be "*de minimis*" in nature and unrelated to the overall aesthetic appearance of the design."

Clearly, the modifications that must be made to the Eagles jersey in order for it to convey the same visual impression as the patented design are far more than *de minimis*.  A designer would have to: (1) modify the collar of the Eagles jersey to be a V-neck rather than a crew neck; (2) add ornamental surge stitching to two specific portions of the rear of the jersey only, which is not suggested in any of the

prior art reference of record; and (3) add panels made of interlock fabric on the side portions of the jersey. These multiple modifications are substantial, and not *de minimis*, and would have to be made in order to obtain a jersey that conveys the same visual impression created by the patented design as a whole.

The District Court in this case made the same error that the lower court made in *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314 (Fed. Cir. 2012), when such lower court erroneously concluded that the Fidler tablet could be considered as a primary reference in an obviousness determination with respect to U.S. Design Pat. No. D504,889 simply because both were rectangular tablets with four evenly rounded corners and a flat reflective surface for the front screen surrounded by a rim on all four sides. The prior art Fidler tablet and the patented Apple tablet are shown below (copied from this Court's opinion):



As this Court noted in its opinion in the *Apple v. Samsung* case:

> Fidler does not qualify as a primary reference simply by disclosing a rectangular tablet with four evenly rounded corners and a flat back. See *Durling*, 101 F.3d at 104 ("The error in the district court's approach is that it construed [the] claimed design too broadly."). Rather than looking to the "general concept" of a tablet, the district court should have focused on the distinctive "visual appearances" of the reference and the claimed design. Id.

*Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d at 1332.

Likewise, the Eagles jersey does not qualify as a primary reference simply by disclosing "a pet football jersey having an opening at the collar portion for the head of the pet, two openings and sleeves stitched to the body of the jersey on either side for limbs of the dog, and a body portion on which a football logo is applied" as stated by the District Court (A15-A16). There are striking differences in the visual impressions between the two jerseys when they are viewed on the whole. For example, the Eagles jersey has completely different outer peripheral lines by virtue of its crew collar, which changes the visual impression in much the same manner as the presence of tabs did in the Fidler reference at issue in the *Apple v. Samsung* case. The Eagles jersey also lacks the distinctive interlock fabric side panels of the claimed design, and does not include the same vertical ornamental surge stitching on the rear of the jersey that is present in the claimed design.

The differences between the Eagles jersey and the claimed design in this case are more significant than the differences between the Fidler reference and the patented design at issue in the *Apple v. Samsung* case. In the *Apple v. Samsung* case, one of the differences was that the glass front did not extend over the frame at the edge of the Fidler tablet. This Court stated that it would be an impermissible modification to Fidler to extend the glass over the frame at the edge of the tablet so as to arrive at a design with an overall visual impression that is "basically the same" as the patented design, notwithstanding that there were prior art references of record in that case that showed a tablet with a flat glass front. The same decision reached by this Court in the *Apple v. Samsung* case should be reached in this case. When the proper focus is made, the only conclusion that can be made is that the design characteristics of the Eagles jersey when viewed on the whole are not "basically the same" as the patented design, and thus the Eagles jersey does not convey the same visual impression as the patented design as a whole sufficient to qualify as a primary reference.

**B.**     **The District Court Erred In Concluding That The V2 And Sporty K9 Jerseys Constituted "Secondary" References That Could Be Used To Modify The Eagles Jersey To Create A Design That Has The Same Overall Visual Appearance As The Claimed Design.**

Assuming, *arguendo*, that the Eagles jersey could qualify as a primary reference, which it clearly cannot for the reasons previously indicated, the District

22

Court did not properly construe the evidence of record in concluding that the V2 and Sporty K9 jerseys could be combined with the Eagles jersey to create a design that has the same overall visual appearance as the claimed design. For the Court's convenience, images of the V2 jersey and the Sporty K9 jerseys are reproduced below:

 

V2 Jersey (A125)



Sporty K9 Jersey (A133)

23

The first portion of the District Court's analysis on the issue of whether the V2 and Sporty K9 jerseys could be combined with the Eagles jersey is quoted below:

> Taking the Eagles jersey as the primary prior art reference, the V2 and Sporty K9 jerseys are clearly "so related to the primary reference" as to suggest the application of the features of a V-neck collar and the use of non-mesh or other fabric on the side panel portions. Thus, one of ordinary skill in the art in the field of pet jersey design would have likely combined the teachings of the prior art to create the same overall appearance of the pet jersey in the claimed design.

(A16)

The obvious problem with this portion of the District Court's analysis is that there is no evidence whatsoever in the record explaining <u>why</u> a designer of ordinary skill in the art would have found it obvious to select some attributes or features of the V2 and Sporty K9 jerseys for implementation into the Eagles jersey, but not others. The District Court simply concludes, without identifying any evidence of record upon which such a conclusion could possibly be based, that "one of ordinary skill in the art in the field of pet jersey design would have likely combined the teachings of the prior art to create the same overall appearance of the pet jersey in the claimed design" (A16). This is improper.

In *L.A. Gear, Inc. v. Thom McAn Shoe Company*, 988 F.2d at 1124, this Court stated that:

> A reconstruction of known elements does not invalidate a design patent, absent some basis whereby a designer of ordinary skill would be led to create this particular design.

The required <u>basis</u> whereby a designer of ordinary skill would be led to create this particular design is completely absent in the District Court's analysis, and no such basis is set forth in any of the evidence of record. Why would a designer have found it obvious to change the collar of the Eagles jersey to a V-neck but not also, for example, change the sleeves to the design shown in the V2 jersey or change the body of the design to be substantially tubular as in the Sporty K9 jersey? Why would a designer have found it obvious to add side panels made of interlock fabric to the Eagles jersey when both the V2 and Sporty K9 jerseys include side panels made of Dazzle fabric? These questions are not addressed in the District Court's analysis, and cannot be addressed because Hunter and CDI did not submit any evidence attempting to explain why such modifications would have been made by a designer having ordinary skill in the art. The District Court clearly erred in arbitrarily selecting attributes of the V2 and Sporty K9 jerseys for incorporation into the Eagles jersey. The lack of any evidence explaining why a designer would be led to create the design requires reversal in this case.

Furthermore, the District Court's combination of the Eagles jersey and the V2 and/or Sporty K9 jerseys, while improper, still does not create a *prima facie* case of obviousness under 35 U.S.C. §103(a) because the vertical ornamental surge

stitching that appears on the rear of the patented design is not shown in any of the applied references. The District Court acknowledged that none of the prior art of record included the vertical ornamental surge stitching that appears on the rear of the patented jersey, but stated as follows:

> Furthermore, the presence of additional ornamental surge stitching on the back of the pet jersey (as is shown on the claimed design), and the positioning of a strip of non-mesh, or "interlock" fabric on the side of the claimed design, are not "substantial" differences between the claimed design and the prior art so as to create a patently distinct design. Rather, these differences between the claimed design and the prior art are at the most "*de minimis* changes which would be well within the skill of an ordinary designer in the art." See *In re Carter*, 673 F.3d 1378, 1380 (Fed. Cir. 1982).

(A16)

The District Court's characterization of the addition of ornamental surge stitching to the rear of the Eagles jersey as *de minimis*, when no prior art reference of record shows a dog jersey ornamented in this manner, is contrary to the plain meaning of the term. The salient question is not whether a designer *could* have made the modification. Obviously, the use of surge stitching in an ornamental manner is known, and any designer *could* have applied it to ornament any article of clothing at any location. But that is not question. The salient question is <u>why</u> would a designer have found it obvious to add ornamental surge stitching to two vertical seams on the rear of the modified Eagles jersey only, and not also, for

example, to the two vertical seams on the front of the modified Eagles jersey or to other location(s) on the jersey?  This question is not answered by the District Court or by the evidence of record in any manner.  MRC respectfully submits that adding any ornamental features to a single reference, which are not at all suggested by any prior art of record, is clearly more than *de minimis*, particularly in this case when the District Court was required to construe the evidence most strongly in favor of MRC in deciding whether to grant the motion for summary judgment and when Hunter and CDI had a burden to prove that the patent was invalid by clear and convincing evidence.

MRC further notes that in *Int'l Seaway Trading Corp. v. Walgreens*, this Court held that differences between the dimple patterns on the insoles of the prior art cited by the lower court and the patented design were not insignificant <u>as a matter of law</u>, and stated that "a genuine issue of material fact exists as to whether the designs would be viewed as substantially similar in the eyes of the ordinary observer armed with the knowledge of the prior art."  589 F.3d at 1243.  At the very least, the stark differences between the prior art cited by the District Court in this case, even though improperly combined, and the design shown in the '488 Patent warrant the same legal conclusion.  Summary judgment should not have been granted in favor of Appellees in this case because they are not entitled to it as a matter of law.

**C.    The District Court Erred In Failing To Conclude That There Were Secondary Considerations Supporting A Finding of Non-Obviousness Insofar As The '488 Patent Is Concerned.**

The fourth consideration in the *Graham* factors obviousness analysis is whether there are any objective indicia of nonobviousness.  In the present case, MRC submitted evidence as to at least three recognized indicia of nonobviousness, which was completely unrebutted by Appellees, namely: (1) commercial success; (2) copying; and (3) acceptance by others. See *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1367 (Fed. Cir. 2012).  First, there is evidence of record establishing that sales of the V3 jersey, which embody the patented football jersey for a dog design, were more successful on a commercial basis than the design of the V2 jersey it replaced (A211).  Second, there is evidence of record establishing that Hunter and CDI chose to copy the V3 jersey, which embodies the patented football jersey for a dog design, rather than to copy other available, non-patented designs (e.g., the V2 jersey or the Eagles jersey) or create another design of its own (A196-A197; A204; and A214-A215).  And third, there is evidence of record establishing that MRC has granted a license under the '488 Patent to an entity that is not wholly owned by MRC or its principals (A213-A214).

The District Court stated that in its Memorandum of Opinion and Order that the inventor's "statements of commercial success, copying, and licensing of his claimed design are unpersuasive to demonstrate a genuine dispute." (A17).  This is

contrary to Rule 56, which requires that the evidence be construed most strongly in favor of the non-moving party. The District Court should not have dismissed the uncontroverted secondary consideration evidence as if it did not exist.

Furthermore, if there was any evidence that could explain away the commercial success of the V3 jersey that embodies the patented design and the reasons why Appellees chose to copy it rather than to copy other available jerseys (e.g., the Eagles jersey or the V2 jersey) so as to deny MRC the inference of nonobvious that such evidence suggests, Appellees should have made it of record in this case. But they did not. Appellees simply argued that the evidence submitted by MRC should not be considered because there *could* be other causes for commercial success, such as skillful marketing of the product, and there *could* be other excuses for copying, such as contempt for the patentee's ability to enforce the patent because it is invalid. But no evidence was submitted by Appellees insofar as either of these factual issues was concerned. And this is not surprising, since there did not appear to be any changes in marketing beyond Hunter touting the V3 jersey as a "new" design in its catalog, and since the decision to copy the V3 jersey was made <u>before</u> the '488 Patent issued, making the posited "contempt for the patentee's ability to enforce the patent" justification completely inapplicable. The only reasonable inference that can be drawn from the evidence of record is that due to the commercial success of the V3 jersey, Hunter elected to

copy it rather than revert back to a less commercially successful design or attempt to create a new design of its own, which is secondary consideration evidence of nonobviousness recognized by *Graham*. Summary judgment should never be granted in favor of a party because there *could* be evidence that *could* explain away secondary consideration evidence recognized by *Graham* unless such evidence is actually made of record. And no such evidence appears in the record of this case.

> **D.**     **The District Court Erred In Discounting Evidence Submitted By MRC That Shows That In The Field Of Fashion Design, Subtle Differences In Ornamentation Are Sufficient To Affect The Overall Visual Appearance of A Design And Thus Support A Finding Of Nonobviousness And Patentability.**

On October 17, 2011, Cohen filed an application for a design patent on a hockey jersey for a dog (A221). Figures 2 and 4 of that application, as originally submitted, are reproduced below (replacement drawing figures were subsequently submitted in that application to correct errors in other drawing figures):

Hockey Jersey (front)

Hockey Jersey (rear)





FIGURE 2

FIGURE 4

In view of the Appellees' invalidity contentions asserted in this case in the spring of 2012, the V2 jersey (in the form of pages from the Hunter catalog depicting the same and a designer specification sheet), the V3 jersey (in the form of the '488 patent), the Eagles jersey (in the form of the same photographs as presented in this litigation) and other prior art was submitted to the U.S. Patent Office in Information Disclosure Statements in the design patent application for the hockey jersey for a dog (A222; A272-A273; A278-A279; A286). The U.S. Patent Examiner, who is trained to make obviousness determinations in design patent cases, considered such prior art and then issued a Notice of Allowance in the patent application that claims an ornamental design for a hockey jersey for a dog on November 15, 2012 (A229-A234). The U.S. Patent Examiner did not assert that the design of a hockey jersey for a dog as shown in the above drawing figures was

obvious in view of the V2 jersey, the Eagles jersey and/or the design for a football jersey for a dog as shown and described in the '488 Patent, alone or in combination (A222).    MRC argued below that, by analogy, the prosecution history of the hockey jersey for a dog application strongly supported a conclusion that the design for a football jersey for a dog as shown and described in the '488 Patent should not be determined to be obvious to one having ordinary skill in the art in view of the Eagles jersey and the V2 jersey.  However, the District Court stated that (A17):

> [T]he Court does not consider the Notice of Allowance issued in connection with the currently pending application for a design patent for a hockey jersey for a dog to be indicative of a finding by the USPTO of nonobviousness of the prior '488 design, and it is not dispositive of the *Graham* factors in connection with the '488 design.

What the District Court failed to appreciate is that the same types of modifications the District Court made to the prior art Eagles jersey in this case (e.g., substitution of a V-neck collar, the addition of side panels made of interlock fabric, and the addition of surge stitching on the rear of the jersey, for example), were not made by the U.S. Patent Office in the hockey jersey design patent application.  And this is true even though fewer modifications would have had to have been made to the jersey shown in the '488 Patent to arrive at a design having the same basic visual impression as the hockey jersey (e.g., lengthening the sleeves and not specifying the use of particular materials) that were made by the District

Court to transform the Eagles jersey into a design that had the same basic visual impression as the design shown in the '488 Patent.  Presumably, the U.S. Patent Examiner did not apply such modifications because the changes would affect the overall visual impression of the design too significantly to meet the *Durling* test. Other prior art identified in Information Disclosure Statements during prosecution of the hockey jersey application, which show various jersey features, were also not used in a rejection under 35 U.S.C. §103(a) (A244-A286).  Clearly, in the field of fashion design, subtle ornamental differences are appreciated by those trained to make obviousness determinations as affecting the overall appearance of a design. Summary judgment should not have been granted in favor of Appellees.

## III.   THE DISTRICT COURT'S LEGAL ERRORS REGARDING THE VALIDITY OF THE '487 PATENT REQUIRE REVERSAL OF THE FINAL JUDGMENT AND REMAND FOR TRIAL.

### A.   The District Court Erred In Concluding That The Sporty K9 Jersey Could Serve As A Reference To Something In Existence, The Design Characteristics Of Which Are Basically The Same As The Claimed Design.

In the Memorandum of Opinion and Order of January 31, 2013, the District Court stated that the Sporty K9 jersey (baseball version) was sufficient to constitute "a single prior art reference" that is a "'something in existence,' having design characteristics that are 'basically the same' as the claimed design" (A21). On this point, the District Court stated that:

The Sporty K9 jersey is a pet baseball jersey having: a V-shaped
collar; two opening for sleeves with cuffs for the two front limbs of
the pet; a banded opening at the bottom of the jersey for the hind end
portion of the pet; and four buttons extending vertically down the
front of the jersey.  All of these features are found in the jersey
claimed in the '487 patent.  The differences identified by the plaintiff
between the Sporty K9 jersey and the claimed design, in particular the
use of mesh and a somewhat shorter and more "tubular" shape, are
minor differences or are well known in the prior art.

(A21-A22)

MRC actually identified four major differences between the Sporty K9

jersey (baseball version) and the design claimed in the '487 Patent, which were

highlighted with red arrows in a composite image included in MRC's memorandum

in opposition to Appellees' joint motion for summary judgment (A188).  Arrow

"A" points to the banded/trimmed V-neck collar that is present in the claimed

design, which is very different than the collar assembly in the Sporty K9 jersey

(baseball version) that consists of a faux t-shirt portion having a crew neck

underlying a second collarless portion (A223-A224).  Arrow "B" points to the

mesh fabric from which the design claimed in the '487 patent is made, which is

different than the polyester fabric of the Sporty K9 jersey (baseball version)

(A223-A224).  Arrow "C" points to the comparatively wide difference between the

length of the front of the patented jersey as compared to the length of the rear of

the jersey, which is unlike the comparatively narrow difference in such lengths in

the Sporty K9 jersey (baseball version) that makes such jersey (baseball version)

much more "tubular" when donned by a dog (A223-A224).  And, arrow "D" points

to the faux t-shirt portion of the Sporty K9 jersey (baseball version), which is not

present at all in the design claimed in the '487 Patent (A223-A224).   The

composite, in a reduced size, is produced below for the Court's convenience:



The Sporty K9 brochure (A160) includes a photograph of a dog wearing the jersey, which further demonstrates how different a visual appearance it conveys as compared to the patented design (notice, in particular, the very different collar design, which features a prominent faux T-shirt and no banded/trimmed collar as opposed to the banded/trimmed collar of the patented design):



MRC respectfully submits that the District Court again clearly erred in focusing on very broad similarities between the Sporty K9 jersey and the patented design (e.g., that they both have "a V-shaped collar; two opening for sleeves with cuffs for the two front limbs of the pet; a banded opening at the bottom of the jersey for the hind end portion of the pet; and four buttons extending vertically down the front of the jersey") rather than upon whether the Sporty K9 jersey created the same visual impression as the patented design, which it clearly does

not.  This, again, is the same error that occurred in the lower court in the *Apple, Inc. v Samsung Elecs. Co.* case previously discussed.

> **B.**    **The District Court Erred In Concluding That The V2 And Eagles Jerseys Constituted "Secondary" References That Could Be Used To Modify The Sporty K9 Jersey To Create A Design That Has The Same Overall Visual Appearance As The Claimed Design.**

Assuming, *arguendo*, that the Sporty K9 jersey could qualify as a primary reference, which it clearly cannot for the reasons previously indicated, the District Court did not properly construe the evidence of record in concluding that the V2 and Eagles jerseys could be combined with the Sporty K9 jersey to create a design that has the same overall visual appearance as the claimed design.  The District Court's entire analysis on this issue is quoted below:

> The design claimed in the '487 patent merely combines features of the prior art and would have been obvious to a designer of ordinary skill in the field.

(A22)

As in the case of the '488 Patent, the obvious problem with the District Court's analysis is that there is no evidence whatsoever in the record explaining why a designer of ordinary skill in the art would have found it obvious to select some attributes or features of the V2 and Eagles jerseys for implementation into

37

the Sporty K9 jersey, but not others.   MRC reiterates that in *L.A. Gear, Inc. v. Thom McAn Shoe Company*, 988 F.2d at 1124, this Court stated that:

> A reconstruction of known elements does not invalidate a design patent, absent some basis whereby a designer of ordinary skill would be led to create this particular design.

The required <u>basis</u> whereby a designer of ordinary skill would be led to create this particular design is completely absent in the District Court's analysis, and no such basis is set forth in any of the evidence of record.   Why would a designer have found it obvious to modify the collar of the Sporty K9 jersey to eliminate the faux T-shirt, and make further alterations to make it look like the claimed design, and select different fabrics and also make other necessary modifications?   These questions are not addressed in the District Court's analysis, and cannot be addressed because Hunter and CDI did not submit any evidence attempting to explain why such modifications would have been made by a designer having ordinary skill in the art.   The District Court clearly erred in arbitrarily selecting and then combining broadly interpreted attributes of the V2 and Eagles jerseys with the Sporty K9 jersey.   The lack of any evidence explaining why a designer would be led to create the patented design requires reversal.

**C.** **The District Court Erred In Discounting Evidence Submitted By MRC That Shows That In The Field Of Fashion Design, Subtle Differences In Ornamentation Are Sufficient To Affect the Overall Visual Appearance of A Design And Thus Support A Finding Of Nonobviousness.**

The same evidence relating to the hockey jersey for a dog discussed with respect to the '488 patent applies to the consideration of whether the design claimed in the '487 Patent should be found nonobvious and patentable over the prior art of record. In this particular field of art, subtle differences are recognized to affect the overall appearance of a design. The District Court should have concluded that the design shown in the '487 Patent was not obvious in view of the prior art of record.

**CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

Substantial justice was clearly not rendered by the District Court in this case.

Appellant respectfully submits that the Court should reverse the final Judgment Entry (A1) and Memorandum of Opinion and Order (A2-A22) of the District Court, and remand this case for a trial on the merits.

Respectfully submitted,


/s Randolph E. Digges, III
Randolph E. Digges, III (OH# 0059298)
Robert A. Sidoti (OH# 0069700)
*Rankin, Hill & Clark LLP*
23755 Lorain Road, Suite 200
North Olmsted, OH 44070
Tel: (216) 566-9700
Fax: (216) 566-9711
digges@rankinhill.com
sidoti@rankinhill.com


*Counsel for Plaintiff-Appellant*

**ADDENDUM**

Judgment Entry of May 16, 2013 (1 page)

Memorandum of Opinion and Order (21 pages)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MRC Innovations, Inc.,** | ) | **CASE NO. 1: 12 CV 684** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Hunter MFG., LLP,** *et al.***,** | ) | **Judgment Entry** |
| | ) | |
| **Defendants.** | ) | |

In light of the Court's granting of Defendants' Motion for the Voluntary Dismissal of its Counterclaim for Inequitable Conduct, and the Court's Memorandum of Opinion and Order dated January 31, 2013 resolving all of plaintiff's claims in favor of defendants and against plaintiff, judgment is now hereby entered in this matter in favor of defendants and against plaintiff.

      IT IS SO ORDERED.

                      /s/ Patricia A. Gaughan
                      PATRICIA A. GAUGHAN
                      United States District Judge

Dated: 5/16/13

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MRC Innovations, Inc., | ) | CASE NO. 1: 12 CV 684 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Hunter MFG., LLP, and | ) | Memorandum of Opinion and Order |
| CDI International, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This is a patent infringement action pertaining to two design patents relating to sports jerseys for pets. Defendants Hunter MFG, LLP (Hunter) and CDI International, Inc. (CDI) have filed a joint motion for summary judgment. (Doc. 42.) Also pending before the Court is a motion by the plaintiff for oral argument. (Doc. 51.) For the reasons stated below, defendants' motion for summary judgment is granted, and plaintiff's motion for oral argument is denied.

**Facts**

Plaintiff MRC Innovations, Inc. (MRC) is the owner by written assignment of all right, title, and interest to two design patents: U.S. Design Patent No. D634, 488 (the '488 patent), entitled "Football Jersey for a Dog," and U.S. Design Patent No. D634,487 (the '487 patent), entitled "Baseball Jersey for a Dog." (Second Am. Complt., Exs. A and B.) The '488 patent claims an ornamental design for a football jersey for a dog "as shown and described" in the patent. The '487 patent claims an ornamental design for a baseball jersey for a dog as "shown and described." The description in the '488 patent includes four figures depicting various views

1

(side, front, and back) of the claimed pet football jersey and states that "[t]he material of the football jersey is primarily of a mesh and interlock fabric." The description in the '487 patent likewise includes four figures depicting various views of the claimed pet baseball jersey and states that "[t]he material of the baseball jersey is primarily of mesh fabric." Both patents issued on March 15, 2011 upon applications filed with the United States Patent and Trademark Office (USPTO) on September 8, 2010 by Mark Cohen. Cohen is the named inventor of the patents and is the principal shareholder of MRC. Cohen assigned both patents to MRC.

For over twenty years, Hunter has been a retailer of licensed sports consumer products. (Doc. 9, Neth Dec.) Hunter has sold pet jerseys since at least as early as 2006. (Neth Dec., ¶3.) Prior to the issuance of the design patents in suit, and in particular prior to September 9, 2009,[1] Cohen – through companies with which he was/is affiliated – supplied Hunter with pet jerseys for dogs that Hunter sold.

For example, Hunter sold a so-called "V2" pet jersey, depicted on page 2 of defendants' memorandum, prior to September 9, 2009. (Neth Dec., ¶1.) Hunter purchased the V2 pet jersey, which was manufactured in and imported from China, from Stephen Gould Corporation. Mark Cohen was a salesperson for Stephen Gould Corporation at least as early as 2008. (Neth Dec., ¶¶2, 3.) Hunter sold V2 jerseys purchased from Stephen Gould to customers within the United States prior to September 9, 2009. (*Id.* at ¶4.)

---

[1]

As discussed below, Section 102(b) of the Patent Act provides that a person is not entitled to a patent where "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. §102(b). Therefore, September 9, 2009, one year prior to the date the application for the '488 Patent was filed, is a critical date in determining the validity of the patent.

2

Beginning on or about September 2008, Cohen supplied V2 pet jerseys to Hunter through Fun-in-Games, Inc. (FiG), another company with which Cohen had a relationship.[2] Cohen states that FiG normally supplied pet jerseys to Hunter in specified colors, and Hunter then applied "transfers" to the pet jerseys for particular markets. For example, red pet jerseys supplied by FiG would be decorated with Ohio State logos or St. Louis Cardinals logos. Orange pet jerseys might be decorated with Cleveland Browns or Cincinnati Bengals logos. In some instances, FiG applied the transfers itself and shipped the finished product to Hunter.

In addition, between the years of 2007 and 2009, Cohen also designed and supplied to Hunter, through FiG, a pet football jersey developed by Hunter for a special NFL program. (Cohen Dep. at 47-48.) A sample of this jersey is depicted on page 3 of defendants' memorandum. It is a green pet jersey bearing a Philadelphia Eagles logo. Cohen arranged for this "Eagles" pet football jersey to be manufactured in China for Hunter sometime prior to July 30, 2009. (*Id*. at 50.) Hunter sold the "Eagles" pet jersey through third-party retailers (Wal-Mart and PetSmart) prior to July 30, 2009.

Cohen asserts that in 2009, he designed another pet jersey, a so-called "V3" jersey, which FiG subsequently also supplied to Hunter. (Cohen Dec., ¶12.) The "V3" pet jersey is depicted on page 5 of Cohen's Declaration bearing a Kentucky Wildcats logo. (Cohen Dec., p. 5.) Hunter began purchasing the V3 jersey from FiG sometime after September 8, 2009.

In December 2010, "issues" arose between Hunter and Cohen, including that Hunter was experiencing financial difficulties making Hunter "slow" at times to pay FiG. For this reason,

---

[2]     FiG is a "sister" corporation to MRC and is also owned by Cohen. FiG is licensed by MRC to manufacture and sell pet jerseys to third parties.

3

Cohen informed Hunter that he did not want to do business with Hunter any longer. Cohen asserts, however, that FiG continued to supply Hunter with pet jerseys "for several months thereafter." (Cohen Dec., ¶19.) Hunter meanwhile sought proposals from other companies requesting that they manufacture and supply it with pet jerseys like the V3 jersey. Ultimately, Hunter contracted with another supplier, CDI, to manufacture and supply Hunter with pet jerseys. After the '487 and '488 patents issued on March 15, 2011, Cohen "assigned" both patents to MRC, which granted a license to FiG to produce the patented football and baseball pet jerseys. (*Id.*, ¶22.) Cohen asserts that after the patents were issued, Hunter continued to buy some V3 pet football jerseys from FiG, including those that bore labels marking them as patented. Hunter did not purchase any baseball jerseys from FiG after the '487 patent issued although Hunter had purchased pet baseball jerseys from FiG prior to the issuance of the patents. (*Id*. at ¶¶18, 22, 23.) By December 2011, FiG "had stopped shipping V3 Jerseys to Hunter" completely.

Plaintiff filed this lawsuit against Hunter and CDI on March 20, 2011, alleging infringement of the '487 and '488 patents. (Second Am. Complt., Doc. 37.) Plaintiff's Second Amended Complaint alleges that defendants have infringed the '488 and '487 patents by importing into the United States, offering to sell and selling, either directly or through third party retailers such as Petco, pet apparel (in particular, football and baseball jerseys for dogs) that are substantially the same as the designs covered by the '487 and '488 patents. As evidence of such infringement, plaintiff attaches to its complaint pages from Hunter's website and the website of third-party retailer Petco (through which Hunter also sells pet jerseys). These pages depict pet football and baseball jerseys for dogs currently being offered for sale by Hunter and supplied by

4

CDI.  (Sec. Am. Complt., Exs. C-H).  Plaintiff contends these pet football and baseball jerseys have designs that are substantially the same as the designs covered in the '488 and '487 patents and infringe the patents.

Defendants move for summary judgment on the basis that both patents are invalid.

**Standard of Review**

Summary judgment is as appropriate in a patent case as in any other case.  *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed.Cir. 1984).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir.2003).  The court does not weigh the evidence to determine the truth, but rather, determines whether the evidence produced creates a genuine issue for trial.  *Id.*

A patent is presumed valid under 35 U.S.C. § 282.  "Consequently, 'a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise.' "  *Chrimar Sys., Inc. v. Cisco Sys., Inc.*, 318 F.Supp.2d 476, 491 (E.D.Mich. 2004) (quoting *Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955, 962 (Fed.Cir. 2001)); *see also Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed.Cir.2002) (holding that a party seeking to establish particular claims as invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence).  However, the challenger's burden to show invalidity may be "more easily met" when

5

the challenger produces prior art that is more pertinent than that considered by the Patent and

Trademark Office during prosecution of the patent. *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418,

1423 (Fed. Cir. 1988); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1549 (Fed. Cir.1983).

**Discussion**

"A design patent protects the nonfunctional aspects of an ornamental design as seen as a

whole and as shown in the patent." *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d

1365, 1371 (Fed. Cir. 2006). Under 35 U.S.C. §171, "[w]hoever invents any new, original and

ornamental design for an article of manufacture may obtain a patent therefor, subject to the

conditions and requirements of this title." 35 U.S.C. §171. To be patentable, a design must be

new, original, ornamental, and nonobvious. *Snhnadig Corp. v. Gaines Mfg.*, 494 F.2d 383, 387

(6th Cir. 1974). As noted by the Federal Circuit in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543

F.3d 665, 670 (Fed. Cir. 2008), in *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871), the Supreme

Court established that the "ordinary observer" test applies to determine whether a design patent

is infringed. Under this test: "if, in the eye of an ordinary observer, giving such attention as a

purchaser usually gives, two designs are substantially the same, if the resemblance is such as to

deceive such an observer, inducing him to purchase one supposing it to be the other, the first one

patented is infringed by the other." *Gorham*, 81 U.S. at 528.

In addition, like a utility patent, a design patent may be held invalid if it is deemed

"obvious" under Section 103(a) of the Patent Act.[3] Under Section 103(a), a patent is invalid:

---

[3]

   *See In re Haruna*, 249 F.3d 1327, 1335 (Fed. Cir. 2001)(Section 103 applies to
design patents in much the same manner as it applies to utility patents); *In re Borden*, 90
F.3d 1570, 1574 (Fed. Cir. 1996) ("Design patents are subject to the same conditions on
patentability as utility patents, including the nonobviousness requirement of 35 U.S.C.
§103).

6

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. §103(a).  Section 102(b) of the Patent Act characterizes what is considered as "prior art."  Section 102(b):  "A person shall be entitled to a patent unless- . . . .(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. §102(b).  Thus, the "critical date" for purposes of the applicability of Section 102(b) is the "date exactly one year prior to the date of application for the patent. . . ." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1327 (Fed. Cir. 2001).

In addressing a claim of obviousness, the ultimate inquiry is whether a claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.  *Apple, Inc. v. Samsung Electronics Co. Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012).  Further, the Federal Circuit has explained that:

> [t]o determine whether "one of ordinary skill would have combined teachings of the prior art to create the same overall appearance of the same design," the finder of fact must employ a two-step process.  First, "one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'"  Second, "other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design. . . .[T]he "secondary references may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to another.'"

*Id*. (citations omitted).  Once a piece of prior art has been constructed, the determination of invalidity for "obviousness," like the determination of infringement, "requires application of the ordinary observer test."  A patented design is obvious if the patented design as whole is

7

substantially the same, or has the same "overall" visual appearance, as the prior art. *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). Obviousness is a legal conclusion based on four general types of underlying facts which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1 (1966) (the "*Graham*" factors).

### The '488 Patent

Defendants contend the '488 patent is invalid for obviousness as a matter of law because the undisputed evidence shows that three different pet football jerseys, each qualifying as prior art under 35 U.S.C. §102(b) and not considered by the USPTO during prosecution of the '488 patent, have "basically the same" design characteristics as those claimed in the patent. (Def. Mem. at 12-15.) Specifically, defendants point to the V2 and "Eagles" pet football jerseys discussed above that Stephen Gould Corporation and FiG supplied to Hunter prior to September 9, 2009 (depicted on page 3 of defendants' memorandum), as well as to a pet jersey described in a printed publication and offered for sale in the United States at least as early as 2007 by Sporty K9, Ltd., an Arizona corporation (the "Sporty K9" jersey). (Def. Mem., Ex. C.) Defendants assert that each of these prior art pet jerseys qualifies as a single reference having design characteristics that are "basically the same" as the design claimed in the '488 patent, thus rendering the patent invalid for obviousness. Defendants assert the claimed design and the prior art jerseys have the same design characteristics for the following reasons.

The V2 pet football jersey developed by Hunter includes: (1) a V-shaped opening having

8

a collar portion for the neck of the dog; (2) two openings/sleeves with cuffs stitched to the body of the jersey for the front two limbs of the dog; (3) cross stitching between the sleeves; (4) two side portions extending from the sleeves to the bottom of the jersey; (5) the neck, sleeve, and side portions of the jersey are made from a non-mesh material; and (6) the body of the jersey is made from a mesh material.  This is similar to the elements of the claimed pet football jersey which  also includes:  a "V-shaped collar, two sleeves/openings stitched to the body of the jersey, two side portions extending to the bottom of the jersey and utilizing two different materials, i.e., a mesh material for the body and a non-mesh material for the neck, sleeves and side portions." (Def. Mem. at 12.)

The "Eagles" pet football jersey features: (1) an opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two limbs of the pet which are stitched to the body of the jersey, the stitching extends to the neck portion of the jersey; (3) cross- stitching between the sleeves; (4) the neck and sleeve portions of the jersey are made from a non-mesh material; and (5) the body of the jersey is made from a mesh material.  This is also similar to the design elements of the claimed jersey, "including an opening with a collar, two sleeves/openings stitched to the body of the jersey, a mesh material for the body and a non-mesh material for the neck and sleeve portions."  (*Id*. at 12-13.)

Finally, the "Sporty K9" pet jerseys include: (1) a V-shaped opening having a collar portion for the head of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey; (3) seams between the sleeves and the body; (4) two side portions extending from the sleeves to the bottom of the jersey; (5) the neck, sleeve, and side portions of the jersey are made from a non-mesh, polyester material; and (6) the body of the

9

jersey is made from a mesh material.  (Def. Mem. at 13.)  The claimed jersey features these same elements, "including the V-shaped collar, two sleeves/openings stitched to the body of the jersey, two side portions extending to the bottom of the jersey and utilizing two different materials, i.e., a mesh material for the body and a non-mesh material for the neck, sleeves and side portions." (*Id*. at 13.)

Defendants assert that "the only modest difference" between the V2 and Sporty K9 jerseys and the jersey claimed in the '488 patent is that "surge stitching" appears along the sleeves of the claimed jersey, including a horizontal surge stitch between the two sleeves on the front of the jersey and vertical surge stitching on the back of the jersey extending from the sleeves to the bottom of the jersey.  (Def. Mem. at 14.)  However, defendants assert that the Eagles pet jersey includes nearly identical "surge stitching" on the front and back.  Defendants argue that the V2 jersey and Eagles jersey, as primary and modifying prior art references, demonstrate the invalidity of the '488 design.  In this regard, defendants argue:

> [T]aking the V2 jersey as the primary reference for the sake of argument, the Eagles jersey is clearly "so related" as to suggest the application of surge stitching to any material seams forming the body, as is done in the design of the '488 Patent.  Taking the Eagles jersey as the primary reference instead, the V2 jersey is also so related to suggest the addition of a V-neck and non-mesh side panels.  In any case, the end result is the same: the design of the '488 Patent is invalid as obvious.

(*Id*. at 15.)  Furthermore, defendants cite law supporting the proposition that "minor" or "trivial" differences between a patented design and a prior art reference that are "insignificant from the point of view of an ordinary observer" do not preclude a finding of invalidity on summary judgment.  *See id.*, *citing Int'l Seaway*, 589 F.3d at 1243 ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or

10

trivial differences that necessarily exist between any two designs that are not exact copies of one another."). Defendants contend that any differences that exist between the prior art pet football jerseys and the jersey claimed in the patent are, at best, minor or trivial and do not prelude a finding of invalidity.

In sum, defendants contend: "the pet football jersey of the '488 Patent merely combines well known features of prior art jerseys in a way which would have been obvious to any designer of ordinary skill in the field of pet jerseys"; thus, the patent is invalid for obviousness under 35 U.S.C. §103. (Def. Mem. at 16.)

Plaintiff disputes that defendants have demonstrated facts necessary to find invalidity under the *Graham* factors.

Plaintiff disputes defendants' position that any of the prior art references cited by defendants constitute a primary reference having an overall appearance, or design characteristics, that are "basically the same" as the claimed design, and plaintiff disputes defendants' position that only trivial or insignificant differences exist between the claimed design and the prior art.[4] According to plaintiff, the prior art jerseys differ from the claimed design because the V2 pet football jersey: (1) does not have an "interlock" fabric panel that is present in the claimed design; (2) lacks "ornamental surge stitching" on the front and rear portions that is present on the claimed design; and (3) has "drop" sleeves whereas the claimed jersey has "raglan-style" sleeves.

The Eagles pet football jersey: (1) does not use "interlock fabric" as present in the

---

[4]

Plaintiff does not dispute the existence of any of the asserted prior art pet jerseys or that they qualify as "prior art" under the Patent Act. Plaintiff also does not dispute that the jerseys were not disclosed to the USPTO during prosecution of the '488 and '487 patents.

claimed design; (2) does not have a V-neck collar as present in the claimed design; and (3) does not have ornamental surge stitching on the *rear* portion of the jersey as present in the claimed design.

The Sporty K9 jersey: (1) has a panel that appears to be of a "dazzle" (*i.e.*, shiny) fabric; whereas, the claimed design has an "interlock fabric panel"; (2) does not have ornamental surge stitching on the front and rear of jersey as present in the claimed design; and (3) has "drop" rather than "raglan-style" sleeves.  (Pltf. Opp. at 15-21.)

Plaintiff's position is that the cited prior art references of record do not create the same overall visual appearance as the claimed design of the '488 patent for two reasons:  (1) "[t]he portion of the ornamental serge stitching on the back of the football jersey for a dog as shown and described in the '488 Patent is simply not present in any reference of record," and (2) "the only prior art references of record that show narrow side panels disposed between front and back mesh panels are made of dazzle fabric rather than interlock fabric."  (Pltf. Opp. at 23.)[5]

---

[5]

In his declaration, Cohen stated the following as to the differences between the V2 and Eagles jerseys and the V3 pet jersey on which the '488 Patent was allegedly based:

> The material of the V3 Jersey is primarily of a mesh and interlock fabric. No dazzle fabric, which was used extensively in the V2 Jersey, was used in the V3 Jersey at all.  The design of the V3 Jersey includes raglan-style sleeves beneath which narrow panels of interlock fabric separating front and rear mesh panels extend to the bottom of the jersey.  In contrast, the design of the V2 Jersey included drop sleeves beneath which narrow panels of dazzle fabric separating front and rear mesh panels extended to the bottom of the V2 Jersey.  And, the design of the Eagles Jersey included raglan-style sleeves, but no narrow panels of interlock fabric between mesh front panels and rear panels.

In addition, according to Cohen,

> The design of the V3 Jersey also includes ornamental serge stitching

12

Plaintiff also argues that defendants have failed to provide the Court with sufficient evidence as to the required *Graham* factors to support summary judgment. Specifically, plaintiff argues that defendants have not presented the Court with any evidence as to the third Graham factor (the level of ordinary skill in the art) because defendants do not produce evidence from a designer. In contrast, plaintiff asserts that it has evidence from a designer, namely Cohen himself, who states that the '488 patent would not have been obvious to a designer in view of the prior art jerseys. (Pltf. Opp. at 23, citing Cohen Dec., ¶¶30-34.)

Further, plaintiff contends there is objective evidence of nonobviousness (the fourth *Graham* factor) that defendants do not raise, specifically, evidence that the patented design has had commercial success, was copied, and has been accepted by others (factors that have all been recognized as indicia of nonobviousness). But to support its position of "nonobviousness," plaintiff relies primarily on Cohen's own statements that sales of the V3 jersey have been more successful commercially than sales of the V2 jersey, that Hunter and CDI copied the V3 jersey, and that MRC has granted a license under the patent to an entity not wholly owned by MRC or its principals. (Pltf. Opp. at 22, citing Cohen Declaration.) Plaintiff contends nonobviousness is also suggested because, on October 17, 2011, it filed an application for a design patent for a hockey jersey for a dog and identified the V2, the V3, and Eagles pet jerseys as known prior art.

---

extending from the neckline underneath both sleeves, horizontally across the chest and back, and vertically on the back only between the narrow interlock fabric panel and the rear mesh panel. This differs from the V2 Jersey which did not include any ornamental serge stitching at all, and the Eagles Jersey which did not include the vertical serge stitching on the back only. The ornamental serge stitching in the V3 Jersey is decorative and is provided over the stitching that binds together the respective mesh and interlock fabric panels that form the V3 Jersey.

(Cohen Dec., ¶¶13, 14.)

13

According to plaintiff, the Patent Examiner issued a Notice of Allowance of a patent on November 12, 2012. Plaintiff contends this supports a conclusion that the design shown and described in the '488 patent would not have been obvious to one having ordinary skill in the art in view of the V2 and Eagles jerseys. (Pltf. Opp. at 24.)

The Court, however, finds that defendants have met their burden on summary judgment of demonstrating invalidity of the '488 patent on the basis of obviousness in view of undisputed prior art under the *Graham* factors. As noted, the first factor, the scope and content of the prior art, is not in dispute and consists of the V2, Eagles, and Sporty K9 football jerseys identified by defendants.

In addition, defendants' position is persuasive that the combined teachings of the prior art are such that the subject matter of the design claimed in the '488 patent as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. For instance, defendants persuasively argue that the prior art Eagles jersey is sufficient to constitute "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" The Eagles jersey is clearly a pet football jersey having an opening at the collar portion for the head of the pet, two openings and sleeves stitched to the body of the jersey on either side for limbs of the dog, and a body portion on which a football logo is applied (extending from the top of the jersey to the bottom of the jersey and covering a portion of the body of the pet). As Cohen himself states in his declaration, the Eagles jersey is made "primarily of a mesh and interlock fabric," exactly what is claimed in the description of the '488 patent. (*See* Cohen Dec. at ¶10. '488 Patent, Description.) In addition, the Eagles jersey exhibits ornamental surge stitching, which plaintiff emphasizes exists in the claimed design. The

14

only differences identified by the plaintiff between the Eagles jersey and the pet football jersey of the '488 patent relate to the V-neck collar depicted in the patented design, additional ornamental surge stitching appearing on the claimed design (*i.e.*, unlike the Eagles jersey, the claimed design uses ornamental surge stitched down the *rear* portion of the jersey in addition to ornamental serge stitching at the top of the jersey and in between the sleeves), and to "an interlock fabric panel" that appears on the side portion of the claimed design.

Nonetheless, defendants' argument is persuasive that all of these asserted differences are either *de minimis* or are plainly suggested by related secondary prior art references. Taking the Eagles jersey as the primary prior art reference, the V2 and Sporty K9 jerseys are clearly "so related to the primary reference" as to suggest the application of the features of a V-neck collar and the use of non-mesh or other fabric on the side panel portions. Thus, one of ordinary skill in the art in the field of pet jersey design would have likely combined the teachings of the prior art to create the same overall appearance of the pet jersey in the claimed design.

Furthermore, the presence of additional ornamental surge stitching on the back of the pet jersey (as is shown on the claimed design), and the positioning of a strip of non-mesh, or "interlock" fabric on the side of the claimed design, are not "substantial" differences between the claimed design and the prior art so as to create a patently distinct design. Rather, these differences between the claimed design and the prior art are at the most "*de minimis* changes which would be well within the skill of an ordinary designer in the art." *See In re Carter*, 673 F.3d 1378, 1380 (Fed. Cir. 1982).

Plaintiff has not demonstrated that a genuine dispute exists on the basis of the third *Graham* factor, the level of skill of a designer in the art, because defendants did not present

15

evidence of the opinion of an actual designer. As the Federal Circuit has recognized, the trial judge assesses obviousness from the position of a "fictitious" person of ordinary skill in the art. *See in re Nalbandian*, 661 F.2d 1214, 1216 (CCPA 1981). While expert testimony may be used to influence the court's decision, expert opinion on obviousness is not required. *See Peterson Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1547-48 (Fed. Cir. 1984), *abrogation on other grounds recognized by*, *Beatrice Foods Co. v. New England Printing and Lithographing Co.*, 899 F.2d 1171 (Fed. Cir. 1990). Furthermore, subjective evidence of obviousness from the point of view of the inventor is not persuasive evidence of nonobviousness. *See, e.g., Ryko*, 950 F.2d at 718 (test is not subjective obviousness to the inventor, but is objective obviousness to the artisan); *Celanese Corp. v. BP Chem. Ltd.*, 846 F. Supp. 542, 547 (S.D. Tex. 1994) ("evidence of the patent's 'subjective obviousness' to the inventor . . . is direct evidence of nothing."). Thus, Cohen's own opinion that the design claimed in the '488 patent would not have been obvious to a designer having ordinary skill in the art in view of the prior art at the time of the invention, and his own statements of commercial success, copying, and licensing of his claimed design, are unpersuasive to demonstrate a genuine dispute.

Finally, the Court does not consider the Notice of Allowance issued in connection with the currently pending application for a design patent for a hockey jersey for a dog to be indicative of a finding by the USPTO of nonobviousness of the prior '488 design, and it is not dispositive of the *Graham* factors in connection with the '488 design.

For the reasons stated above, defendants' position is persuasive that the '488 patent merely combines known features of undisputed – and clear and convincing – prior art jerseys in a way which would have been obvious to a designer of ordinary skill in the field of pet jerseys.

16

The Courts finds, on the basis of evidence of the *Graham* factors before it, that the '488 patent is directed to an obvious design in view of the prior art and is invalid as a matter of law under Section 103(a) of the Patent Act.

Defendants challenge the validity of the '488 patent on the alternative ground that it fails to meet the requirements of 35 U.S.C. §112. The first paragraph of Section 112 requires that a patent "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. §112(a). The second paragraph of Section 112 requires the patent to "particularly point[] out and distinctly claim[] the subject matter which the inventor . . . regards as the invention." 35 U.S.C. §112(b). These requirements exist because "[i]f the limits of a patent are not adequately defined, a zone of uncertainty is created which would discourage invention." *Semmler v. American Honda Co., Inc.*, 990 F. Supp. 967, 974 (S.D. Ohio 1997).

Defendants argue that the '488 patent does not meet these requirements because it "is silent regarding the location and appearance of any 'interlock fabric'" even though plaintiff contends interlock fabric is a key feature of the claimed design. Defendants argue the patent does not reasonably apprise those skilled in the art of the nature of the claimed ornamental design. (Def. Mem. at 21.) Further, because the patent fails to describe the location of interlock fabric and its ornamental appearance, the patent "cannot enable one to make invention as claimed, since the location and ornamentation of the claimed interlock fabric is unknown" and impossible to ascertain from the specification. (*Id.* at 22.)

The Court does not find summary judgment warranted on this alternative ground.

17

Plaintiff contends in its opposition brief that a designer having ordinary skill in the art would readily appreciate where mesh and interlock fabric is used.  In particular, the areas in the drawings of the patent that are shown with grid lines indicate that such areas would be constructed of mesh fabric, and the panels shown without grid lines would be constructed of interlock fabric.  Plaintiff points to statements by Cohen to this effect as well as testimony by Hunter's president that the area that looks like a grid in the patent would be constructed of mesh.  The Court finds that the drawings in the patent are sufficient to indicate where mesh and interlock fabric are used in the claimed design such that one reading the patent could ascertain had to construct the claimed jersey.  At a minimum, there is at least a genuine issue of material fact as to whether the patent includes "information sufficient for one having ordinary skill in the art to construct a football jersey for a dog in accordance with the claimed design" such that summary judgment is not appropriate under 35 U.S.C. §112.  (Pltf. Opp. at 29.)

*The '487 Patent*

Defendants also contend that the '487 patent is invalid as a matter of law.  They assert that the design claimed in the '487 patent for a baseball jersey for a dog is obvious under 35 U.S.C.§103(a) as well as anticipated under 35 U.S.C. §102(b).  "[D]esign patent anticipation requires a showing that a single prior art reference is identical in all material respects to the claimed invention."  *Door-Master Corp. v. Yorktowne, Inc*., 256 F.3d 1308, 1312 (Fed.Cir.2001).  The "ordinary observer" test applies in determining anticipation.  *See Int'l Seaway Trading Corp.*, 589 F.3d at 1237–40.

Defendants contend that the Sporty K9 baseball jersey qualifies as a "something in existence" the design characteristics of which are "basically the same" as the claimed design for

18

purposes of both anticipation and obviousness.  Defendants emphasize that the Sporty K9

baseball jersey has:  (1) a V-shaped opening having a collar portion for the neck of the pet; (2)

two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of

the jersey; (3) a banded opening at the bottom of the jersey for the hind portion of the pet; and

(4) four buttons extending vertically down the center of the front of the jersey.  (*See* Def. Mem.,

Ex. C.)  Defendants argue that the claimed pet jersey has all of these identical elements,

including the V-shaped collar, two sleeves/openings stitched to the body of the jersey, a banded

opening at the bottom of the jersey for the hind end portion of the pet and four buttons extending

vertically down the center of the front of the jersey.  (*See* '487 Patent, Figure 2.)  While

defendants acknowledge that the Sporty K9 jersey does not appear to be made of the same exact

"mesh" material as is shown in the '487 Patent, defendants assert that this is a "minor" or

"trivial" difference such that the design claimed in the '487 patent is anticipated by the Sporty

K9 jersey.  (Def. Mem. at 19.)

Alternatively, defendants contend the design is obvious 35 U.S.C. §103(a) in view of the

prior art.  In this regard, they assert that the Sporty K9 jersey "qualifies as a single reference for

which the design characteristics are 'basically the same as the claimed design" and the only

different feature disclosed in the '487 design, the use of mesh material, was "well known long

prior to the time the '487 Patent was filed."  (*Id.*)  Indeed, defendants point out that "all of the

football jerseys cited . . . by Defendants (which also qualify as prior art for the '487 Patent . . . )

are made of mesh material."  Thus, defendants contend the use of mesh material was suggested

by prior art references so as to render the '487 patent obvious.

Plaintiff contends there are significant differences between the Sporty K9 baseball jersey

19

and the design claimed in the '487 patent, asserting that the Sporty K9 jersey has a different "collar assembly" (incorporating a "faux t-shirt portion" that the claimed design does not have); the claimed design uses a "mesh" fabric that is different from the polyester fabric of which the Sporty K9 jersey is made; and that the Sporty K9 jersey is shorter and more "tubular" when donned by a dog than the claimed design.  (Pltf. Opp. at 27-28.)

The Court, however, agrees with defendants that the '487 patent, like the '488 patent, is invalid as obvious in view of the prior art under the *Graham* factors.  Even assuming the Sporty K9 pet jersey, as a single prior art reference, is not "identical" in all material respects to the design claimed in the '487 patent in order to find anticipation, defendants' argument is persuasive that the Sporty K9 jersey constitutes a single prior art reference, "a something in existence," having design characteristics that are "basically the same" as the claimed design, and the differences that exist between the Sporty K9 jersey are either minor, or are plainly disclosed in modifying secondary primary art references.  For largely the same reasons discussed above with respect to the '488 patent, the Court finds the '487 patent likewise invalid for obviousness.

The Sporty K9 jersey is undisputably prior art and falls within the scope of the '487 patent.  With respect to the second *Graham* factor, the Sporty K9 jersey has "basically the same" design characteristics as the design claimed in the '487 patent from the perspective of an ordinary observer.  The Sporty K9 jersey is a pet baseball jersey having: a V-shaped collar; two opening for sleeves with cuffs for the two front limbs of the pet; a banded opening at the bottom of the jersey for the hind end portion of the pet; and four buttons extending vertically down the front of the jersey.  All of these features are found in the jersey claimed in the '487 patent.  The differences identified by the plaintiff between the Sporty K9 jersey and the claimed design, in

20

particular the use of mesh and a somewhat shorter and more "tubular" shape, are minor differences or are well known in the prior art. As defendants point out, use of mesh in pet jerseys, as exemplified by the V2 jersey, was well known in the prior art. The V2 and Eagles pet jerseys exhibit the same shape as depicted in the claimed design.

Cohen's own subjective views as to whether his design would have been obvious to a designer of ordinary skill in the field of pet jerseys, and as to other secondary considerations of nonobviousness, are not objective or persuasive and are insufficient to create a genuine dispute as to nonobviousness under the third and fourth *Graham* factors.

As with the '488 patent, the Court finds that the '487 patent is directed to an obvious design in view of the prior art. The design claimed in the '487 patent merely combines features of the prior art and would have been obvious to a designer of ordinary skill in the field.

**Conclusion**

For the reasons discussed above, defendants' motion for summary judgment is granted on the ground that the '488 and '487 patents are invalid under 35 U.S.C. §103(a). Oral argument is not necessary and, therefore, plaintiff's motion for oral argument is denied.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/31/13

21

## CERTIFICATE OF SERVICE

I certify that I served a copy of the Brief of Appellant, MRC Innovations, Inc., on all counsel of record on August 5, 2013 by electronic means, namely by use of the Court's ECF System and also by e-mail.  Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellant will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Randolph E. Digges, III
Randolph E. Digges, III (OH# 59298)
*Rankin, Hill & Clark LLP*
23755 Lorain Road, Suite 200
North Olmsted, OH 44070
Tel: (216) 566-9700
Fax: (216) 566-9711
digges@rankinhill.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as modified by Fed. Cir. R. 32(b), because the portion of the brief counted in the type-volume limitation contains 8,699 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman font.

/s/ Randolph E. Digges, III
Randolph E. Digges, III (OH# 59298)
*Rankin, Hill & Clark LLP*
23755 Lorain Road, Suite 200
North Olmsted, OH 44070
Tel: (216) 566-9700
Fax: (216) 566-9711
digges@rankinhill.com

*Counsel for Plaintiff-Appellant*