**2013-1433**

# United States Court of Appeals
# for the Federal Circuit

MRC INNOVATIONS, INC.,

*Plaintiff-Appellant,*

*v.*

HUNTER MFG., LLP,

*Defendant-Appellee,*

*and*

CDI INTERNATIONAL, INC.,

*Defendant-Appellee.*

*Appeal from the United States District Court for the Northern District of Ohio in case no. 12-CV-0684, Judge Patricia A. Gaughan.*

## BRIEF OF APPELLEES
## HUNTER MFG, LLP AND CDI INTERNATIONAL, INC.

Andrew D. Dorisio
Trevor T. Graves
King & Schickli, PLLC
247 N. Broadway
Lexington, KY 40507
Telephone: (859) 252-0889
Facsimile: (859) 252-0779

Perry J. Saidman
Saidman DesignLaw Group, LLC
8601 Georgia Avenue, Suite 603
Silver Spring, MD 20910
Telephone: (301) 585-8601
Facsimile: (301) 585-0138

Edward D. Manzo
Mark J. Murphy
Husch Blackwell LLP
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
Telephone: 312-655-1500
Facsimile: 312-655-1501

*Counsel for Appellees*

September 19, 2013

# CERTIFICATE OF INTEREST

The undersigned counsel for Hunter Mfg., LLP ("Hunter") certifies the following:

1.     The full name of every party represented by me is:

Hunter Mfg., LLP

2.     The name of the real party in interest represented by me is:

Hunter Mfg., LLP

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

None

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:

| | |
|---|---|
| King & Schickli, PLLC | Calfee, Halter & Griswold |
| Andrew D. Dorisio | Todd Tucker |
| Trevor T. Graves | |
| | |
| Renner, Otto Boisselle & Sklar | Saidman DesignLaw Group, LLC |
| Nicholas P. Gingo | Perry J. Saidman |

# CERTIFICATE OF INTEREST

The undersigned counsel for CDI International, Inc. ("CDI") certifies the following:

1.      The full name of every party represented by me is:

CDI International, Inc.

2.      The name of the real party in interest represented by me is:

CDI International, Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

None

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:

Husch Blackwell LLP                    Brytzwa, Quick & McCrystal
Edward D. Manzo                        Matthew L. Snyder
Mark J. Murphy                         John Brytzwa, Jr.
Nguyen S. Vo

Saidman DesignLaw Group, LLC
Perry J. Saidman

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST FOR HUNTER MFG., LLP ................................. i

CERTIFICATE OF INTEREST FOR CDI INTERNATIONAL, INC. .................. ii

TABLE OF CONTENTS .................................................................................. iii

TABLE OF AUTHORITIES ............................................................................. v

I.    STATEMENT OF RELATED CASES .................................................. 1

II.   STATEMENT OF ISSUES .................................................................. 1

III.  STATEMENT OF THE CASE .............................................................. 1

IV.  SUMMARY OF THE FACTS ............................................................... 2

V.   SUMMARY OF THE ARGUMENT ..................................................... 3

VI.  ARGUMENT ........................................................................................ 5

      A.   SUMMARY JUDGMENT STANDARD. ...................................... 5

      B.   INTRODUCTION. ........................................................................ 6

      C.   THE '488 PATENT IS INVALID AS OBVIOUS. ....................... 9

           1.    Two Prior Art References Qualify As Basically The Same As The Claimed Design. ................................................. 9

           2.    The Prior Art Pet Jerseys Constitute Related References That May Be Combined With The Primary Reference .................... 20

           3.    The District Court Properly Found That Secondary Considerations Did Not Support A Finding of Non-Obviousness. .......................................................................... 24

           4.    The District Court Properly Found That The Pending Design Patent Application Is Not Relevant To The Obviousness Determination Of The '488 Patent. .......................................... 26

D.    THE '487 PATENT IS INVALID AS A MATTER OF LAW AS BEING OBVIOUS. ...........................................................................27

    1.    The Sporty K9 Baseball Jersey Qualifies As A Single Reference That Is Basically The Same As The Claimed Design. ....................................................................27

    2.    The Other Prior Art Jerseys Constitute Secondary References That Could Be Used to Modify The Primary Reference. .........31

    3.    The District Court Properly Found That The Pending Design Patent Application Is Not Relevant To The Obviousness Determination Of The '487 Patent..............................................35

E.    THE '488 PATENT IS INVALID AS A MATTER OF LAW UNDER SECTION 112. ..................................................................................35

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................37

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242 (1986) .................................................................................6

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012) ...........................................................15

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*,
853 F.2d 1557 (Fed. Cir. 1988) ..............................................................5

*Cable Electric Prods., Inc. v. Genmark, Inc.*,
770 F.2d 1015 (Fed. Cir. 1985) ............................................................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................5

*Durling v. Spectrum Furniture Co.*,
101 F.3d 100 (Fed. Cir. 1996) .............................................................11

*Egyptian Goddess, Inc. v. Swisa, Inc.*
543 F.3d 665 (Fed. Cir. 2008) .............................................................12

*Halliburton Energy Servs., Inc. v. M-I, LLC*,
514 F.3d 1244 (Fed. Cir. 2008) ...........................................................36

*High Point Design LLC v. Buyers Direct, Inc.*,
Case No. 2012-1455 (Fed. Cir., September 11, 2013) ................... 12, 13

*In re Antor Media Corp.*,
689 F.3d 1282 (Fed. Cir. 2012) ...........................................................26

*In re Borden*,
90 F.3d 1570 (Fed. Cir. 1996) ................................................... *passim*

*In re Carter*,
673 F.2d 1378 (CCPA 1982) ...................................................... *passim*

*In re Glavas*,
230 F.2d 447 (CCPA 1956)................................................. 7, 21, 23, 34

*In re Nalbandian,*
   661 F.2d 1214 (CCPA 1981) ............................................................ 16, 17, 25, 33

*In re Rosen,*
   673 F.2d 388 (CCPA 1982) ......................................................................... 7, 10

*Iron Grip Barbell Co. v. USA Sports, Inc.,*
   392 F.3d 1317 (Fed. Cir. 2004) ..........................................................................26

*KSR Int'l Co. v. Teleflex Inc.,*
   550 U.S. 398 (2007) .............................................................................. 8, 9, 23

*L.A. Gear, Inc. v. Thom-McAn Shoe Co.,*
   988 F.2d 1117 (Fed. Cir. 1993) ....................................................................... 23, 24

*Markman v. Westview Instruments, Inc.,*
   517 U.S. 370 (1996) ........................................................................................35

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ......................................................................................5-6

*Microsoft Corp. v. i4i Ltd. P'ship,*
   131 S.Ct. 2238 (2011) ...................................................................................6

*MRC Innovations, Inc. v. Hunter MFG.,*
   LLP, 2012 U.S. Dist. LEXIS 79685 (N.D. Ohio, June 7, 2012) ............................1

*MRC Innovations, Inc. v. Hunter MFG., LLP,*
   921 F.Supp. 2d 800 (N.D. Ohio 2013) .................................................................1

*Newell Cos. v. Kenney Mfg. Co.,*
   864 F.2d 757 (Fed. Cir. 1988) ..............................................................................9

*Ormco Corp. v. Align Tech., Inc.,*
   463 F.3d 1299 (Fed. Cir. 2006) ...........................................................................25

*Ryco, Inc. v. Ag-Bag Corp.,*
   857 F.2d 1418 (Fed. Cir. 1988) .........................................................................6, 8

*Ryko Mfg. Co. v. Nu-Star, Inc.,*
   950 F.2d 714 (Fed. Cir. 1991) ..............................................................................6

*Sears, Roebuck & Co. v. Stiffel Co.*,
  376 U.S. 225 (1964) ..................................................................2

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
  758 F.2d 613 (Fed. Cir. 1985) ........................................... 35-36

*Simmons Fastener Corp. v. Illinois Tool Works, Inc.*,
  739 F.2d 1573 (Fed. Cir. 1984) ..............................................25

*Smith v. Orr*,
  855 F.2d 1544 (Fed. Cir. 1988) ..............................................23

*Titan Tire Corp. v. Case New Holland, Inc.*,
  566 F.3d 1372 (Fed. Cir. 2009) ................................................8

*Traffix Devices, Inc. v. Marketing Displays, Inc.*,
  532 U.S. 23 (2001) ....................................................................2

*Trimed, Inc. v. Stryker Corp.*,
  608 F.3d 1333 (Fed Cir. 2010) ..................................................9

STATUTES

35 U.S.C. § 103(a) .......................................................................7

35 U.S.C. § 112 ........................................................... 35, 37, 38

35 U.S.C. § 171 .........................................................................36

RULES

Fed. R. Civ. P. 56(c) ...................................................................5

## I.    STATEMENT OF RELATED CASES

There is no other appeal in or from the same civil action in the lower court that has been previously before this or any other appellate court.  Counsel for Hunter and CDI are not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## II.    STATEMENT OF ISSUES

In addition to the two issues raised by MRC, Hunter and CDI submit that the following issue is also presented for review by this Court:

Did the District Court err in denying summary judgment in favor of Hunter and CDI in holding that U.S. Design Patent No. D634,488 (the "'488 Patent") is not invalid under 35 U.S.C. § 112?

## III.    STATEMENT OF THE CASE

Hunter and CDI have no disagreement with MRC's Statement of the Case, but cite two published decisions of the district court in the underlying case, as required by Rule 28(a)(7) of the Federal Circuit Rules:

(1) *MRC Innovations, Inc. v. Hunter MFG.*, LLP, 2012 U.S. Dist. LEXIS 79685 (N.D. Ohio, June 7, 2012); and

(2) *MRC Innovations, Inc. v. Hunter MFG., LLP*, 921 F.Supp. 2d 800 (N.D. Ohio 2013).

1

## IV. SUMMARY OF THE FACTS

Despite the lack of any dispute of material fact underlying the obviousness determination, Hunter and CDI initially question the relevance on appeal of various alleged "facts" asserted in MRC's opening brief. For instance, MRC repeatedly alleges that CDI (on behalf of Hunter) "copied" MRC's commercial embodiment of a pet football jersey[1] and a pet baseball jersey. Any item is subject to unadulterated copying unless the item is protected by another's intellectual property right. *See Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001) ("unless an intellectual property right such as a patent . . . protects an item, it will be subject to copying"); *see also Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964) ("[a]n unpatentable article . . . is in the public domain and may be made and sold by whoever chooses to do so."). Even if MRC established copying, Hunter and CDI had a good faith belief that the '487 and the '488 patents were invalid based on prior art that was not before the United States Patent and Trademark Office (USPTO).

As noted above, the only issues raised by MRC in this appeal relate to whether the District Court erred in granting summary judgment by holding that the '487 and '488 Patents are invalid as being obvious in view of the prior art. The

---

[1] MRC's original complaint filed on March 20, 2012, included a claim for copyright infringement, which was immediately withdrawn following Hunter's filing of a Motion to Dismiss (A40-A42, Docket Entries 1, 21, 22 and 27).

undisputed facts before the District Court show that two prior art pet football jersey designs of Cohen are "basically the same" as the design claimed in the '488 Patent, which varies, at best, in features that are well-known in the art as applied to the same types of articles, i.e., pet football jerseys. This much was admitted below by MRC (A209-A210).

Furthermore, undisputed facts show a prior art baseball jersey with "basically the same" design claimed in the '487 Patent, differing only in features that were well-known to an ordinary designer and applied to articles of the same type. Based on these facts, Hunter and MRC submit that the '487 and '488 Patents are obvious and the respective patents invalid. Finally, the '488 Patent fails to depict any ornamental appearance of the claimed interlock fabric and, thus, must be found indefinite as a matter of law.

## V.   SUMMARY OF THE ARGUMENT

When the facts underlying an obviousness determination are not in dispute, as in this case, this Court should review whether summary judgment of invalidity is correct by applying the law to the facts. Here, the District Court properly considered the evidence relating to substantially similar designs of prior art pet sports jerseys. Based on this consideration, the District Court properly found the '487 Patent and the '488 Patent invalid as obvious by clear and convincing evidence and, therefore, granted summary judgment.

3

MRC contends that the lower court improperly construed the evidence of record and, thus, erred in granting summary judgment in favor of Hunter and CDI. This contention is based solely on *de minimis* differences (from the standpoint of the designer of ordinary skill) between the prior art pet jerseys and the designs claimed by the patents at issue, and MRC's unsupported allegations that the differences are "substantial" (despite being well known and commonly applied to articles of the same type, as MRC admits).  Regardless of the minor differences at issue (which any design that is not an identical copy would necessarily possess), the District Court properly concluded as a matter of law that the prior art designs of pet jerseys are "basically the same" as those claimed in the respective patents, and they differ in only minor ways that cannot sustain patentability (either because such differences are *de minimis* or would have been suggested to a designer of ordinary skill).  As this is the correct conclusion based on the undisputed facts, this Court should affirm the District Court's holding that the '487 and '488 Patents are invalid as a matter of law.

Finally, while the District Court granted the motion as to invalidity on obviousness grounds, it erred in holding an issue of disputed fact exists as to whether the '488 Patent is invalid as indefinite.  This conclusion should be reached by this Court on *de novo* review based upon the clear and convincing evidence that the '488 Patent cannot "reasonably apprise those skilled in the art" of the nature of the claimed ornamental design because it fails to disclose the location and

appearance of any "interlock fabric." As a matter of law, this deficiency makes it impossible to understand the scope of the invention or how to avoid an infringement and, therefore, the '488 Patent is invalid under Section 112.

## VI.   ARGUMENT

### A.   SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party has the initial burden of demonstrating the absence of any genuine issue of material fact. *Id.* at 323. While the court must draw all reasonable inferences in favor of the nonmoving party, the moving party does not need to disprove matters on which the nonmoving party has the burden of proof at trial. *Id*. Once the moving party meets it burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to prove otherwise. *Id.* at 325.

"To create a genuine issue of fact, the nonmovant must do more than present some evidence on an issue it asserts is disputed." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed. Cir. 1988). Instead, it must provide "specific facts showing that there is a genuine issue for trial." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). Rather, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

**B.    INTRODUCTION.**

All patents are presumed valid by statute, and questions of validity arising during enforcement are matters of law appropriate for summary judgment. *See Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991). The burden of overcoming the statutory presumption of validity rests on the party asserting invalidity and must be established by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242 (2011). Yet, the burden of persuasion associated with proving invalidity may be more easily met where a challenger relies on prior art not before the USPTO when granting the patent. *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1423 (Fed. Cir. 1988).

Under Section 103(a) of the Patent Act, a patented invention may be held invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have

been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "Design patents are subject to the same conditions on patentability as utility patents, including the nonobviousness requirement . . . ." *In re Borden*, 90 F.3d 1570, 1574 (Fed. Cir. 1996).

When making an obviousness inquiry, this Court looks to the overall appearance or the whole visual effect of the design rather than individual features. *See Id.*; *In re Rosen*, 673 F.2d 388, 390 (CCPA 1982). In order for a design to be unpatentable as being obvious, "there must first be a basic design reference in the prior art, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Borden*, 90 F.3d at 1574 (quoting *Rosen*, 673 F.2d at 391). However, obviousness need not be based on a single reference, as secondary references may be considered to find a design obvious. *Borden*, 90 F.3d at 1574. In order for secondary references to be considered and combined with the primary reference, the designs must be "so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id.* (quoting *In re Glavas*, 230 F.2d 447, 450 (CCPA 1956)). This Court and its predecessor has made it clear that the mere appearance of the features in one "so related" prior art design may suggest the application of

7

these features to another design, regardless of any express teaching or suggestion. *Id.*

This is entirely consistent with recent precedent of the Supreme Court in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007), which emphasized "an expansive and flexible approach" to the obviousness inquiry.[2] The Supreme Court further cautioned that the "obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation." *Id.* at 418. While this Court has since held "that the application of *KSR* to design patents was new and untested ground," it remains true that "[d]esign patents, like utility patents, must meet the non-obviousness requirement . . . ." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009). Hence, regardless of whether this Court decides to apply *KSR* to design patents, the ambit of this Court's precedent remains clear: the obviousness inquiry simply does not require any express teaching, suggestion, motivation, or "basis" for combining the features of different prior art designs relating to the same articles of manufacture.

The determination that an invention is obvious under Section 103 is also a conclusion of law based on fact. *Ryco*, 857 F.2d at 1423. Summary judgment of

---

[2] Interestingly, MRC cited *KSR* both before the District Court and in its opening brief, despite the subsequent allegation that a "basis" for combining references is required for a finding of obviousness in the design patent context.

8

obviousness is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *Trimed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed Cir. 2010) (quoting *KSR*, 550 U.S. at 427). "Where the ultimate legal conclusion of obviousness is disputed, but not the underlying facts, there is no issue of fact requiring a trial, even though some facts favor obviousness and some non-obviousness." *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 763 (Fed. Cir. 1988).

### C. THE '488 PATENT IS INVALID AS OBVIOUS.

#### 1. Two Prior Art References Qualify As Basically The Same As The Claimed Design.

The undisputed facts establish that the two pet sports jerseys shown below (i.e. the "V2" pet jersey and the "Eagles" pet jersey) qualify as prior art not considered by the USPTO (despite the fact that they were known by inventor Cohen) during prosecution of the '488 Patent:



| '488 Patent | V2 Jersey | Eagles Jersey |
|---|---|---|

MRC initially asserts error in the finding that the Eagles pet jersey designed by Cohen constitutes "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design,'" or stated another way, a "*Rosen*" reference.[3]   While MRC attempts to second guess the finding below, this Court has noted that "[i]n comparing the patented design to a

---

[3] *In re Rosen*, 673 F.2d at 391.

prior art reference, the trial court judge may determine almost instinctively whether the two designs create basically the same visual impression." *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).

The District Court in this case went far beyond an instinctive determination: it discussed the claimed design of the '488 Patent by expressly listing the features of the primary references and noting that these features were all present in the claimed design. Specifically, the District Court stated that "[t]he Eagles jersey is clearly a pet football jersey having an opening at the collar portion for the head of the pet, two openings and sleeves stitched to the body of the jersey on either side for limbs of the dog, a body portion on which a football logo is applied (extending from the top of the jersey to the bottom of the jersey and covering a portion of the body of the pet). As Cohen himself states in his declaration, the Eagles jersey is made 'primarily of a mesh and interlock fabric,' exactly what is claimed in the description of the '488 patent. (See Cohen Dec. at ¶ 10. '488 Patent, Description.) In addition, the Eagles jersey exhibits ornamental surge stitching, which plaintiff emphasizes exists in the claimed design." (A15). This was adequate to provide the correct overall visual impression created by the design of the '488 Patent and determine whether there was a single reference that creates "basically the same" overall visual impression.

11

Requiring any more description from the District Court would divert focus from overall appearance, contravening longstanding precedent. Moreover, in *Egyptian Goddess*,[4] this Court recognized that a design is better represented by illustration than description: "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to construe design patent claim by providing a detailed verbal description of the claimed design.[5]

Although MRC raises no issue regarding the District Court's verbalization of the claimed design, this Court recently addressed this issue in *High Point Design LLC v. Buyers Direct, Inc.*, Case No. 2012-1455 (Fed. Cir., September 11, 2013). This Court found that "the district court erred by failing to translate the design of the '183 patent into a verbal description" and "[t]he closest to the necessary description was the [district] court's comment characterizing the design of the '183 patent as 'slippers with an opening for a foot that can contain a fuzzy (fleece) lining and have a smooth outer surface." *Id*. at 16. The District Court here

---

[4] *Egyptian Goddess, Inc. v. Swisa, Inc.* 543 F.3d 665, 679 (Fed. Cir. 2008).

[5] Hunter and CDI submit that there is an inconsistency between not requiring verbalization of a claimed design for the purpose of determining infringement (i.e., for the purpose of determining whether the patented and accused designs are "substantially the same") and requiring verbalization of a claimed design for the purpose of determining obviousness (i.e., for the purpose of determining whether the patented design and prior art are "basically the same"). *Cf.* footnote 1 of *Egyptian Goddess*, 543 F.3d at 679.

12

went significantly further in its verbalization of the claimed design, discussing five common features of the prior art pet jersey and the pet jersey of the '488 Patent (A15). Hence, *High Point* is factually distinguishable from the present situation.

MRC notes several differences between the Eagles pet jersey and the pet jersey design of the '488 Patent, which the District Court also fully acknowledged. Specifically, the District Court stated: "The only differences identified by the plaintiff between the Eagles jersey and the pet football jersey of the '488 patent relate to the V-neck collar depicted in the patented design, additional ornamental surge stitching appearing on the claimed design (i.e., unlike the Eagles jerseys, the claimed design uses ornamental surge stitched [sic, stitching] down the rear portion of the jersey in addition to ornamental serge stitching at the top of the jersey and in between the sleeves), and to 'an interlock fabric panel' that appears on the side portion of the claimed design." (A15-A16). Nevertheless, the District Court correctly held that the "asserted differences are either *de minimis* or are plainly suggested by related secondary prior art references." (A16).

While the District Court did not specifically address whether the V2 pet jersey qualifies as a "Rosen" reference, it plainly does. Namely, the V2 pet jersey includes the following claimed elements: (1) a V-shaped opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey; (3) cross-stitching

13

between the sleeves; (4) two side portions extending from the sleeves to the bottom of the jersey; (5) the neck, sleeve and side portions of the jersey are made from a non-mesh material; and (6) a body made from a mesh material.[6]

Accordingly, undisputed evidence confirms that the pet jersey claimed in the '488 Patent is "basically the same" as the V2 pet jersey. Indeed, the only modest difference between the V2 pet jersey and the claimed pet jersey is the "serge" stitching and the side panels made from interlock fabric. Regardless, these are well known features found in related prior art pet jerseys. For example, it is undisputed that the Eagles pet jersey includes identical "serge" stitching on the front:



The Eagles jersey also contains "serge" stitching on the back of the jersey following the contours of the seams in a manner identical to the claimed jersey, with the exception of the vertical "serge" stitching extending from each of the

---

[6] Similarly, the district court found that the "Sporty K9" dog football jersey includes the same claimed features (A10-A11).

14

sleeves to the bottom of the jersey along the corresponding seams. It would clearly have been obvious to a designer of ordinary skill to extend the existing serge stitching to other existing seams of the Eagles jersey, resulting in "serge" stitching on both the front and back that is identical to the claimed design.



Although not argued to the District Court, MRC now attempts to liken the present case with the quite different situation confronted by this Court in *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314 (Fed. Cir. 2012). With respect to one Apple design patent challenged as obvious, this Court found error in the lower court's holding that the prior art "Fidler" tablet created the same visual impression as the patented design based upon "substantial differences in the overall visual appearance." *Id.* at 1330. This is not surprising, since the overall appearance was remarkably different. Specifically, the Fidler tablet was not symmetrical like the patented design and included a frame that created "a very different impression from the 'unframed' . . . design [of the patent at issue]." *Id.*

In contrast to the plainly dissimilar tablets under consideration in *Apple*, the "overall appearance" of the Eagles football jersey and the jersey claimed in the '488 Patent remain "basically the same." As properly found by the District Court, the three alleged differences between the jerseys are *de minimis* and, under this Court's precedential decisions, warrant a finding of obviousness as a matter of law.

For example, in *In re Nalbandian,* 661 F.2d 1214 (CCPA 1981), the Court of Customs and Patent Appeals considered the obviousness of a design for a pair of tweezers against the closest prior art "Johnson":



Although the Court stated that "the claimed design is substantially identical in overall configuration to the design shown in Johnson for the same type of article," it recognized several noticeable differences in the appearance of the articles, as illustrated in the above figures, including the finger grips of a different shape and the straight, rather than curved pincers. *Id.* at 1217. Nonetheless, these differences were held *de minimis* as a matter of law, for "it is well within the skill of an

16

ordinary designer in the art to make the modification of the fluting and that it would have been obvious to do so.  Such changes do not achieve a patentably distinct design."  *Id*. at 1217-18.  This was the case despite the lack of any evidence of the features in the prior art (which starkly contrasts with the present situation, where MRC admits that the design features at issue were well known and used in multiple pet football jerseys) (A167-A168).

A similar decision finding the design of an article of clothing obvious (and thus even more pertinent to the present situation) is *In re Carter*, 673 F.2d 1378 (CCPA 1982).  There, the design was for the following infant's garment:

APPELLANT'S CLAIMED DESIGN:



The Court noted that the primary reference (Carter, below) did not show a tapered "nether region," but another reference (Geissmann, second below) had a flap with

the claimed configuration:



(Figs. 2, 3 and 5 of Geissmann)

While differences undeniably existed among the designs, these were held, as

a matter of law, to be "*de minimis* changes which would be well within the skill of

an ordinary designer in the art" and which "do not create a patentably distinct design." *Id*. at 1380. Despite these differences, the court further observed that the references were "both directed to infant garments of the same general type . . . , namely, a combined shirt and nether garment of simple lines" and therefore "[e]ither reference would satisfy the  . . . requirement of an ornamental design basically the same as the claimed design." *Id*. The situation is no different with the Eagles pet jersey as well as the V2 pet jersey, each of which, being pet jerseys, is clearly related to the claimed design. Thus, these prior art designs were correctly held by the district court to be all of the "same general type" or "basically the same," differing only in *de minimis* characteristics at best (and, as noted further below, suggesting the application of their characteristics to each other).

Here, the differences between the claimed design in the '488 Patent and those in the prior art are trivial or minor differences that would be "well within the skill of an ordinary designer in the art" as a matter of law. The "improvement" alleged to have been made in the '488 Patent by using an interlock material, a V-neck collar, and providing more serge stitching is clearly no more than the known use of elements applied to similar designs in the past. This is implicitly admitted by MRC (stating, *inter alia*, "[i]nterlock fabric is well known to designers of ordinary skill in the art" and is "used in a variety of applications, including T-shirts, sports uniforms and home furnishing products"; "[t]he design of the V2 Jersey included a

V-neck collar"; "[t]he design of the Eagles Jersey included interlock fabric sleeves"; "the design of the Eagles Jersey included ornamental serge stitching.") (A209-A210). There is simply nothing inventive or nonobvious about combining these well-known features in arriving at the design of the '488 Patent.

As demonstrated above, the District Court properly found a lack of "significant" differences between the design of the '488 Patent and the pet football jerseys of the prior art. Stated another way, the addition of vertical serge stitching along two seams on the back of the jersey does not change the overall visual impression of the jersey and would have been obvious to "a designer of ordinary skill who designs articles of the type involved." *Borden*, 90 F.3d at 1574.

> 2. The Prior Art Pet Jerseys Constitute Related References That May Be Combined With The Primary Reference.

MRC also argues that the V2 and Sporty K9 jerseys could not be combined with the Eagles jersey to create a design that has the same overall visual appearance as the claimed design. Specifically, MRC argues that the alleged flaw in the District Court's analysis "is that there is no evidence whatsoever in the record explaining why a designer of ordinary skill in the art would have found it obvious to select some attributes or features of the V2 and Sporty K9 jerseys for implementation into the Eagles jersey, but not others."

20

As noted above, the law holds that a design may be found obvious over a "primary reference" when other secondary references "are so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Glavas*, 230 F.2d at 450. Here, taking the V2 pet football jersey as the primary reference for the sake of argument, the Eagles pet football jersey is clearly "so related" as to suggest the application of serge stitching to existing seams of the body, as is done in the design of the '488 Patent. Indeed, it would have been obvious to a designer of ordinary skill in the art to modify the V2 pet jersey to include serge stitching along the seams of the pet jersey as shown in the Eagles pet jersey. Alternatively, taking the Eagles pet jersey as the primary reference, the V2 pet jersey is so related as to suggest the addition of a V-neck and non-mesh side panels. In any case, the end result is the same: the design of the '488 Patent is invalid as obvious, as the District Court correctly concluded.

An instructive case is *Borden*, 90 F.3d 1570, in which this Court confronted the obviousness of a container design. The cited prior art included three other container designs, which this Court acknowledged differed from the claimed design, including the shape of the sides of the container and the width of the small chamber as compared to the large chamber. As in this case, one issue on appeal was whether the prior art references could be properly combined to result in the

21

combination that represented the claimed design. Finding in the affirmative, this Court held that "the two missing design elements are not taken from unrelated references, but are found in other dual-chamber containers" and thus "the secondary references provide the two design elements necessary to bridge the small gap between the [primary] container and Borden's claimed design." *Id.* at 1575. Hence, the claimed design was found obvious because the prior art "taught the two specific design elements that would convert the [primary] reference into appellant's claimed design, and did so in a setting that would suggest the combination to one of skill in the art." *Id.* at 1575-76.

This is precisely the present situation. Both of the prior art references relied upon by the lower court in finding the '488 Patent invalid as obvious are pet jerseys. Accordingly, the features MRC alleges are missing from the pet jersey claimed in the '488 Patent are found in closely related prior art in a setting that would suggest the combination and "bridge the small gap" MRC asserts.

In attempting to establish otherwise, MRC relies on this Court's decision in *L.A. Gear, Inc. v. Thom-McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993), for the proposition that "[a] reconstruction of known elements does not invalidate a design patent, absent some basis whereby a designer of ordinary skill would be led to create this particular design." MRC's reliance on this statement in *L.A. Gear* is misplaced for several reasons.

22

First, combining a primary reference with a secondary reference was not an issue in *L.A. Gear* – there was no mention whatsoever in *L.A. Gear* of the seminal *Glavas* test that the secondary and primary references had to be "so related that the appearance of certain ornamental features in one would suggest application of those features to the other". *In re Glavas* at 801. The term "so related" naturally means designs for the same or similar types of devices. *Id.* The later *Borden* case cited *L.A. Gear* for the "basically the same" primary "Rosen" reference test, but additionally cited *Glavas* for the proper test for combining secondary and primary references. This Court in *Borden* quite properly found that all of the prior art references were dual chamber containers, and as such were "so related", as are the pet jerseys in this case.

Second, the statement in L.A. Gear relied upon so heavily by MRC has been put in proper perspective by the *KSR* case where the Supreme Court cautioned that the "obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation." *Id.* at 418.[7]

---

[7] Given the affirmance of the lower court's holding based on the lack of any teaching or suggestion in the prior art, the "some basis" language in *L.A. Gear* may be considered *obiter dicta*, for it is unnecessary to the affirmance of the underlying decision. *Smith v. Orr*, 855 F.2d 1544, 1550 (Fed. Cir. 1988) ("It is well established that a general expression in an opinion, which expression is not essential to the disposition of the case, does not control a judgment in a subsequent proceeding.").

23

Third, unlike in *L.A. Gear* where the defendant proffered a whopping 22 different references to show various features of a claimed design in an attempt to prove obviousness, the District Court in the present case clearly had a "basis whereby a designer of ordinary skill would be led to create this particular design." *L.A. Gear*, 988 F.2d at 1124. Specifically, the District Court expressly noted that the features were plainly shown in related pet football jerseys and, thus, were "well within the skill of an ordinary designer in the art." (A16). This is entirely consistent with the subsequent holding in *Borden*, not at all inconsistent with *Apple* or *L.A. Gear*, and confirms the correctness of the obviousness finding based on the undisputed facts here.

> 3. The District Court Properly Found That Secondary Considerations Did Not Support A Finding of Non-Obviousness.

MRC further attempts to rely on "secondary evidence" of non-obviousness. Despite alleging commercial success, copying and acceptance of others, MRC failed to offer objective evidence in support of these secondary consideration factors and instead relied on biased statements, conjecture, and attorney argument. Hence, MRC's submissions were fully considered and properly rejected by the District Court as not persuasive on the issue of nonobviousness.

MRC failed to provide evidence that any alleged commercial success relates to the merits of the claimed invention. Indeed, nothing provided by MRC

24

establishes the required nexus between the commercial success and the design of the '488 Patent. *See Nalbandian*, 661 F.2d at 1218 (stating "the declaration was not persuasive because the alleged commercial success was not shown to be attributable to the design."); *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed. Cir. 1984) ("[a] nexus between the merits of the claimed invention and the evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision."); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Hence, the District Court properly rejected any allegation of commercial success as lacking evidentiary support of a nexus as well.

Turning to the allegation of copying as a secondary consideration, even if copying were established, more than the mere fact of copying is necessary to make that action significant because copying may be attributable to other factors, such as contempt for the patentee's ability to enforce the patent because it is invalid. *Cable Electric Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015 (Fed. Cir. 1985). MRC's allegation that the "only reasonable inference" that can be drawn from the alleged copying is that the patented design is a commercial success (as contrasted with other factors that contribute to commercial success such as the marketing of the design) is simply untenable.

25

In addition, the District Court correctly held that MRC's reliance on licensing does not support a finding of non-obviousness. Importantly, MRC failed to proffer a license of the claimed jersey design to an entity that is not wholly owned by MRC,[8] let alone provide any evidence establishing "a nexus between any specific license and the patented invention." *In re Antor Media Corp.*, 689 F.3d 1282, 1292 (Fed. Cir. 2012). As this Court has observed, "without a showing of nexus, 'the mere existence of . . . licenses is insufficient to overcome the conclusion of obviousness.'" *Id.* at 1293 (quoting *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004)).

>    4.    The District Court Properly Found That The Pending Design Patent Application Is Not Relevant To The Obviousness Determination Of The '488 Patent.

Finally, MRC attempted to rely upon a pending design patent application for a hockey jersey for a dog in support of the validity of the '488 Patent and raises the issue again before this Court. Specifically, MRC contends that a U.S. Patent Examiner found the design of a hockey jersey for a dog nonobvious in view of the V2 Jersey, the Eagles Jersey and the design for a football jersey claimed in the '488 Patent.

---

[8] The only license made of record was between MRC and Fun-In-Games (FIG), a company owned by Global Consolidated Holdings, which, in turn, is owned by Mark Cohen, the inventor of the '487 and '488 Patents and owner of MRC.

Whether a different design might be held patentable over prior art is not relevant to whether the design claimed in the '488 Patent is invalid in view of the same prior art. The District Court properly reviewed this "evidence" and concluded that it "does not consider the Notice of Allowance issued in connection with the currently pending application for a design patent for a hockey jersey for a dog to be indicative of a finding by the USPTO of nonobviousness of the prior '488 design, and it is not dispositive of the Graham factors in connection with the '488 design." (A17).

### D. THE '487 PATENT IS INVALID AS A MATTER OF LAW AS BEING OBVIOUS.

1. The Sporty K9 Baseball Jersey Qualifies As A Single Reference That Is Basically The Same As The Claimed Design.

Turning to the '487 Patent, Hunter and CDI identified the prior art baseball jersey (shown below)[9] as the "Sporty K9" baseball jersey:

---

[9] The Sporty K9 pet baseball jersey images relied upon are taken from a brochure published in 2007 (as Hunter and CDI did not obtain an actual sample of the Sporty K9 baseball jersey), and illustrate the front and back views of the prior art pet baseball jersey in a particular orientation (a slightly folded, off-angle view) fixed at the time of publication (A158-A161). Even though these images are not ideal for comparing an actual Sporty K9 pet baseball jersey to the patented design, a designer of ordinary skill can readily visualize that if the sleeves were reoriented in the manner shown in the design patent, the appearance would more readily look like the design depicted in the '487 Patent, including the plan view with outstretched sleeves and extended bottom (which is not necessarily how the design would appear in the real world environment; see, e.g, the photographs of the reoriented "real world" V2 and Eagles pet jerseys, which are admitted prior art, and footnote 10, *infra*).



| '487 Patent | Sporty K9 Baseball Jersey |
|---|---|

MRC argues that the District Court clearly erred in finding that prior art Sporty K9 baseball jersey constitutes "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" However, the District Court properly noted that "[t]he Sporty K9 jersey is a pet baseball jersey having a V-shaped collar; two openings for sleeves with cuffs for

28

the two front limbs of the pet; a banded opening at the bottom of the jersey for the hind end portion of the pet; and four buttons extending vertically down the front of the jersey. All of these features are found in the jersey claimed in the '487 patent." (A21). As discussed above, the District Court's verbalization of the common features of the prior art pet jersey and the pet jersey of the '487 Patent (with the finding that the features are present in the claimed design) is distinguishable from the district court's overly broad verbalization of the claimed features in *High Point*.

MRC points to differences between the Sporty K9 baseball jersey and the claimed pet baseball jersey, such as the collar portion, the mesh fabric and the difference between length of the front and back of the jersey. Referring to the same argument it made with respect to the pet jersey of the '488 Patent, MRC also points to the *Apple* case in support of the argument that the District Court got it wrong based on the undisputed evidence (but, as noted above, the *Apple* decision is not factually on point).

With respect to the differences alleged by MRC, the District Court noted that the alleged differences were "minor differences" or "well known in the prior art" (A22). Specifically, the District Court noted that the "use of mesh in pet jerseys, as exemplified by the V2 pet jersey, was well known in the prior art" and that the "V2 and Eagles jerseys exhibit the same shape depicted in the claimed design" (A22). Neither of these points is disputed by MRC, as Cohen testified that the

29

Eagles pet jersey is made of mesh and has a shape that covers the dog's back and partially exposes a dog's underside or belly (A381).[10]

Although MRC alleges that the collar design demonstrates a "different" visual appearance, it is focuses on a singular element of the claimed design, which is not the proper inquiry. As noted in *Borden*, the proper "inquiry focuses on the visual impression of the claimed design as a whole and not on selected individual features." See *Borden* 90 F.3d at 1574. As noted above, the Sporty K9 baseball jersey qualifies as a single reference for which the design characteristics are "basically the same as the claimed design," which the District Court properly concluded is the case.

MRC's position regarding the significance of the differences is akin factually to *Carter*, 673 F.2d 1378, wherein the garments of the secondary

---

[10] Despite the difference of appearance resulting from the quality of the images discussed in the previous footnote, the Sporty K9 brochure clearly shows how a different prior art pet garment (a sports jacket, rather than the pet baseball jersey at issue in this appeal) may appear different in plan view and when actually worn by a pet (A160):



references (the two on the right below) differed in overall dimensions, sleeves, neckline appearance, and other respects from the claimed design (on the left below):



APPELLANT'S CLAIMED DESIGN

Yet, the court there had no trouble finding that "[e]ither reference would satisfy the . . . requirement of an ornamental design basically the same as the claimed design." *Id.* at 1380. This holding supports the District Court's finding that the Sporty K9 pet baseball jersey is "basically the same" in design characteristics, despite the differences alleged by MRC (and differs only in unobvious ways, as noted below). Thus, this Court should affirm the District Court's holding of invalidity of the '487 Patent based on the Sporty K9 pet baseball jersey alone.

2.    The Other Prior Art Jerseys Constitute Secondary References
      That Could Be Used to Modify The Primary Reference.

MRC's secondary argument is that neither the V2 pet jersey nor the Eagles pet jersey could be combined with the Sporty K9 pet baseball jersey to create a

31

design that has the same overall visual appearance as the pet jersey claimed in the '487 Patent. Specifically, MRC faults the District Court's analysis because " there is no evidence whatsoever in the record explaining why a designer of ordinary skill in the art would have found it obvious to select some attributes or features of the V2 and Eagles jerseys for implementation into the Sporty K9 pet jersey, but not others."

Initially, MRC's argument overlooks the fact that the V2 pet jersey also qualifies as prior art creating "basically the same" visual impression as the claimed dog baseball jersey design. This is because the V2 pet jersey has the following common design characteristics: (1) a V-shaped opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey; (3) a large opening at the base of the jersey which creates a difference between the length of the front and back of the jersey; (4) the neck, sleeve and bottom opening portions of the jersey being made from a non-mesh material; and (5) a body made primarily from a mesh material.[11] The only claimed features missing from the V2 jersey are the buttons, which are a common feature of baseball jerseys and plainly found in the related

---

[11] The Eagles pet jersey also creates the same overall visual impression as the claimed baseball jersey and has the same features as the V2 pet jersey with the exception of the V-neck.

32

Sporty K9 baseball jersey. Accordingly, the pet baseball jersey claimed in the '487 Patent is "basically the same" as the prior art V2 pet jersey as well. *See Carter*, 673 F.2d 1378.

Given their relatedness as prior art pet jerseys having similar characteristics, the references at issue are also properly combinable to arrive at the claimed design of the '487 Patent. For example, taking the V2 pet jersey as the primary reference for the sake of argument, the Sporty K9 baseball jersey suggests the application of four buttons extending down the front of the pet jersey, as is done in the '487 Patent. Alternatively, taking the Sporty K9 baseball jersey as the primary reference, the V2 and Eagles pet jerseys are so related as to suggest the use of a mesh material and a higher cut on the front of the jersey to expose the dog's underside (for functional reasons). Under either scenario, the features are suggested by the related designs, and the District Court correctly concluded that the design of the '487 Patent is obvious.

MRC's argument regarding the substantiality of the differences also lacks merit for the reasons discussed above relating to the '488 Patent. As noted previously, this Court and its predecessor have repeatedly considered differences in the appearance of minor features between claimed designs and the prior art, yet found the differences *de minimis* from the standpoint of a designer of ordinary skill, as a matter of law. *See Nalbandian,* 661 F.2d at 1217-18; *see also Carter*,

33

673 F.2d at 1380. With respect to the fabric claimed in the '487 Patent in particular, the use of mesh material in pet jerseys is well known in articles of the same type, i.e., the V2 pet jersey and Eagles pet jersey, and not a patentable advance. The same is true for the V-neck and the differential height of the front and back portions, as previously noted. The District Court here simply did not arbitrarily combine certain features from the secondary references from far afield with the primary reference to arrive at the claimed design as MRC contends, but properly concluded based on the cited universe of prior art pet jerseys that "these differences between the claimed design and the prior art are minor differences or are well known in the prior art" (A22). Indeed, all the prior art pet jerseys used in reaching the conclusion that the design claimed in the '487 Patent is obvious are closely related as being pet sports jerseys. Since these prior art pet sports jerseys are "so related that the appearance of certain ornamental features in one would suggest the application of those features to the other," a designer would have no trouble combining these references with the primary reference. *Carter*, 673 F.2d at 1380 (quoting *Glavas*, 230 F.2d at 450). Hence, the design claimed is obvious and the '487 Patent invalid as a matter of law.

3.    The District Court Properly Found That The Pending Design
Patent Application Is Not Relevant To The Obviousness
Determination Of The '487 Patent.

Finally, MRC again attempts to rely upon the allowed design patent application for a different design for a hockey jersey for a dog in support of the validity of the '487 Patent.   Hunter and CDI reiterate, and the District Court agreed, that the fact that a different design might be held patentable over prior art is not relevant to whether the design claimed in the '487 Patent is invalid in view of the same prior art.

## E.    THE '488 PATENT IS INVALID AS A MATTER OF LAW UNDER SECTION 112.

To be valid, design patents must comply with the requirements of section 112 of the Patent Act.   *See* 35 U.S.C. § 171.   Section 112, second paragraph, requires that the patent "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."   35 U.S.C. § 112 (2012).   This requirement exists because if the limits of a patent are not adequately defined, "a zone of uncertainty" is created which would discourage invention.   *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996).

A decision as to whether a claim is invalid as indefinite involves a determination of whether those skilled in the art would understand what is claimed. *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir.

35

1985) (claims must "reasonably apprise those skilled in the art" as to their scope and be "as precise as the subject matter permits."). If the accused infringer "shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification and the prosecution history," the claim is invalid. *Halliburton Energy Servs., Inc. v. M-I, LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).

The '488 Patent includes four figures, a written description, and a claim that limits the scope of the claimed design to require that "[t]he material of the football jersey is primarily of a mesh and interlock fabric." (A29-A34). Despite claiming the ornamental appearance of a fabric, the '488 Patent is completely silent regarding the location and features of any "interlock fabric." No location is specified in the text of the specification, and such location is not shown anywhere in the drawings. No texture or ornamental appearance of such an interlock fabric can be determined from the drawings, either. Thus, the '488 Patent cannot "reasonably apprise those skilled in the art" of the nature of the claimed ornamental design. Indeed, Cohen as the sole inventor testified that "interlock fabric" is made of "a hundred percent polyester," but admitted that "interlock can be many different textures" and that he could not tell if something is made of interlock fabric without touching it (A152, A380-A382).

Based upon statements made by Cohen and Hunter's president regarding the location of the mesh, the District Court held that the drawings "are sufficient to

indicate where mesh and interlock fabric are used in the claimed design that one reading the patent could ascertain had [*sic* how] to construct the claimed jersey." (A18). Hunter and CDI respectfully disagree, as the undisputed facts show that the location of the interlock fabric and, more importantly, its appearance, are nowhere found in the patent at issue. Thus, it is simply impossible to understand the nature and scope of what is claimed based on the specification and file history of the '488 Patent and no amount of discovery will lead to a different conclusion. As there can be no dispute that the ornamental appearance of the interlock fabric is not shown in the '488 Patent, it is indefinite and invalid under Section 112 of the Patent Act.

In light of the foregoing, the '488 Patent is invalid for being indefinite as a matter of law. Accordingly, this Court should hold the District Court erred by not granting Hunter and CDI summary judgment that the '488 Patent is invalid under Section 112 of the Patent Act.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

As demonstrated above, Hunter and CDI established by clear and convincing evidence that the '487 and '488 Patents are invalid as a matter of law. As MRC fails to rebut Hunter and CDI's evidence showing of no genuine issue as to any material fact or establish any error in the District Court's Judgment with regard to obviousness of the designs claimed by the '487 and '488 Patents, Hunter and CDI respectfully submit that this Court should affirm the District Court's Judgment finding the '487 and '488 patents invalid as obvious. MRC and Hunter have

further established that the clear and convincing evidence demonstrates that the '488 patent is indefinite for failing to comply with the requirements of Section 112 of the Patent Act. Accordingly, Hunter and CDI respectfully request that this Court find that the District Court erred by not granting Hunter and CDI summary judgment finding the '488 invalid under Section 112.

Respectfully submitted,

/s/Andrew D. Dorisio
Andrew D. Dorisio
Trevor T. Graves
King & Schickli, PLLC
247 N. Broadway
Lexington, KY 40507
Telephone: (859) 252-0889
Facsimile: (859) 252-0779

Edward D. Manzo
Mark J. Murphy
Husch Blackwell LLP
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
Telephone: 312-655-1500
Facsimile: 312-655-1501

Perry J. Saidman
Saidman DesignLaw Group, LLC
8601 Georgia Avenue, Suite 603
Silver Spring, MD 20910
Telephone: (301) 585-8601
Facsimile: (301) 585-0138

*Counsel for Appellees*

# United States Court of Appeals
## for the Federal Circuit

*MRC INNOVATIONS, INC. v HUNTER MFG., LLP, 2013-1433*

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by SAIDMAN DESIGNLAW GROUP, LLC, Attorneys for Appellees to print this document.  I am an employee of Counsel Press.

On **September 19, 2013**, Counsel for Appellees has authorized me to electronically file the foregoing **Brief of Appellees** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Randolph Edwin Digges, III (digges@rankinhill.com)
Robert A. Sidoti (sidoti@rankinhill.com)
Jonathan A. Withrow (withrow@rankinhill.com)
Rankin, Hill, Lewis & Clark, LLP
23755 Lorain Road, Suite 200
North Olmsted, OH 44070
216-566-9700

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

September 19, 2013                                    /s/ Robyn Cocho
                                                     Counsel Press

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as modified by Fed. Cir. R. 32(b), because the portion of the brief counted in the type-volume limitation contains 8,357 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Word in 14-point Times New Roman font.

s/ Perry J. Saidman
COUNSEL FOR DEFENDANTS-APPELLEES
HUNTER MFG, LLP
CDI INTERNATIONAL, INC.