**2013-1433**

In The

# United States Court of Appeals
## For The Federal Circuit

# MRC INNOVATIONS, INC.,

*Plaintiff – Appellant,*

v.

# HUNTER MFG., LLP,

*Defendant – Appellee,*

and

# CDI INTERNATIONAL, INC.,

*Defendant – Appellee.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO IN CASE NO. 12-CV-0684,
JUDGE PATRICIA A. GAUGHAN.**

───────────

## JOINT APPENDIX

───────────

Randolph E. Digges, III
Robert A. Sidoti
Jonathan A. Withrow
RANKIN, HILL & CLARK LLP
23755 Lorain Road, Suite 200
North Olmsted, Ohio  44070
(216) 566-9700

*Counsel for Appellant*

Peter J. Saidman
SAIDMAN DESIGNLAW GROUP, LLC
8601 Georgia Avenue, Suite 603
Silver Spring, Maryland  20910
(310) 585-8601

*Counsel for Appellees*

Andrew D. Dorisio
Trevor T. Graves
KING & SCHICKLI, PLLC
247 North Broadway
Lexington, Kentucky  40507
(859) 252-0889

*Counsel for Appellee Hunter MFG., LLP*

Edward D. Manzo
Mark J. Murphy
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois  60606
(312) 655-1500

*Counsel for Appellee CDI International, Inc.*

# TABLE OF CONTENTS

Appendix Page

## JUDGMENTS AND ORDERS APPEALED FROM

Judgment Entry of May 16, 2013 ...........................................................A1

Memorandum of Opinion and Order of January 31, 2013 ......................A2

## PATENTS-IN-SUIT

Cohen, U.S. Design Pat. No. D634,487 S .............................................A23

Cohen, U.S. Design Pat. No. D634,488 S .............................................A29

## PACER DOCKET SHEET

Docket Sheet ..........................................................................................A35

## OTHER PARTS OF RECORD

Second Amended Complaint for Patent Infringement with
    Demand for Jury ...........................................................................A74

Memorandum in Support of Defendants' Joint Motion for
Summary Judgment of October 10, 2012 ...........................................A125

Excerpts from Deposition of Mark Cohen of May 9, 2012.................A152

Declaration of Sharon Kelly of September 17, 2012:

    Exhibit 1 - Sporty K9 Brochure..................................................A158

Plaintiff's Memorandum In Opposition To Defendants'
Joint Motion for Summary Judgment of November 28, 2012............A167

Exhibit A - Excerpts from Deposition of Thomas Neth of May 10, 2012 .........A196

## TABLE OF CONTENTS (continued)

<u>Appendix Page</u>

Exhibit B - Excerpts from Deposition of Denis Casey of May 10, 2012 ...........A204

Declaration of Mark Cohen of November 26, 2012 ...........................................A209

    Exhibit A - E-mail from John T. Fitzgerald to Mark Cohen
    of September 7, 2010................................................................................A227

    Exhibit B - Excepts of Prosecution History of U.S. Design Patent
    Application Ser. No. 29/404,184 as of November 26, 2012 ...................A229

Defendants' Reply in Further Support of Joint Motion for
    Summary Judgment of December 10, 2012:

    Excerpts from Deposition of Mark Cohen of May 9, 2012......................A380

## CERTIFICATE OF SERVICE

Certificate of Filing and Service ........................................................................A387

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MRC Innovations, Inc.,** | ) | **CASE NO. 1: 12 CV 684** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Hunter MFG., LLP, *et al.*,** | ) | **Judgment Entry** |
| | ) | |
| **Defendants.** | ) | |

In light of the Court's granting of Defendants' Motion for the Voluntary Dismissal of its Counterclaim for Inequitable Conduct, and the Court's Memorandum of Opinion and Order dated January 31, 2013 resolving all of plaintiff's claims in favor of defendants and against plaintiff, judgment is now hereby entered in this matter in favor of defendants and against plaintiff.

      IT IS SO ORDERED.

                                   /s/ Patricia A. Gaughan
                                     PATRICIA A. GAUGHAN
                                     United States District Judge

Dated: 5/16/13

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MRC Innovations, Inc., | ) | CASE NO. 1: 12 CV 684 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Hunter MFG., LLP, and | ) | <u>Memorandum of Opinion and Order</u> |
| CDI International, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This is a patent infringement action pertaining to two design patents relating to sports jerseys for pets. Defendants Hunter MFG, LLP (Hunter) and CDI International, Inc. (CDI) have filed a joint motion for summary judgment. (Doc. 42.) Also pending before the Court is a motion by the plaintiff for oral argument. (Doc. 51.) For the reasons stated below, defendants' motion for summary judgment is granted, and plaintiff's motion for oral argument is denied.

**Facts**

Plaintiff MRC Innovations, Inc. (MRC) is the owner by written assignment of all right, title, and interest to two design patents: U.S. Design Patent No. D634, 488 (the '488 patent), entitled "Football Jersey for a Dog," and U.S. Design Patent No. D634,487 (the '487 patent), entitled "Baseball Jersey for a Dog." (Second Am. Complt., Exs. A and B.) The '488 patent claims an ornamental design for a football jersey for a dog "as shown and described" in the patent. The '487 patent claims an ornamental design for a baseball jersey for a dog as "shown and described." The description in the '488 patent includes four figures depicting various views

1

**A2**

(side, front, and back) of the claimed pet football jersey and states that "[t]he material of the football jersey is primarily of a mesh and interlock fabric." The description in the '487 patent likewise includes four figures depicting various views of the claimed pet baseball jersey and states that "[t]he material of the baseball jersey is primarily of mesh fabric." Both patents issued on March 15, 2011 upon applications filed with the United States Patent and Trademark Office (USPTO) on September 8, 2010 by Mark Cohen. Cohen is the named inventor of the patents and is the principal shareholder of MRC. Cohen assigned both patents to MRC.

For over twenty years, Hunter has been a retailer of licensed sports consumer products. (Doc. 9, Neth Dec.) Hunter has sold pet jerseys since at least as early as 2006. (Neth Dec., ¶3.) Prior to the issuance of the design patents in suit, and in particular prior to September 9, 2009,[1] Cohen – through companies with which he was/is affiliated – supplied Hunter with pet jerseys for dogs that Hunter sold.

For example, Hunter sold a so-called "V2" pet jersey, depicted on page 2 of defendants' memorandum, prior to September 9, 2009. (Neth Dec., ¶1.) Hunter purchased the V2 pet jersey, which was manufactured in and imported from China, from Stephen Gould Corporation. Mark Cohen was a salesperson for Stephen Gould Corporation at least as early as 2008. (Neth Dec., ¶¶2, 3.) Hunter sold V2 jerseys purchased from Stephen Gould to customers within the United States prior to September 9, 2009. (*Id.* at ¶4.)

---

[1]

As discussed below, Section 102(b) of the Patent Act provides that a person is not entitled to a patent where "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. §102(b). Therefore, September 9, 2009, one year prior to the date the application for the '488 Patent was filed, is a critical date in determining the validity of the patent.

Beginning on or about September 2008, Cohen supplied V2 pet jerseys to Hunter through Fun-in-Games, Inc. (FiG), another company with which Cohen had a relationship.[2] Cohen states that FiG normally supplied pet jerseys to Hunter in specified colors, and Hunter then applied "transfers" to the pet jerseys for particular markets. For example, red pet jerseys supplied by FiG would be decorated with Ohio State logos or St. Louis Cardinals logos. Orange pet jerseys might be decorated with Cleveland Browns or Cincinnati Bengals logos. In some instances, FiG applied the transfers itself and shipped the finished product to Hunter.

In addition, between the years of 2007 and 2009, Cohen also designed and supplied to Hunter, through FiG, a pet football jersey developed by Hunter for a special NFL program. (Cohen Dep. at 47-48.) A sample of this jersey is depicted on page 3 of defendants' memorandum. It is a green pet jersey bearing a Philadelphia Eagles logo. Cohen arranged for this "Eagles" pet football jersey to be manufactured in China for Hunter sometime prior to July 30, 2009. (*Id*. at 50.) Hunter sold the "Eagles" pet jersey through third-party retailers (Wal-Mart and PetSmart) prior to July 30, 2009.

Cohen asserts that in 2009, he designed another pet jersey, a so-called "V3" jersey, which FiG subsequently also supplied to Hunter. (Cohen Dec., ¶12.) The "V3" pet jersey is depicted on page 5 of Cohen's Declaration bearing a Kentucky Wildcats logo. (Cohen Dec., p. 5.) Hunter began purchasing the V3 jersey from FiG sometime after September 8, 2009.

In December 2010, "issues" arose between Hunter and Cohen, including that Hunter was experiencing financial difficulties making Hunter "slow" at times to pay FiG. For this reason,

---

[2]

FiG is a "sister" corporation to MRC and is also owned by Cohen. FiG is licensed by MRC to manufacture and sell pet jerseys to third parties.

3

**A4**

Cohen informed Hunter that he did not want to do business with Hunter any longer. Cohen asserts, however, that FiG continued to supply Hunter with pet jerseys "for several months thereafter." (Cohen Dec., ¶19.) Hunter meanwhile sought proposals from other companies requesting that they manufacture and supply it with pet jerseys like the V3 jersey. Ultimately, Hunter contracted with another supplier, CDI, to manufacture and supply Hunter with pet jerseys. After the '487 and '488 patents issued on March 15, 2011, Cohen "assigned" both patents to MRC, which granted a license to FiG to produce the patented football and baseball pet jerseys. (*Id.*, ¶22.) Cohen asserts that after the patents were issued, Hunter continued to buy some V3 pet football jerseys from FiG, including those that bore labels marking them as patented. Hunter did not purchase any baseball jerseys from FiG after the '487 patent issued although Hunter had purchased pet baseball jerseys from FiG prior to the issuance of the patents. (*Id*. at ¶¶18, 22, 23.) By December 2011, FiG "had stopped shipping V3 Jerseys to Hunter" completely.

Plaintiff filed this lawsuit against Hunter and CDI on March 20, 2011, alleging infringement of the '487 and '488 patents. (Second Am. Complt., Doc. 37.) Plaintiff's Second Amended Complaint alleges that defendants have infringed the '488 and '487 patents by importing into the United States, offering to sell and selling, either directly or through third party retailers such as Petco, pet apparel (in particular, football and baseball jerseys for dogs) that are substantially the same as the designs covered by the '487 and '488 patents. As evidence of such infringement, plaintiff attaches to its complaint pages from Hunter's website and the website of third-party retailer Petco (through which Hunter also sells pet jerseys). These pages depict pet football and baseball jerseys for dogs currently being offered for sale by Hunter and supplied by

4

**A5**

CDI.  (Sec. Am. Complt., Exs. C-H).  Plaintiff contends these pet football and baseball jerseys have designs that are substantially the same as the designs covered in the '488 and '487 patents and infringe the patents.

Defendants move for summary judgment on the basis that both patents are invalid.

**Standard of Review**

Summary judgment is as appropriate in a patent case as in any other case.  *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed.Cir. 1984). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir.2003).  The court does not weigh the evidence to determine the truth, but rather, determines whether the evidence produced creates a genuine issue for trial.  *Id.*

A patent is presumed valid under 35 U.S.C. § 282.  "Consequently, 'a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise.' " *Chrimar Sys., Inc. v. Cisco Sys., Inc.*, 318 F.Supp.2d 476, 491 (E.D.Mich. 2004) (quoting *Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955, 962 (Fed.Cir. 2001)); *see also Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed.Cir.2002) (holding that a party seeking to establish particular claims as invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence).  However, the challenger's burden to show invalidity may be "more easily met" when

5

**A6**

the challenger produces prior art that is more pertinent than that considered by the Patent and Trademark Office during prosecution of the patent.  *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1423 (Fed. Cir. 1988); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1549 (Fed. Cir.1983).

**Discussion**

"A design patent protects the nonfunctional aspects of an ornamental design as seen as a whole and as shown in the patent."  *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006).  Under 35 U.S.C. §171, "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. §171.  To be patentable, a design must be new, original, ornamental, and nonobvious.  *Snhnadig Corp. v. Gaines Mfg.*, 494 F.2d 383, 387 (6th Cir. 1974).  As noted by the Federal Circuit in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008), in *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871), the Supreme Court established that the "ordinary observer" test applies to determine whether a design patent is infringed.  Under this test:  "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham*, 81 U.S. at 528.

In addition, like a utility patent, a design patent may be held invalid if it is deemed "obvious" under Section 103(a) of the Patent Act.[3]  Under Section 103(a), a patent is invalid:

---

[3]

*See In re Haruna*, 249 F.3d 1327, 1335 (Fed. Cir. 2001)(Section 103 applies to design patents in much the same manner as it applies to utility patents); *In re Borden*, 90 F.3d 1570, 1574 (Fed. Cir. 1996) ("Design patents are subject to the same conditions on patentability as utility patents, including the nonobviousness requirement of 35 U.S.C. §103).

6

**A7**

if the differences between the subject matter sought to be patented and the prior
art are such that the subject matter as a whole would have been obvious at the
time the invention was made to a person having ordinary skill in the art to which
said subject matter pertains.

35 U.S.C. §103(a). Section 102(b) of the Patent Act characterizes what is considered as "prior

art." Section 102(b): "A person shall be entitled to a patent unless- . . . .(b) the invention was

patented or described in a printed publication in this or a foreign country or in public use or on

sale in this country, more than one year prior to the date of the application for patent in the

United States." 35 U.S.C. §102(b). Thus, the "critical date" for purposes of the applicability of

Section 102(b) is the "date exactly one year prior to the date of application for the patent. . . ."

*Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1327 (Fed. Cir. 2001).

In addressing a claim of obviousness, the ultimate inquiry is whether a claimed design

would have been obvious to a designer of ordinary skill who designs articles of the type

involved. *Apple, Inc. v. Samsung Electronics Co. Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012).

Further, the Federal Circuit has explained that:

> [t]o determine whether "one of ordinary skill would have combined teachings of
> the prior art to create the same overall appearance of the same design," the finder
> of fact must employ a two-step process. First, "one must find a single reference,
> 'a something in existence, the design characteristics of which are basically the
> same as the claimed design.'" Second, "other references may be used to modify
> [the primary reference] to create a design that has the same overall visual
> appearance as the claimed design. . . .[T]he "secondary references may only be
> used to modify the primary reference if they are 'so related to the primary
> reference that the appearance of certain ornamental features in one would suggest
> the application of those features to another.'"

*Id*. (citations omitted). Once a piece of prior art has been constructed, the determination of

invalidity for "obviousness," like the determination of infringement, "requires application of the

ordinary observer test." A patented design is obvious if the patented design as whole is

7

**A8**

substantially the same, or has the same "overall" visual appearance, as the prior art.  *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009).  Obviousness is a legal conclusion based on four general types of underlying facts which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of nonobviousness.  *Graham v. John Deere Co.*, 383 U.S. 1 (1966) (the "*Graham*" factors).

*The '488 Patent*

Defendants contend the '488 patent is invalid for obviousness as a matter of law because the undisputed evidence shows that three different pet football jerseys, each qualifying as prior art under 35 U.S.C. §102(b) and not considered by the USPTO during prosecution of the '488 patent, have "basically the same" design characteristics as those claimed in the patent.  (Def. Mem. at 12-15.)  Specifically, defendants point to the V2 and "Eagles" pet football jerseys discussed above that Stephen Gould Corporation and FiG supplied to Hunter prior to September 9, 2009 (depicted on page 3 of defendants' memorandum), as well as to a pet jersey described in a printed publication and offered for sale in the United States at least as early as 2007 by Sporty K9, Ltd., an Arizona corporation (the "Sporty K9" jersey).  (Def. Mem., Ex. C.)  Defendants assert that each of these prior art pet jerseys qualifies as a single reference having design characteristics that are "basically the same" as the design claimed in the '488 patent, thus rendering the patent invalid for obviousness.  Defendants assert the claimed design and the prior art jerseys have the same design characteristics for the following reasons.

The V2 pet football jersey developed by Hunter includes:  (1) a V-shaped opening having

a collar portion for the neck of the dog; (2) two openings/sleeves with cuffs stitched to the body of the jersey for the front two limbs of the dog; (3) cross stitching between the sleeves; (4) two side portions extending from the sleeves to the bottom of the jersey; (5) the neck, sleeve, and side portions of the jersey are made from a non-mesh material; and (6) the body of the jersey is made from a mesh material.  This is similar to the elements of the claimed pet football jersey which  also includes:  a "V-shaped collar, two sleeves/openings stitched to the body of the jersey, two side portions extending to the bottom of the jersey and utilizing two different materials, i.e., a mesh material for the body and a non-mesh material for the neck, sleeves and side portions." (Def. Mem. at 12.)

The "Eagles" pet football jersey features: (1) an opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two limbs of the pet which are stitched to the body of the jersey, the stitching extends to the neck portion of the jersey; (3) cross- stitching between the sleeves; (4) the neck and sleeve portions of the jersey are made from a non-mesh material; and (5) the body of the jersey is made from a mesh material.  This is also similar to the design elements of the claimed jersey, "including an opening with a collar, two sleeves/openings stitched to the body of the jersey, a mesh material for the body and a non-mesh material for the neck and sleeve portions."  (*Id*. at 12-13.)

Finally, the "Sporty K9" pet jerseys include: (1) a V-shaped opening having a collar portion for the head of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey; (3) seams between the sleeves and the body; (4) two side portions extending from the sleeves to the bottom of the jersey; (5) the neck, sleeve, and side portions of the jersey are made from a non-mesh, polyester material; and (6) the body of the

9

**A10**

jersey is made from a mesh material.  (Def. Mem. at 13.)  The claimed jersey features these same elements, "including the V-shaped collar, two sleeves/openings stitched to the body of the jersey, two side portions extending to the bottom of the jersey and utilizing two different materials, i.e., a mesh material for the body and a non-mesh material for the neck, sleeves and side portions." (*Id*. at 13.)

Defendants assert that "the only modest difference" between the V2 and Sporty K9 jerseys and the jersey claimed in the '488 patent is that "surge stitching" appears along the sleeves of the claimed jersey, including a horizontal surge stitch between the two sleeves on the front of the jersey and vertical surge stitching on the back of the jersey extending from the sleeves to the bottom of the jersey.  (Def. Mem. at 14.)  However, defendants assert that the Eagles pet jersey includes nearly identical "surge stitching" on the front and back.  Defendants argue that the V2 jersey and Eagles jersey, as primary and modifying prior art references, demonstrate the invalidity of the '488 design.  In this regard, defendants argue:

> [T]aking the V2 jersey as the primary reference for the sake of argument, the Eagles jersey is clearly "so related" as to suggest the application of surge stitching to any material seams forming the body, as is done in the design of the '488 Patent.  Taking the Eagles jersey as the primary reference instead, the V2 jersey is also so related to suggest the addition of a V-neck and non-mesh side panels.  In any case, the end result is the same: the design of the '488 Patent is invalid as obvious.

(*Id*. at 15.)  Furthermore, defendants cite law supporting the proposition that "minor" or "trivial" differences between a patented design and a prior art reference that are "insignificant from the point of view of an ordinary observer" do not preclude a finding of invalidity on summary judgment.  *See id.*, *citing Int'l Seaway*, 589 F.3d at 1243 ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or

10

**A11**

trivial differences that necessarily exist between any two designs that are not exact copies of one another.").  Defendants contend that any differences that exist between the prior art pet football jerseys and the jersey claimed in the patent are, at best, minor or trivial and do not prelude a finding of invalidity.

In sum, defendants contend:  "the pet football jersey of the '488 Patent merely combines well known features of prior art jerseys in a way which would have been obvious to any designer of ordinary skill in the field of pet jerseys"; thus, the patent is invalid for obviousness under 35 U.S.C. §103.  (Def. Mem. at 16.)

Plaintiff disputes that defendants have demonstrated facts necessary to find invalidity under the *Graham* factors.

Plaintiff disputes defendants' position that any of the prior art references cited by defendants constitute a primary reference having an overall appearance, or design characteristics, that are "basically the same" as the claimed design, and plaintiff disputes defendants' position that only trivial or insignificant differences exist between the claimed design and the prior art.[4] According to plaintiff, the prior art jerseys differ from the claimed design because the V2 pet football jersey:  (1) does not have an "interlock" fabric panel that is present in the claimed design; (2) lacks "ornamental surge stitching" on the front and rear portions that is present on the claimed design; and (3) has "drop" sleeves whereas the claimed jersey has "raglan-style" sleeves.

The Eagles pet football jersey: (1) does not use "interlock fabric" as present in the

---

[4]

Plaintiff does not dispute the existence of any of the asserted prior art pet jerseys or that they qualify as "prior art" under the Patent Act.  Plaintiff also does not dispute that the jerseys were not disclosed to the USPTO during prosecution of the '488 and '487 patents.

11

**A12**

claimed design; (2) does not have a V-neck collar as present in the claimed design; and (3) does not have ornamental surge stitching on the *rear* portion of the jersey as present in the claimed design.

The Sporty K9 jersey: (1) has a panel that appears to be of a "dazzle" (*i.e.*, shiny) fabric; whereas, the claimed design has an "interlock fabric panel"; (2) does not have ornamental surge stitching on the front and rear of jersey as present in the claimed design; and (3) has "drop" rather than "raglan-style" sleeves.  (Pltf. Opp. at 15-21.)

Plaintiff's position is that the cited prior art references of record do not create the same overall visual appearance as the claimed design of the '488 patent for two reasons:  (1) "[t]he portion of the ornamental serge stitching on the back of the football jersey for a dog as shown and described in the '488 Patent is simply not present in any reference of record," and (2) "the only prior art references of record that show narrow side panels disposed between front and back mesh panels are made of dazzle fabric rather than interlock fabric."  (Pltf. Opp. at 23.)[5]

---

[5]

In his declaration, Cohen stated the following as to the differences between the V2 and Eagles jerseys and the V3 pet jersey on which the '488 Patent was allegedly based:

The material of the V3 Jersey is primarily of a mesh and interlock fabric. No dazzle fabric, which was used extensively in the V2 Jersey, was used in the V3 Jersey at all.  The design of the V3 Jersey includes raglan-style sleeves beneath which narrow panels of interlock fabric separating front and rear mesh panels extend to the bottom of the jersey.  In contrast, the design of the V2 Jersey included drop sleeves beneath which narrow panels of dazzle fabric separating front and rear mesh panels extended to the bottom of the V2 Jersey.  And, the design of the Eagles Jersey included raglan-style sleeves, but no narrow panels of interlock fabric between mesh front panels and rear panels.

In addition, according to Cohen,

The design of the V3 Jersey also includes ornamental serge stitching

12

Plaintiff also argues that defendants have failed to provide the Court with sufficient evidence as to the required *Graham* factors to support summary judgment. Specifically, plaintiff argues that defendants have not presented the Court with any evidence as to the third Graham factor (the level of ordinary skill in the art) because defendants do not produce evidence from a designer. In contrast, plaintiff asserts that it has evidence from a designer, namely Cohen himself, who states that the '488 patent would not have been obvious to a designer in view of the prior art jerseys. (Pltf. Opp. at 23, citing Cohen Dec., ¶¶30-34.)

Further, plaintiff contends there is objective evidence of nonobviousness (the fourth *Graham* factor) that defendants do not raise, specifically, evidence that the patented design has had commercial success, was copied, and has been accepted by others (factors that have all been recognized as indicia of nonobviousness). But to support its position of "nonobviousness," plaintiff relies primarily on Cohen's own statements that sales of the V3 jersey have been more successful commercially than sales of the V2 jersey, that Hunter and CDI copied the V3 jersey, and that MRC has granted a license under the patent to an entity not wholly owned by MRC or its principals. (Pltf. Opp. at 22, citing Cohen Declaration.) Plaintiff contends nonobviousness is also suggested because, on October 17, 2011, it filed an application for a design patent for a hockey jersey for a dog and identified the V2, the V3, and Eagles pet jerseys as known prior art.

_____

> extending from the neckline underneath both sleeves, horizontally across
> the chest and back, and vertically on the back only between the narrow
> interlock fabric panel and the rear mesh panel. This differs from the V2
> Jersey which did not include any ornamental serge stitching at all, and the
> Eagles Jersey which did not include the vertical serge stitching on the back
> only. The ornamental serge stitching in the V3 Jersey is decorative and is
> provided over the stitching that binds together the respective mesh and
> interlock fabric panels that form the V3 Jersey.

(Cohen Dec., ¶¶13, 14.)

According to plaintiff, the Patent Examiner issued a Notice of Allowance of a patent on November 12, 2012.  Plaintiff contends this supports a conclusion that the design shown and described in the '488 patent would not have been obvious to one having ordinary skill in the art in view of the V2 and Eagles jerseys.  (Pltf. Opp. at 24.)

The Court, however, finds that defendants have met their burden on summary judgment of demonstrating invalidity of the '488 patent on the basis of obviousness in view of undisputed prior art under the *Graham* factors.  As noted, the first factor, the scope and content of the prior art, is not in dispute and consists of the V2, Eagles, and Sporty K9 football jerseys identified by defendants.

In addition, defendants' position is persuasive that the combined teachings of the prior art are such that the subject matter of the design claimed in the '488 patent as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.  For instance, defendants persuasively argue that the prior art Eagles jersey is sufficient to constitute "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'"  The Eagles jersey is clearly a pet football jersey having an opening at the collar portion for the head of the pet, two openings and sleeves stitched to the body of the jersey on either side for limbs of the dog, and a body portion on which a football logo is applied (extending from the top of the jersey to the bottom of the jersey and covering a portion of the body of the pet).  As Cohen himself states in his declaration, the Eagles jersey is made "primarily of a mesh and interlock fabric," exactly what is claimed in the description of the '488 patent.  (*See* Cohen Dec. at ¶10. '488 Patent, Description.)  In addition, the Eagles jersey exhibits ornamental surge stitching, which plaintiff emphasizes exists in the claimed design.  The

14

**A15**

only differences identified by the plaintiff between the Eagles jersey and the pet football jersey of the '488 patent relate to the V-neck collar depicted in the patented design, additional ornamental surge stitching appearing on the claimed design (*i.e.*, unlike the Eagles jersey, the claimed design uses ornamental surge stitched down the *rear* portion of the jersey in addition to ornamental serge stitching at the top of the jersey and in between the sleeves), and to "an interlock fabric panel" that appears on the side portion of the claimed design.

Nonetheless, defendants' argument is persuasive that all of these asserted differences are either *de minimis* or are plainly suggested by related secondary prior art references. Taking the Eagles jersey as the primary prior art reference, the V2 and Sporty K9 jerseys are clearly "so related to the primary reference" as to suggest the application of the features of a V-neck collar and the use of non-mesh or other fabric on the side panel portions. Thus, one of ordinary skill in the art in the field of pet jersey design would have likely combined the teachings of the prior art to create the same overall appearance of the pet jersey in the claimed design.

Furthermore, the presence of additional ornamental surge stitching on the back of the pet jersey (as is shown on the claimed design), and the positioning of a strip of non-mesh, or "interlock" fabric on the side of the claimed design, are not "substantial" differences between the claimed design and the prior art so as to create a patently distinct design. Rather, these differences between the claimed design and the prior art are at the most "*de minimis* changes which would be well within the skill of an ordinary designer in the art." *See In re Carter*, 673 F.3d 1378, 1380 (Fed. Cir. 1982).

Plaintiff has not demonstrated that a genuine dispute exists on the basis of the third *Graham* factor, the level of skill of a designer in the art, because defendants did not present

15

**A16**

evidence of the opinion of an actual designer. As the Federal Circuit has recognized, the trial judge assesses obviousness from the position of a "fictitious" person of ordinary skill in the art. *See in re Nalbandian*, 661 F.2d 1214, 1216 (CCPA 1981). While expert testimony may be used to influence the court's decision, expert opinion on obviousness is not required. *See Peterson Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1547-48 (Fed. Cir. 1984), *abrogation on other grounds recognized by*, *Beatrice Foods Co. v. New England Printing and Lithographing Co.*, 899 F.2d 1171 (Fed. Cir. 1990). Furthermore, subjective evidence of obviousness from the point of view of the inventor is not persuasive evidence of nonobviousness. *See, e.g., Ryko*, 950 F.2d at 718 (test is not subjective obviousness to the inventor, but is objective obviousness to the artisan); *Celanese Corp. v. BP Chem. Ltd.*, 846 F. Supp. 542, 547 (S.D. Tex. 1994) ("evidence of the patent's 'subjective obviousness' to the inventor . . . is direct evidence of nothing."). Thus, Cohen's own opinion that the design claimed in the '488 patent would not have been obvious to a designer having ordinary skill in the art in view of the prior art at the time of the invention, and his own statements of commercial success, copying, and licensing of his claimed design, are unpersuasive to demonstrate a genuine dispute.

Finally, the Court does not consider the Notice of Allowance issued in connection with the currently pending application for a design patent for a hockey jersey for a dog to be indicative of a finding by the USPTO of nonobviousness of the prior '488 design, and it is not dispositive of the *Graham* factors in connection with the '488 design.

For the reasons stated above, defendants' position is persuasive that the '488 patent merely combines known features of undisputed – and clear and convincing – prior art jerseys in a way which would have been obvious to a designer of ordinary skill in the field of pet jerseys.

16

**A17**

The Courts finds, on the basis of evidence of the *Graham* factors before it, that the '488 patent is directed to an obvious design in view of the prior art and is invalid as a matter of law under Section 103(a) of the Patent Act.

Defendants challenge the validity of the '488 patent on the alternative ground that it fails to meet the requirements of 35 U.S.C. §112. The first paragraph of Section 112 requires that a patent "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. §112(a). The second paragraph of Section 112 requires the patent to "particularly point[] out and distinctly claim[] the subject matter which the inventor . . . regards as the invention." 35 U.S.C. §112(b). These requirements exist because "[i]f the limits of a patent are not adequately defined, a zone of uncertainty is created which would discourage invention." *Semmler v. American Honda Co., Inc.*, 990 F. Supp. 967, 974 (S.D. Ohio 1997).

Defendants argue that the '488 patent does not meet these requirements because it "is silent regarding the location and appearance of any 'interlock fabric'" even though plaintiff contends interlock fabric is a key feature of the claimed design. Defendants argue the patent does not reasonably apprise those skilled in the art of the nature of the claimed ornamental design. (Def. Mem. at 21.) Further, because the patent fails to describe the location of interlock fabric and its ornamental appearance, the patent "cannot enable one to make invention as claimed, since the location and ornamentation of the claimed interlock fabric is unknown" and impossible to ascertain from the specification. (*Id.* at 22.)

The Court does not find summary judgment warranted on this alternative ground.

17

**A18**

Plaintiff contends in its opposition brief that a designer having ordinary skill in the art would readily appreciate where mesh and interlock fabric is used.  In particular, the areas in the drawings of the patent that are shown with grid lines indicate that such areas would be constructed of mesh fabric, and the panels shown without grid lines would be constructed of interlock fabric.  Plaintiff points to statements by Cohen to this effect as well as testimony by Hunter's president that the area that looks like a grid in the patent would be constructed of mesh.  The Court finds that the drawings in the patent are sufficient to indicate where mesh and interlock fabric are used in the claimed design such that one reading the patent could ascertain had to construct the claimed jersey.  At a minimum, there is at least a genuine issue of material fact as to whether the patent includes "information sufficient for one having ordinary skill in the art to construct a football jersey for a dog in accordance with the claimed design" such that summary judgment is not appropriate under 35 U.S.C. §112.  (Pltf. Opp. at 29.)

*The '487 Patent*

Defendants also contend that the '487 patent is invalid as a matter of law.  They assert that the design claimed in the '487 patent for a baseball jersey for a dog is obvious under 35 U.S.C.§103(a) as well as anticipated under 35 U.S.C. §102(b).  "[D]esign patent anticipation requires a showing that a single prior art reference is identical in all material respects to the claimed invention."  *Door-Master Corp. v. Yorktowne, Inc*., 256 F.3d 1308, 1312 (Fed.Cir.2001).  The "ordinary observer" test applies in determining anticipation.  *See Int'l Seaway Trading Corp.*, 589 F.3d at 1237–40.

Defendants contend that the Sporty K9 baseball jersey qualifies as a "something in existence" the design characteristics of which are "basically the same" as the claimed design for

18

**A19**

purposes of both anticipation and obviousness.  Defendants emphasize that the Sporty K9 baseball jersey has:  (1) a V-shaped opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey; (3) a banded opening at the bottom of the jersey for the hind portion of the pet; and (4) four buttons extending vertically down the center of the front of the jersey.  (*See* Def. Mem., Ex. C.)  Defendants argue that the claimed pet jersey has all of these identical elements, including the V-shaped collar, two sleeves/openings stitched to the body of the jersey, a banded opening at the bottom of the jersey for the hind end portion of the pet and four buttons extending vertically down the center of the front of the jersey.  (*See* '487 Patent, Figure 2.)  While defendants acknowledge that the Sporty K9 jersey does not appear to be made of the same exact "mesh" material as is shown in the '487 Patent, defendants assert that this is a "minor" or "trivial" difference such that the design claimed in the '487 patent is anticipated by the Sporty K9 jersey.  (Def. Mem. at 19.)

Alternatively, defendants contend the design is obvious 35 U.S.C. §103(a) in view of the prior art.  In this regard, they assert that the Sporty K9 jersey "qualifies as a single reference for which the design characteristics are 'basically the same as the claimed design" and the only different feature disclosed in the '487 design, the use of mesh material, was "well known long prior to the time the '487 Patent was filed."  (*Id.*)  Indeed, defendants point out that "all of the football jerseys cited . . . by Defendants (which also qualify as prior art for the '487 Patent . . . ) are made of mesh material."  Thus, defendants contend the use of mesh material was suggested by prior art references so as to render the '487 patent obvious.

Plaintiff contends there are significant differences between the Sporty K9 baseball jersey

and the design claimed in the '487 patent, asserting that the Sporty K9 jersey has a different "collar assembly" (incorporating a "faux t-shirt portion" that the claimed design does not have); the claimed design uses a "mesh" fabric that is different from the polyester fabric of which the Sporty K9 jersey is made; and that the Sporty K9 jersey is shorter and more "tubular" when donned by a dog than the claimed design. (Pltf. Opp. at 27-28.)

The Court, however, agrees with defendants that the '487 patent, like the '488 patent, is invalid as obvious in view of the prior art under the *Graham* factors. Even assuming the Sporty K9 pet jersey, as a single prior art reference, is not "identical" in all material respects to the design claimed in the '487 patent in order to find anticipation, defendants' argument is persuasive that the Sporty K9 jersey constitutes a single prior art reference, "a something in existence," having design characteristics that are "basically the same" as the claimed design, and the differences that exist between the Sporty K9 jersey are either minor, or are plainly disclosed in modifying secondary primary art references. For largely the same reasons discussed above with respect to the '488 patent, the Court finds the '487 patent likewise invalid for obviousness.

The Sporty K9 jersey is undisputably prior art and falls within the scope of the '487 patent. With respect to the second *Graham* factor, the Sporty K9 jersey has "basically the same" design characteristics as the design claimed in the '487 patent from the perspective of an ordinary observer. The Sporty K9 jersey is a pet baseball jersey having: a V-shaped collar; two opening for sleeves with cuffs for the two front limbs of the pet; a banded opening at the bottom of the jersey for the hind end portion of the pet; and four buttons extending vertically down the front of the jersey. All of these features are found in the jersey claimed in the '487 patent. The differences identified by the plaintiff between the Sporty K9 jersey and the claimed design, in

particular the use of mesh and a somewhat shorter and more "tubular" shape, are minor differences or are well known in the prior art.  As defendants point out, use of mesh in pet jerseys, as exemplified by the V2 jersey, was well known in the prior art.  The V2 and Eagles pet jerseys exhibit the same shape as depicted in the claimed design.

Cohen's own subjective views as to whether his design would have been obvious to a designer of ordinary skill in the field of pet jerseys, and as to other secondary considerations of nonobviousness, are not objective or persuasive and are insufficient to create a genuine dispute as to nonobviousness under the third and fourth *Graham* factors.

As with the '488 patent, the Court finds that the '487 patent is directed to an obvious design in view of the prior art.  The design claimed in the '487 patent merely combines features of the prior art and would have been obvious to a designer of ordinary skill in the field.

**Conclusion**

For the reasons discussed above, defendants' motion for summary judgment is granted on the ground that the '488 and '487 patents are invalid under 35 U.S.C. §103(a).  Oral argument is not necessary and, therefore, plaintiff's motion for oral argument is denied.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/31/13

21

**A22**



US00D634487S

(12) **United States Design Patent**
Cohen

(10) Patent No.: **US D634,487 S**
(45) Date of Patent: ** **Mar. 15, 2011**

(54) **BASEBALL JERSEY FOR A DOG**

(75) Inventor: **Mark Cohen**, Mason, OH (US)

(73) Assignee: **MRC Innovations**, Mason, OH (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/369,425**

(22) Filed: **Sep. 8, 2010**

(51) **LOC (9) Cl.** ................................................. **30-01**

(52) **U.S. Cl.** .................................................... **D30/145**

(58) **Field of Classification Search** ............... D30/145,
D30/144, 151–154; 119/678, 850, 673, 702,
119/712, 792–798, 758, 760, 769, 770, 784,
119/815, 818, 856, 863, 864, 905, 907, 802,
119/857, 865, 725, 771; 52/3; 54/79.4, 79.1,
54/80.1, 79.2; D3/271.2, 217, 327; 150/154;
36/111; 604/293; 602/79, 61
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,437,255 | A | * | 11/1922 | Mallinson .................... 54/79.2 |
| 1,595,834 | A | * | 8/1926 | Griffiths ........................ 54/79.1 |
| 2,103,109 | A | * | 12/1937 | De Mar ....................... 54/79.1 |
| 2,273,706 | A | * | 2/1942 | Hafner ......................... 54/79.1 |
| 2,400,781 | A | * | 5/1946 | Priour .......................... 54/79.1 |
| 2,417,803 | A | * | 3/1947 | De Mar ....................... 54/79.1 |
| 3,141,443 | A | * | 7/1964 | Huey ........................... 119/854 |
| D228,926 | S | * | 10/1973 | Bennett ....................... D30/145 |
| 3,792,687 | A | * | 2/1974 | Ehrman ....................... 119/868 |
| 4,095,562 | A | * | 6/1978 | Graham ....................... 119/868 |
| 4,290,386 | A | * | 9/1981 | Eiriksson .................... 119/868 |
| 4,355,600 | A | * | 10/1982 | Zielinski ..................... 119/850 |
| 4,527,991 | A | * | 7/1985 | Msarsa ........................ 604/391 |
| 4,577,591 | A | * | 3/1986 | Wesseldine ................. 604/391 |
| 4,813,949 | A | * | 3/1989 | O'Rourke .................... 604/391 |
| 4,996,949 | A | * | 3/1991 | Wunderman et al. ........ 604/390 |
| 5,005,525 | A | * | 4/1991 | Stanton .................. 604/385.14 |
| 5,146,874 | A | * | 9/1992 | Vidal .......................... 119/868 |
| D334,252 | S | * | 3/1993 | Stubbs ........................ D30/144 |
| 5,226,386 | A | * | 7/1993 | Thoma ......................... 119/869 |
| 5,234,421 | A | * | 8/1993 | Lowman ................ 604/385.09 |
| 5,359,963 | A | * | 11/1994 | Jesse et al. .................. 119/850 |
| D363,572 | S | * | 10/1995 | Obenchain .................. D30/145 |
| D368,338 | S | * | 3/1996 | Levengood .................. D30/144 |
| 5,537,954 | A | * | 7/1996 | Beeghly et al. ............. 119/850 |
| 5,555,847 | A | * | 9/1996 | Kelly ........................... 119/850 |
| 5,632,235 | A | * | 5/1997 | Larsen et al. ............... 119/856 |
| 5,662,640 | A | * | 9/1997 | Daniels ....................... 604/392 |
| D406,410 | S | * | 3/1999 | Pasqua ........................ D30/144 |
| 5,887,772 | A | * | 3/1999 | Dooley ........................ 224/191 |
| 5,941,199 | A | * | 8/1999 | Tamura ........................ 119/850 |
| 5,954,015 | A | * | 9/1999 | Ohta ............................ 119/850 |
| 6,024,055 | A | * | 2/2000 | Jesse et al. .................. 119/850 |
| D427,734 | S | * | 7/2000 | Balzarini .................... D30/145 |
| D429,390 | S | * | 8/2000 | Grady et al. ................ D30/152 |
| D429,391 | S | * | 8/2000 | Grady et al. ................ D30/152 |

(Continued)

*Primary Examiner* — Susan Moon Lee

(74) *Attorney, Agent, or Firm* — Rankin Hill & Clark LLP

(57) **CLAIM**

I claim the ornamental design for a baseball jersey for a dog, as shown and described.

**DESCRIPTION**

FIG. **1** is a side view of a baseball jersey for a dog shown in use;

FIG. **2** is a front elevational view of the baseball jersey shown in FIG. **1**;

FIG. **3** is a right side elevational view of the baseball jersey shown in FIG. **1**, the left side of the baseball jersey being a mirror image thereof; and,

FIG. **4** is a top plan view of the baseball jersey shown in FIG. **1**.

The material of the baseball jersey is primarily of a mesh fabric.

The broken line showing of the associated dog in FIG. **1** is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



**US D634,487 S**

Page 2

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 6,142,105 | A | * | 11/2000 | McKnight ..................... 119/850 |
| 6,234,117 | B1 | * | 5/2001 | Spatt ............................. 119/850 |
| 6,267,083 | B1 | * | 7/2001 | Chimienti ..................... 119/850 |
| 6,368,313 | B1 | * | 4/2002 | Howard ................... 604/385.09 |
| 6,481,383 | B1 | * | 11/2002 | Ross et al. ................... 119/850 |
| 6,557,497 | B1 | * | 5/2003 | Milligan ...................... 119/850 |
| D480,842 | S | * | 10/2003 | Grodecki ..................... D30/145 |
| 6,651,649 | B2 | * | 11/2003 | Spencer ....................... 128/95.1 |
| 6,675,745 | B1 | * | 1/2004 | Brewington ................. 119/869 |
| 6,827,044 | B2 | * | 12/2004 | Lobanoff et al. ............ 119/771 |
| 6,837,191 | B2 | * | 1/2005 | Brewington ................. 119/869 |
| 6,895,901 | B1 | * | 5/2005 | Howard ........................ 119/869 |
| 6,935,278 | B2 | * | 8/2005 | Brewington ................. 119/869 |
| 7,174,860 | B2 | * | 2/2007 | Solomon ...................... 119/869 |

| | | | | |
|---|---|---|---|---|
| 7,195,618 | B2 | * | 3/2007 | Ikegami ........................ 604/351 |
| D555,297 | S | * | 11/2007 | Coleman ...................... D30/145 |
| D574,560 | S | * | 8/2008 | Shaw ............................ D30/145 |
| D586,509 | S | * | 2/2009 | Kok-Duson ................. D30/145 |
| D615,711 | S | * | 5/2010 | Van Sice ..................... D30/145 |
| 2004/0031448 | A1 | * | 2/2004 | Trepanier ..................... 119/850 |
| 2005/0072376 | A1 | * | 4/2005 | Kerrigan ...................... 119/850 |
| 2005/0217609 | A1 | * | 10/2005 | Dorton et al. ................ 119/792 |
| 2006/0217678 | A1 | * | 9/2006 | Ikegami et al. .............. 604/386 |
| 2007/0056530 | A1 | * | 3/2007 | Nassour ........................ 119/850 |
| 2007/0234971 | A1 | * | 10/2007 | Pegago ......................... 119/850 |
| 2007/0289558 | A1 | * | 12/2007 | Bonfoey ....................... 119/850 |
| 2009/0173290 | A1 | * | 7/2009 | Freitag ......................... 119/850 |

* cited by examiner



Figure 1



Figure 2

A26

Figure 3

Figure 4

US00D634488S

(12) **United States Design Patent**     (10) Patent No.:     **US D634,488 S**
Cohen                                      (45) Date of Patent:     ** **Mar. 15, 2011**

(54) **FOOTBALL JERSEY FOR A DOG**

(75) Inventor:  **Mark Cohen**, Mason, OH (US)

(73) Assignee:  **MRC Innovations**, Mason, OH (US)

(**) Term:  **14 Years**

(21) Appl. No.: **29/369,427**

(22) Filed:  **Sep. 8, 2010**

(51) **LOC (9) Cl.** .................................................. **30-01**

(52) **U.S. Cl.** ...................................... **D30/145**

(58) **Field of Classification Search** ................. D30/145,
D30/144, 151–154; 119/678, 850, 673, 702,
119/712, 792–798, 758, 760, 769, 770, 784,
119/815, 818, 856, 863, 864, 905, 907, 802,
119/857, 865, 725, 771; 52/3; 54/79.4, 79.1,
54/80.1, 79.2; D3/271.2, 217, 327; 150/154;
36/111; 604/293; 602/79, 61
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 1,437,255 | A | * | 11/1922 | Mallinson | 54/79.2 |
|---|---|---|---|---|---|
| 1,595,834 | A | * | 8/1926 | Griffiths | 54/79.1 |
| 2,103,109 | A | * | 12/1937 | De Mar | 54/79.1 |
| 2,273,706 | A | * | 2/1942 | Hafner | 54/79.1 |
| 2,400,781 | A | * | 5/1946 | Priour | 54/79.1 |
| 2,417,803 | A | * | 3/1947 | De Mar | 54/79.1 |
| 3,141,443 | A | * | 7/1964 | Huey | 119/854 |
| D228,926 | S | * | 10/1973 | Bennett | D30/145 |
| 3,792,687 | A | * | 2/1974 | Ehrman | 119/868 |
| 4,095,562 | A | * | 6/1978 | Graham | 119/868 |
| 4,290,386 | A | * | 9/1981 | Eiriksson | 119/868 |
| 4,355,600 | A | * | 10/1982 | Zielinski | 119/850 |
| 4,527,991 | A | * | 7/1985 | Msarsa | 604/391 |
| 4,577,591 | A | * | 3/1986 | Wesseldine | 604/391 |
| 4,813,949 | A | * | 3/1989 | O'Rourke | 604/391 |
| 4,996,949 | A | * | 3/1991 | Wunderman et al. | 604/390 |
| 5,005,525 | A | * | 4/1991 | Stanton | 604/385.14 |
| 5,146,874 | A | * | 9/1992 | Vidal | 119/868 |
| D334,252 | S | * | 3/1993 | Stubbs | D30/144 |

| 5,226,386 | A | * | 7/1993 | Thoma | 119/869 |
|---|---|---|---|---|---|
| 5,234,421 | A | * | 8/1993 | Lowman | 604/385.09 |
| 5,359,963 | A | * | 11/1994 | Jesse et al. | 119/850 |
| D363,572 | S | * | 10/1995 | Obenchain | D30/145 |
| D368,338 | S | * | 3/1996 | Levengood | D30/144 |
| 5,537,954 | A | * | 7/1996 | Beeghly et al. | 119/850 |
| 5,555,847 | A | * | 9/1996 | Kelly | 119/850 |
| 5,632,235 | A | * | 5/1997 | Larsen et al. | 119/856 |
| 5,662,640 | A | * | 9/1997 | Daniels | 604/392 |
| D406,410 | S | * | 3/1999 | Pasqua | D30/144 |
| 5,887,772 | A | * | 3/1999 | Dooley | 224/191 |
| 5,941,199 | A | * | 8/1999 | Tamura | 119/850 |
| 5,954,015 | A | * | 9/1999 | Ohta | 119/850 |
| 6,024,055 | A | * | 2/2000 | Jesse et al. | 119/850 |
| D427,734 | S | * | 7/2000 | Balzarini | D30/145 |
| D429,390 | S | * | 8/2000 | Grady et al. | D30/152 |
| D429,391 | S | * | 8/2000 | Grady et al. | D30/152 |

(Continued)

*Primary Examiner* — Susan Moon Lee

(74) *Attorney, Agent, or Firm* — Rankin Hill & Clark LLP

(57) **CLAIM**

I claim the ornamental design for a football jersey for a dog, as shown and described.

**DESCRIPTION**

FIG. **1** is a side view of a football jersey for a dog shown in use;

FIG. **2** is a front elevational view of the football jersey shown in FIG. **1**;

FIG. **3** is a right side elevational view of the football jersey shown in FIG. **1**, the left side of the football jersey being a mirror image thereof; and,

FIG. **4** is a top plan view of the football jersey shown in FIG. **1**.

The material of the football jersey is primarily of a mesh and interlock fabric.

The broken line showing of the associated dog in FIG. **1** is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



US D634,488 S

Page 2

U.S. PATENT DOCUMENTS

| 6,142,105 | A | * | 11/2000 | McKnight | 119/850 |
|---|---|---|---|---|---|
| 6,234,117 | B1 | * | 5/2001 | Spatt | 119/850 |
| 6,267,083 | B1 | * | 7/2001 | Chimienti | 119/850 |
| 6,368,313 | B1 | * | 4/2002 | Howard | 604/385.09 |
| 6,481,383 | B1 | * | 11/2002 | Ross et al. | 119/850 |
| 6,557,497 | B1 | * | 5/2003 | Milligan | 119/850 |
| D480,842 | S | * | 10/2003 | Grodecki | D30/145 |
| 6,651,649 | B2 | * | 11/2003 | Spencer | 128/95.1 |
| 6,675,745 | B1 | * | 1/2004 | Brewington | 119/869 |
| 6,827,044 | B2 | * | 12/2004 | Lobanoff et al. | 119/771 |
| 6,837,191 | B2 | * | 1/2005 | Brewington | 119/869 |
| 6,895,901 | B1 | * | 5/2005 | Howard | 119/869 |
| 6,935,278 | B2 | * | 8/2005 | Brewington | 119/869 |
| 7,174,860 | B2 | * | 2/2007 | Solomon | 119/869 |

| 7,195,618 | B2 | * | 3/2007 | Ikegami | 604/351 |
|---|---|---|---|---|---|
| D555,297 | S | * | 11/2007 | Coleman | D30/145 |
| D574,560 | S | * | 8/2008 | Shaw | D30/145 |
| D586,509 | S | * | 2/2009 | Kok-Duson | D30/145 |
| D615,711 | S | * | 5/2010 | Van Sice | D30/145 |
| 2004/0031448 | A1 | * | 2/2004 | Trepanier | 119/850 |
| 2005/0072376 | A1 | * | 4/2005 | Kerrigan | 119/850 |
| 2005/0217609 | A1 | * | 10/2005 | Dorton et al. | 119/792 |
| 2006/0217678 | A1 | * | 9/2006 | Ikegami et al. | 604/386 |
| 2007/0056530 | A1 | * | 3/2007 | Nassour | 119/850 |
| 2007/0234971 | A1 | * | 10/2007 | Pegago | 119/850 |
| 2007/0289558 | A1 | * | 12/2007 | Bonfoey | 119/850 |
| 2009/0173290 | A1 | * | 7/2009 | Freitag | 119/850 |

* cited by examiner



Figure 1



Figure 2



Figure 3



Figure 4

A34

## U.S. District Court
### Northern District of Ohio (Cleveland)
### CIVIL DOCKET FOR CASE #: 1:12–cv–00684–PAG

MRC Innovations, Inc. v. Hunter MFG, LLP et al
Assigned to: Judge Patricia A. Gaughan
Case in other court:  Federal Circuit, 13–01433
Cause: 35:271 Patent Infringement

Date Filed: 03/20/2012
Date Terminated: 05/16/2013
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**MRC Innovations, Inc.**                                   represented by   **Jonathan A. Withrow**
Rankin, Hill, Porter &Clark – Willoughby
38210 Glenn Avenue
Willoughby, OH 44094
216–566–9700
Fax: 216–566–9711
Email: withrow@rankinhill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Sidoti**
Rankin, Hill, Porter &Clark – Willoughby
38210 Glenn Avenue
Willoughby, OH 44094
216–566–9700
Fax: 216–566–9711
Email: sidoti@rankinhill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randolph E. Digges , III**
Rankin Hill Clark – North Olmsted
Ste. 200
23755 Lorain Road
North Olmsted, OH 44070
216–566–9700
Fax: 216–566–9711
Email: digges@rankinhill.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hunter MFG, LLP**                                   represented by   **Andrew D. Dorisio**
King &Schickli
247 North Broadway
Lexington, KY 40507
859–252–0889
Fax: 859–252–0779
Email: andrew@iplaw1.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor T. Graves**
King &Schickli
247 North Broadway
Lexington, KY 40507
859–252–0889
Fax: 859–252–0779
Email: trevor@iplaw1.net

**A35**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Gingo**
Renner, Otto, Boisselle &Sklar
19th Floor
1621 Euclid Avenue
Cleveland, OH 44115
216−621−1113
Fax: 216−621−6165
Email: ngingo@rennerotto.com
*ATTORNEY TO BE NOTICED*

**Todd R. Tucker**
Calfee, Halter &Griswold – Cleveland
1405 East Sixth Street
Cleveland, OH 44114
216−622−8231
Fax: 216−241−0816
Email: ttucker@calfee.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**CDI International, Inc.**                   represented by   **Edward D. Manzo**
Husch Blackwell – Chicago
Ste. 2200
120 South Riverside Plaza
Chicago, IL 60606
312−655−1500
Fax: 312−655−1501
Email: edward.manzo@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark James Murphy**
Husch Blackwell – Chicago
Ste. 2200
120 South Riverside Plaza
Chicago, IL 60606
312−655−1500
Fax: 312−655−1501
Email: mark.murphy@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew L. Snyder**
Brzytwa, Quick &McCrystal
900 Skylight Office Tower
1660 West Second Street
Cleveland, OH 44113
216−664−6900
Fax: 216−664−6901
Email: snyder@bqmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nguyen S. Vo**
Husch Blackwell – Chicago
Ste. 2200
120 South Riverside Plaza
Chicago, IL 60606
312−655−1500
Fax: 312−655−1501
Email: wynn.vo@huschblackwell.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**E. John Brzytwa , Jr.**
Brzytwa, Quick &McCrystal
900 Skylight Office Tower
1660 West Second Street
Cleveland, OH 44113
216–664–6900
Fax: 216–664–6901
Email: brzytwa@bqmlaw.com
*ATTORNEY TO BE NOTICED*

**Counter–Claimant**

Hunter MFG, LLP      represented by   **Andrew D. Dorisio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor T. Graves**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Gingo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd R. Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter–Defendant**

Hunter MFG, LLP      represented by   **Andrew D. Dorisio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor T. Graves**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Gingo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd R. Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter–Claimant**

CDI International, Inc.      represented by   **Edward D. Manzo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark James Murphy**
(See above for address)
*LEAD ATTORNEY*

**A37**

*ATTORNEY TO BE NOTICED*

**Matthew L. Snyder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nguyen S. Vo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**E. John Brzytwa , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Counter–Defendant**</u>

**MRC Innovations, Inc.**        represented by  **Jonathan A. Withrow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Sidoti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randolph E. Digges , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter–Claimant**</u>

**Hunter MFG, LLP**          represented by  **Andrew D. Dorisio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor T. Graves**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Gingo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd R. Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Counter–Defendant**</u>

**MRC Innovations, Inc.**        represented by  **Jonathan A. Withrow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Sidoti**
(See above for address)

**A38**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randolph E. Digges , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter–Claimant**

**CDI International, Inc.**                    represented by   **Edward D. Manzo**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Mark James Murphy**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Matthew L. Snyder**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Nguyen S. Vo**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **E. John Brzytwa , Jr.**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

V.

**Counter–Defendant**

**MRC Innovations, Inc.**                     represented by   **Jonathan A. Withrow**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Robert A. Sidoti**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Randolph E. Digges , III**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/20/2012 | 1 | **Complaint** with jury demand against All Defendants. Filing fee paid $ 350, Receipt number 0647–5248458. Filed by MRC Innovations, Inc. (Attachments: # 1 Civil Cover Sheet, # 2 Summons for Hunter MFG, LLP, # 3 Summons for CDI International, Inc., # 4 Exhibit A – U.S. Pat. No. D634,488, # 5 Exhibit B – Copyright Registration Certificate VAu–078–347, # 6 Exhibit C – Copies of Hunter MFG, LLP website, # 7 Exhibit D – copies of Petco website pages, # 8 Exhibit E – Composite photos and Figures, # 9 Exhibit F – Photos of infringing product) (Digges, Randolph) (Entered: 03/20/2012) |
| 03/20/2012 | 2 | **Motion** for preliminary injunction filed by Plaintiff MRC Innovations, Inc.. (Attachments: # 1 Affidavit of Mark R. Cohen, # 2 Exhibit A – Plaintiff's Product, |

**A39**

| | | |
|---|---|---|
| | | #_3 Exhibit B – Hunter MFG, LLP website pages, #_4 Exhibit C – Petco website pages, #_5 Exhibit D – Infringing Product, #_6 Proposed Order)(Digges, Randolph) (Entered: 03/20/2012) |
| 03/20/2012 | 3 | Report on the Filing or Determination of an Action Regarding a Patent or Trademark filed by MRC Innovations, Inc.. (Digges, Randolph) (Entered: 03/20/2012) |
| 03/20/2012 | 4 | Corporate Disclosure Statement filed by MRC Innovations, Inc.. (Digges, Randolph) (Entered: 03/20/2012) |
| 03/20/2012 | | Judge Patricia A. Gaughan assigned to case. (C,BA) (Entered: 03/20/2012) |
| 03/20/2012 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge White. (C,BA) (Entered: 03/20/2012) |
| 03/20/2012 | 5 | Original Summons and Magistrate Consent Form issued for service upon CDI International, Inc. &Hunter MFG, LLP. (Attachments: #_1 Magistrate Consent Form) (C,BA) (Entered: 03/20/2012) |
| 03/20/2012 | | This action has been identified as a Patent Case that is subject to the Local Patent Rules. Link to Local Patent Rules. (C,BA) (Entered: 03/20/2012) |
| 04/05/2012 | 6 | INCOMPLETE FILING: Return of Service by certified mail executed upon Hunter MFG, LLP on 3/26/2012, filed on behalf of All Plaintiffs (Digges, Randolph) Modified text first page not uploaded attorney to refile document on 4/9/2012 (E,P).(E,P). (Entered: 04/05/2012) |
| 04/05/2012 | 7 | INCOMPLETE FILNG: Return of Service by certified mail executed upon CDI International, Inc. on 3/23/2012, filed on behalf of All Plaintiffs (Digges, Randolph) Modified text first page not uploaded attorney to refile complete document on 4/9/2012 (E,P). (Entered: 04/05/2012) |
| 04/06/2012 | 8 | **Opposition** to 2 **Motion** for preliminary injunction filed by Hunter MFG, LLP. (Tucker, Todd) (Entered: 04/06/2012) |
| 04/06/2012 | 9 | Affidavit/Declaration *of Thomas Neth in Support of Opposition to Motion for Preliminary Injunction* filed by Hunter MFG, LLP. Related document(s) 8 . (Attachments: #_1 Exhibit 1 – Hunter Catalog, #_2 Exhibit 2 – December 2007 Spec Sheet, #_3 Exhibit 3 – December 2, 2010 Email from Cohen to Neth, #_4 Exhibit 4 – Hunter Jersey Photo 1, #_5 Exhibit 5 – Hunter Jersey Photo 2, #_6 Exhibit 6 – Hunter Jersey Photo 3, #_7 Exhibit 7 – Inventor Declaration)(Tucker, Todd) (Entered: 04/06/2012) |
| 04/09/2012 | 10 | Return of Service by certified mail executed upon Hunter MFG, LLP, filed on behalf of MRC Innovations, Inc. (Digges, Randolph) (Entered: 04/09/2012) |
| 04/09/2012 | 11 | Return of Service by certified mail executed upon CDI International, Inc., filed on behalf of MRC Innovations, Inc. (Digges, Randolph) (Entered: 04/09/2012) |
| 04/09/2012 | 12 | Joint **Motion** Requesting Expedited Discovery filed by Defendant Hunter MFG, LLP. (Tucker, Todd) (Entered: 04/09/2012) |
| 04/10/2012 | | **Order** [non–document]: Joint Motion for Expedited Discovery is Granted. Expedited Discovry is to be completed by 5/11/12. Judge Patricia A. Gaughan on 4/10/12. (Related Doc #_12 ) (LC,S) (Entered: 04/11/2012) |
| 04/11/2012 | 13 | **Motion** for attorney Trevor T. Graves to Appear Pro Hac Vice. Filing fee $ 100, receipt number 0647–5291853, filed by Defendant Hunter MFG, LLP. (Attachments: #_1 Exhibit A – Graves Declaration)(Gingo, Nicholas) (Entered: 04/11/2012) |
| 04/11/2012 | 14 | **Motion** for attorney Andrew D. Dorisio to Appear Pro Hac Vice. Filing fee $ 100, receipt number 0647–5291885, filed by Defendant Hunter MFG, LLP. (Attachments: #_1 Exhibit A – Dorisio Declaration)(Gingo, Nicholas) (Entered: 04/11/2012) |

| 04/11/2012 | 15 | Unopposed **Motion** for extension of time until May 4, 2012 to answer filed by Defendant Hunter MFG, LLP. (Tucker, Todd) (Entered: 04/11/2012) |
| --- | --- | --- |
| 04/12/2012 | | **Order** [non−document]: Defendants' Unopposed Motion for Extension of Time to file their responsive pleadings to Plaintiff's Complaint is Granted to 5/4/12. Judge Patricia A. Gaughan on 4/12/12. (LC,S) re 15 (Entered: 04/12/2012) |
| 04/12/2012 | | **Order** [non−document]: Motion to Permit Pro Hac Vice Appearance of Trevor T. Graves as counsel for defendant Hunter MFG is Granted. Judge Patricia A. Gaughan on 4/12/12. (Local Rule 5.1(c) requires that attorneys register for CM/ECF and file and receive all documents electronically. The CM/ECF registration form can be found at www.ohnd.uscourts.gov under Forms.) (Related Doc # 13 ) (LC,S) (Entered: 04/16/2012) |
| 04/12/2012 | | **Order** [non−document]: Motion to Permit Pro Hac Vice Appearance of Andrew D. Dorisio as counsel for defendant Hunter MFG is Granted. Judge Patricia A. Gaughan on 4/12/12. (Local Rule 5.1(c) requires that attorneys register for CM/ECF and file and receive all documents electronically. The CM/ECF registration form can be found at www.ohnd.uscourts.gov under Forms.) (Related Doc # 14 ) (LC,S) (Entered: 04/16/2012) |
| 04/13/2012 | 16 | **Reply** to response to 2 **Motion** for preliminary injunction filed by MRC Innovations, Inc.. (Digges, Randolph) (Entered: 04/13/2012) |
| 04/16/2012 | 17 | **Case Management Conference Scheduling Order** with case management conference on 5/23/2012 at 9:00 a.m. to be held telephonically by Hon. Patricia A. Gaughan. Signed by Judge Patricia A. Gaughan on 4/16/12. (D,MB) (Entered: 04/16/2012) |
| 05/01/2012 | 18 | Report of Parties' Planning Meeting , parties do not consent to this case being assigned to the magistrate judge, filed by MRC Innovations, Inc.. (Digges, Randolph) (Entered: 05/01/2012) |
| 05/04/2012 | 19 | Attorney Appearance by E. John Brzytwa, Jr. filed by on behalf of CDI International, Inc.. (Brzytwa, Jr., E.) (Entered: 05/04/2012) |
| 05/04/2012 | 20 | **Motion** for attorney Mark J. Murphy to Appear Pro Hac Vice. Filing fee $ 100, receipt number 0647−5334282, filed by Defendant CDI International, Inc.. (Attachments: # 1 Declaration)(Brzytwa, Jr., E.) (Entered: 05/04/2012) |
| 05/04/2012 | 21 | **Motion** to dismiss for failure to state a claim *re: Count II for Copyright Infringement* filed by Defendant Hunter MFG, LLP. (Tucker, Todd) (Entered: 05/04/2012) |
| 05/04/2012 | 22 | Brief *in Support of Motion to Dismiss for Failure to State a Claim re: Count II Copyright Infringement* filed by Hunter MFG, LLP. Related document(s) 21 . (Attachments: # 1 Exhibit A − Unpublished Decision) (Tucker, Todd) (Entered: 05/04/2012) |
| 05/07/2012 | | **Order** [non−document]: Motion to permit pro hac vice appearance of attorney Mark James Murphy for Defendant CDI International, Inc. is Granted. Judge Patricia A. Gaughan on 5/7/12. (Local Rule 5.1(c) requires that attorneys register for CM/ECF and file and receive all documents electronically. The CM/ECF registration form can be found at www.ohnd.uscourts.gov under Forms.) (Related Doc # 20 ) (LC,S) (Entered: 05/09/2012) |
| 05/09/2012 | 23 | **Motion** for attorney Edward D. Manzo to Appear Pro Hac Vice. Filing fee $ 100, receipt number 0647−5340823, filed by Defendant CDI International, Inc.. (Attachments: # 1 Exhibit)(Brzytwa, E.) (Entered: 05/09/2012) |
| 05/09/2012 | 24 | **Motion** for attorney Nguyen S. Vo to Appear Pro Hac Vice. Filing fee $ 100, receipt number 0647−5341340, filed by Defendant CDI International, Inc.. (Attachments: # 1 Exhibit Declaration of Nguyen S. Vo)(Brzytwa, E.) (Entered: 05/09/2012) |
| 05/10/2012 | | **Order** [non−document] Granting Defendant CDI International, Inc.'s Motion to Permit Pro Hac Vice Appearance of Edward D. Manzo. Judge Patricia A. Gaughan on 5/10/12. (Local Rule 5.1(c) requires that attorneys register for CM/ECF and file and receive all documents electronically. The CM/ECF registration form can be |

| | | |
|---|---|---|
| | | found at www.ohnd.uscourts.gov under Forms.) (Related Doc #23 ) (LC,S) (Entered: 05/14/2012) |
| 05/10/2012 | | **Order** [non–document] Granting Defendant CDI International, Inc.'s Motion to Permit Pro Hac Vice Appearance of Nguyen S. Vo. Judge Patricia A. Gaughan on 5/10/12. (Local Rule 5.1(c) requires that attorneys register for CM/ECF and file and receive all documents electronically. The CM/ECF registration form can be found at www.ohnd.uscourts.gov under Forms.) (Related Doc #24 ) (LC,S) (Entered: 05/14/2012) |
| 05/22/2012 | 25 | Stipulated **Motion** for leave *to file Amended Complaint* filed by Plaintiff MRC Innovations, Inc.. (Attachments: #1 Exhibit Amended Complaint for Patent Infringement With Demand for Jury)(Digges, Randolph) (Entered: 05/22/2012) |
| 05/23/2012 | | **Order** [non–document]: Case Management Conference is continued to 6/1/12 at 9:45 a.m. The Court expects to receive a joint patent planning report by 5/30/12. Judge Patricia A. Gaughan on 5/23/12. (LC,S) (Entered: 05/24/2012) |
| 05/23/2012 | 26 | **Stipulation** and Order Granting Leave to File Amended Complaint: THIS MATTER having come before the Court on the foregoing Stipulation of the parties, and the Court, finding good cause, it is therefore ORDERED that Plaintiff MRC Innovations, Inc. is hereby GRANTED leave to file the Amended Complaint attached as Exhibit A to the foregoing Stipulation. It is further ORDERED that Defendants Motion to Dismiss Count II of the Complaint is moot, and that Defendants shall have fourteen (14) days from the filing of the Amended Complaint in which to Answer or otherwise Move with respect thereto. Judge Patricia A. Gaughan on 5/23/12. (Related Doc #25 ) (LC,S) (Entered: 05/24/2012) |
| 05/23/2012 | | **Order** [non–document]: Defendants Hunter MFG, LLP and CDI International, Inc.'s Motion to Dismiss Count II of the Complaint is MOOT. Judge Patricia A. Gaughan on 5/23/12. (LC,S) (Related Doc #21 ) (Entered: 05/24/2012) |
| 05/24/2012 | 27 | **Amended complaint** *for patent infringement with demand for jury* against MRC Innovations, Inc.. Filed by MRC Innovations, Inc.. (Attachments: #1 Exhibit A – Copy of U.S. Design Pat. No. D634,488 S, #2 Exhibit B – Copies of pages from a website owned by Hunter, namely www.huntermfg.com, #3 Exhibit C – Copies of pages from Petco's website, #4 Exhibit D – Photos of pet jerseys sold by Hunter, which were purchased from Plaintiff's licensee, #5 Exhibit E – Photos of pet jerseys sold by Hunter, which were purchased from CDI) (Digges, Randolph) (Entered: 05/24/2012) |
| 05/30/2012 | 28 | Report of Parties' Planning Meeting *Under Fed. R. Civ. P. 26(F), L.R. 16.3(b)(3) and LPR 2.1*, parties do not consent to this case being assigned to the magistrate judge, filed by MRC Innovations, Inc.. (Attachments: #1 Schedule Detailed Schedule Through Claim Construction)(Digges, Randolph) (Entered: 05/30/2012) |
| 05/30/2012 | 29 | Notice of joining defendant Hunter MFG, LLPS opposition to Plaintiff's motion for Preliminary Injunction filed by CDI International, Inc.(Vo, Nguyen) (Entered: 05/30/2012) |
| 06/01/2012 | 33 | **Case Management Order**: A Case Management Conference was held in this matter on 6/01/12. Case is assigned to the Complex track. Case is not suitable for ADR at this time but may be after discovery. Schedule Through Claim Construction: 7/18/2012 –LPR 3.1–3.2 Infringement Contentions; 8/17/2012 –LPR 3.3–3.4 Non–Infringement Contentions; 9/21/2012 –LPR 3.5 Invalidity and Unenforceability Contentions;10/05/2012 –LPR 4.1(a) Preliminary ID of Claim Terms to be Construed; 10/11/2012 –LPR 3.7 Validity and Enforceability Contention; 10/26/2012 –LPR 4.1(c) Final ID of Claim Terms; 11/12/2012 –LPR 4.2 (a) and (b)Preliminary Claim Constructions and Supporting Materials; 11/26/2012 –LPR 4.3(a) ID of Claim Construction Expert; 12/11/2012 –LPR 4.3(b) Disclosure of Rebuttal Claim Construction Expert; 12/26/2012 –LPR 4.3(c) Completion of Expert Discovery; 12/31/2012 –LPR 4.2(c) Final Claim Construction; 2/04/2012 –LPR 4.4 (a) Opening Claim Construction Submission; 3/06/2012 –LPR 4.4 (b) Responsive Claim Construction; 3/11/2012 –Simultaneous Briefs Regarding Claim Construction. Telephonic Status Conference is set 7/10/12 at 9:30 a.m. Counsel shall confer in person or by phone within seventy–two (72) hours of any scheduled conference to discuss outstanding issues and respective |

| | | |
|---|---|---|
| | | positions as to settlement. Counsel shall provide to the Court, no later than forty−eight (48) hours of the conference, a brief written Status Report describing the status of discovery, settlement positions, and issues to be addressed. Judge Patricia A. Gaughan on 6/1/12. (LC,S) Time: 30 mins. (Entered: 06/11/2012) |
| 06/07/2012 | 30 | **Memorandum of Opinion and Order** : MRC's Motion for Preliminary Injunction is denied. The factors to be considered in determining whether to grant an injunction under 35 U.S.C. § 283 weigh against the equitable relief. (Related Doc # 2 ) Signed by Judge Patricia A. Gaughan on 6/07/12.(D,MB) Modified text on 6/8/2012 (B,B). (Entered: 06/07/2012) |
| 06/07/2012 | 31 | **Answer** *to MRC's Amended Complaint*, **Counterclaim** against *MRC Innovations, Inc.* filed by Hunter MFG, LLP. Related document(s) 27 . (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (Graves, Trevor) Modified text on 6/8/2012 (B,B). (Entered: 06/07/2012) |
| 06/07/2012 | 32 | **Answer** to 27 Amended Complaint, *Affirmative Defenses*, **Counterclaim** against MRC Innovations, Inc. filed by CDI International, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Brzytwa, E.) Modified text/link on 6/7/2012 (E,P). (Entered: 06/07/2012) |
| 06/11/2012 | 34 | **Amended Case Management Order**: A Case Management Conference was held in this matter on 6/01/12. Case is assigned to the Complex track. Case is not suitable for ADR at this time but may be after discovery. Schedule Through Claim Construction: 7/18/2012 –LPR 3.1–3.2 Infringement Contentions; 8/17/2012 –LPR 3.3–3.4 Non–Infringement Contentions; 9/21/2012 –LPR 3.5 Invalidity and Unenforceability Contentions; 10/05/2012 –LPR 4.1(a) Preliminary ID of Claim Terms to be Construed; 10/11/2012 –LPR 3.7 Validity and Enforceability Contention; 10/26/2012 –LPR 4.1(c) Final ID of Claim Terms; 11/12/2012 –LPR 4.2 (a) and (b)Preliminary Claim Constructions and Supporting Materials; 11/26/2012 –LPR 4.3(a) ID of Claim Construction Expert; 12/11/2012 –LPR 4.3(b) Disclosure of Rebuttal Claim Construction Expert; 12/26/2012 –LPR 4.3(c) Completion of Expert Discovery; 12/31/2012 –LPR 4.2(c) Final Claim Construction; 2/04/2013 –LPR 4.4 (a) Opening Claim Construction Submission; 3/06/2013 –LPR 4.4 (b) Responsive Claim Construction; 3/11/2013 –Simultaneous Briefs Regarding Claim Construction. Telephonic Status Conference is set 7/10/12 at 9:30 a.m. Counsel shall confer in person or by phone within seventy−two (72) hours of any scheduled conference to discuss outstanding issues and respective positions as to settlement. Counsel shall provide to the Court, no later than forty−eight (48) hours of the conference, a brief written Status Report describing the status of discovery, settlement positions, and issues to be addressed. Judge Patricia A. Gaughan on 6/11/12. (LC,S) re 33 (Entered: 06/11/2012) |
| 06/22/2012 | 35 | **Answer** *to Counterclaim of Hunter MFG, LLP* filed by MRC Innovations, Inc.. Related document(s) 31 . (Digges, Randolph) (Entered: 06/22/2012) |
| 06/22/2012 | 36 | **Answer** *to Counterclaim of CDI International* filed by MRC Innovations, Inc. Related document(s) 32 . (Digges, Randolph) Modified text on 6/26/2012 (E,P). (Entered: 06/22/2012) |
| 07/10/2012 | | **Minutes/Order** [non−document]: Status Conference was held. Telephonic Status Conference is set 9/10/12 at 9:00 a.m. Judge Patricia A. Gaughan on 7/10/12. (LC,S) Modified on 7/11/2012 (LC,S). (Entered: 07/11/2012) |
| 09/10/2012 | | **Minutes/Order** [non−document]: Status Conference was held. Plaintiff may amend the complaint, without objection, by 9/17/12. Telephonic Status Conference is set 11/6/12 at 9:00 a.m. Judge Patricia A. Gaughan on 9/10/12. Time: 30 mins. (LC,S) (Entered: 09/10/2012) |
| 09/10/2012 | 37 | Second **Amended complaint** against CDI International, Inc., Hunter MFG, LLP. Filed by MRC Innovations, Inc.. (Attachments: # 1 Exhibit A – U.S. Des. Pat. No. D634,488 S, # 2 Exhibit B – U.S. Des. Pat. No. D634,487 S, # 3 Exhibit C – Pages from Hunter MFG, LLP website showing pet football jerseys for sale, # 4 Exhibit D – Pages from petco.com website showing pet football jerseys for sale, # 5 Exhibit E – Pages from Hunter MFG, LLP website showing pet baseball jerseys for sale, # 6 Exhibit F – Pages from petco.com website showing pet baseball jerseys for sale, # 7 Exhibit G – Photos of pet football jersey manufactured by MRC's licensee, Fun |

**A43**

| | | |
|---|---|---|
| | | In Games, Inc., as sold by Hunter MFG, LLP, #_8 Exhibit H − Photos of pet football jersey manufactured by CDI as sold by Hunter MFG, LLP) (Digges, Randolph) Modified text on 10/15/2012 (E,P). (Entered: 09/10/2012) |
| 09/18/2012 | 38 | Proposed Order *Regarding Scheduling through Claim Construction* filed by All Parties. (Vo, Nguyen) (Entered: 09/18/2012) |
| 09/19/2012 | 39 | **Stipulated** Scheduling Order. Judge Patricia A. Gaughan on 9/19/12. (LC,S) re _38 (Entered: 09/20/2012) |
| 09/24/2012 | 40 | First **Answer** *to Second Amended Complaint*, First **Counterclaim** against MRC Innovations, Inc. filed by Hunter MFG, LLP. Related document(s) _37 . (Attachments: #_1 Exhibit Printed Brochure, #_2 Exhibit Front of V2 Jersey, #_3 Exhibit Back of V2 Jersey, #_4 Exhibit Front of Eagles Jersey, #_5 Exhibit Back of Eagles Jersey) (Graves, Trevor) (Entered: 09/24/2012) |
| 09/24/2012 | 41 | *First* **Answer** to _37 Amended complaint,,, , First **Counterclaim** against MRC Innovations, Inc. filed by CDI International, Inc.. (Attachments: #_1 Exhibit Printed Brochure, #_2 Exhibit Front of V2 Jersey, #_3 Exhibit Back of V2 Jersey, #_4 Exhibit Front of Eagles Jersey, #_5 Exhibit Back of Eagles Jersey)(Vo, Nguyen) (Entered: 09/24/2012) |
| 10/10/2012 | 42 | First **Motion** for summary judgment *on all claims in MRC's Second Amended Complaint* filed by CDI International, Inc., Hunter MFG, LLP. (Attachments: #_1 Brief in Support Memorandum in Support of Motion for Summary Judgment, #_2 Exhibit Declaration of Tom Neth, #_3 Exhibit Relevant pages of Mark Cohen's deposition, #_4 Exhibit Declaration of Sharon Kelly)(Graves, Trevor) (Entered: 10/10/2012) |
| 10/11/2012 | 43 | **Answer** *Counterclaim of Hunter* filed by MRC Innovations, Inc.. Related document(s) _40 . (Digges, Randolph) (Entered: 10/11/2012) |
| 10/11/2012 | 44 | **Answer** *to Counterclaim of CDI* filed by MRC Innovations, Inc.. Related document(s) _41 . (Digges, Randolph) (Entered: 10/11/2012) |
| 11/06/2012 | | **Minutes/Order** [non−document]: Status Conference was held. Settlement Conference is set 2/5/13 at 9:30 a.m. Judge Patricia A. Gaughan on 11/6/12. (LC,S) Time: 30 mins (Entered: 11/06/2012) |
| 11/09/2012 | 45 | Unopposed Motion for extension of time until November 26, 2012 to file response/reply to _42 First **Motion** for summary judgment *on all claims in MRC's Second Amended Complaint* filed by MRC Innovations, Inc., MRC Innovations, Inc., MRC Innovations, Inc., Plaintiff MRC Innovations, Inc.. Related document(s) _42 . (Attachments: #_1 Proposed Order)(Digges, Randolph) (Entered: 11/09/2012) |
| 11/14/2012 | | **Order** [non−document]: Plaintiff's Unopposed Motion for Extension of Time to file its Response to Defendants' Joint Motion for Summary Judgment is Granted to 11/26/12. Judge Patricia A. Gaughan on 11/13/12. (LC,S) re _45 (Entered: 11/14/2012) |
| 11/26/2012 | 46 | Filing Error, document to be refiled in its entirety**Opposition** to _42 First **Motion** for summary judgment *on all claims in MRC's Second Amended Complaint* filed by MRC Innovations, Inc.. (Attachments: #_1 Exhibit A − Deposition of Thomas Neth (Excerpts), #_2 Exhibit B − Deposition of Denis Casey (Excerpts), #_3 Exhibit C − Defendant CDI International, Inc.'s Responses to Plaintiff's First Set of Interrogatories)(Digges, Randolph) Modified text 11/28/2012 (C,KA). (Entered: 11/26/2012) |
| 11/26/2012 | 47 | Affidavit/Declaration *of Mark Cohen* filed by MRC Innovations, Inc.. Related document(s) _46 . (Attachments: #_1 Exhibit A − E−mail from John T. Fitzgerald to Mark Cohen, #_2 Exhibit B − Prosecution History to date of U.S. App. Ser. No. 29/404,184, #_3 Exhibit C − Exemplary patents cited by examiner during prosecution of U.S. App. Ser. No. 29/404,184)(Digges, Randolph) (Entered: 11/26/2012) |
| 11/27/2012 | 48 | Notice of Filing Corrected Exhibit filed by MRC Innovations, Inc.. (Attachments: #_1 Exhibit C − Defendant CDI International, Inc.'s, Responses to Plaintiff's First Set of Interrogatories)Related document(s) _46 .(Digges, Randolph) (Entered: |

| | | |
|---|---|---|
| | | 11/27/2012) |
| 11/28/2012 | 49 | **Opposition** to 42 First **Motion** for summary judgment *on all claims in MRC's Second Amended Complaint* filed by MRC Innovations, Inc.. (Attachments: # 1 Exhibit A – Excerpts from Deposition of Thomas Neth, # 2 Exhibit B – Excerpts from Deposition of Denis Casey)(Digges, Randolph) (Entered: 11/28/2012) |
| 12/10/2012 | 50 | **Reply** to response to 42 First **Motion** for summary judgment *on all claims in MRC's Second Amended Complaint Reply Brief* filed by All Defendants. (Attachments: # 1 Exhibit A–Relevant pages of Cohen's Deposition)(Graves, Trevor) (Entered: 12/10/2012) |
| 12/14/2012 | 51 | **Motion** for oral argument filed by MRC Innovations, Inc., MRC Innovations, Inc., MRC Innovations, Inc., Plaintiff MRC Innovations, Inc.. Related document(s) 42 . (Digges, Randolph) (Entered: 12/14/2012) |
| 01/31/2013 | 52 | **Memorandum Opinion and Order**: Defendants' motion for summary judgment is granted on the ground that the '488 and '487 patents are invalid under 35 U.S.C. §103(a). Oral argument is not necessary and, therefore, plaintiff's motion for oral argument is denied. Judge Patricia A. Gaughan on 1/31/13. (LC,S) re 42 , 51 Modified on 5/17/2013 (LC,S). (Entered: 01/31/2013) |
| 01/31/2013 | 53 | VACATED per non–document Order dated 2/1/13. **Judgment Entry**: In accordance with the Court's Memorandum of Opinion and Order of this date granting Defendants' Motion for Summary Judgment on the ground of obviousness under 35 U.S.C. §103(a), judgment is hereby entered in this matter in favor of defendants and against plaintiff. Judge Patricia A. Gaughan on 1/31/13. (LC,S) re 52 Modified to vacate per Order on 2/4/2013 (S,HR). (Entered: 01/31/2013) |
| 02/01/2013 | | **Order** [non–document]: Judgment Entry is hereby vacated as it was filed in error. A Counterclaim remains pending. Judge Patricia A. Gaughan on 2/1/13. (LC,S) re 53 (Entered: 02/01/2013) |
| 02/01/2013 | 54 | Joint **Motion** to appear telephonically or, in the alternative, to reschedule the 2/5/13 settlement conference, filed by Hunter MFG, LLP. (Gingo, Nicholas) Modified text on 2/4/2013 (S,HR). (Entered: 02/01/2013) |
| 02/04/2013 | | **Order** [non–document] Joint Motion to Appear Telephonically for the Settlement Conference is granted. The Court will initiate the call at 9:30 a.m.(Related Doc # 54 ) Judge Patricia A. Gaughan on 2/04/13.(D,Ma) (Entered: 02/04/2013) |
| 02/05/2013 | | **Minute Order** [non–document]: Telephonic Settlement Conference was held. Telephonic Status Conference is set 2/25/2013 at 10:00 a.m. Judge Patricia A. Gaughan on 2/5/13. (LC,S) Time: 30 mins. (Entered: 02/06/2013) |
| 02/25/2013 | | **Minutes/Order** [non–document]: Status Conference was held. Discovery deadline on the issue of inequitable conduct is 4/25/13. Dispositive motion deadline is 5/25/13. Telephonic Status Conference is set 4/26/13 at 9:00 a.m. Judge Patricia A. Gaughan on 2/25/13. (LC,S) Time: 30 mins. (Entered: 02/25/2013) |
| 04/26/2013 | | **Minutes/Order** [non–document]: Status Conference was held. Telephonic Status Conference is set 5/20/13 at 9:00 a.m. Judge Patricia A. Gaughan on 4/26/13. (LC,S) Time: 30 mins. (Entered: 04/26/2013) |
| 05/10/2013 | 55 | **Motion** to dismiss *Voluntarily Defendants' Counterclaim for Inequitable Conduct* filed by CDI International, Inc., Hunter MFG, LLP. Related document(s) 41 , 40 . (Attachments: # 1 Proposed Order, # 2 Brief in Support)(Tucker, Todd) (Entered: 05/10/2013) |
| 05/10/2013 | 56 | **Opposition** to 55 **Motion** to dismiss *Voluntarily Defendants' Counterclaim for Inequitable Conduct* filed by MRC Innovations, Inc.. (Digges, Randolph) (Entered: 05/10/2013) |
| 05/14/2013 | | **Order**[non–document] Telephonic Status Conference set 5/20/13 at 9:00 a.m. is changed to 9:30 a.m. due to a scheduling conflict. Judge Patricia A. Gaughan on 5/14/13. (D,Ma) (Entered: 05/14/2013) |

| | | |
|---|---|---|
| 05/16/2013 | 57 | **Marginal Entry Order**: Defendants' Motion for Voluntary Dismissal of Counterclaim for Inequitable Conduct is Granted without prejudice. Judge Patricia A. Gaughan on 5/16/13. (LC,S) (Related Doc # 55 ) (Entered: 05/17/2013) |
| 05/16/2013 | 58 | **Judgment Entry**: In light of the Court's granting of Defendants' Motion for the Voluntary Dismissal of its Counterclaim for Inequitable Conduct, and the Court's Memorandum of Opinion and Order dated January 31, 2013 resolving all of plaintiff's claims in favor of defendants and against plaintiff, judgment is now hereby entered in this matter in favor of defendants and against plaintiff. Judge Patricia A. Gaughan on 5/16/13. (LC,S) re 57 , 52 (Entered: 05/17/2013) |
| 05/29/2013 | 59 | **NOTICE OF APPEAL** to the U.S. Court of Appeals for the Federal Circuit from the 58 Judgment Entry of 5/16/13 and the 52 Memorandum of Opinion and Order of 1/31/13, filed by MRC Innovations, Inc.. (Filing fee of $455 paid, receipt number 0647–6010520) (Digges, Randolph). Modified text on 5/30/2013 (H,SP). (Entered: 05/29/2013) |
| 06/06/2013 | 60 | Acknowledgment from the USCA for the Federal Circuit of receipt of 59 Notice of Appeal (USCA# 2013–1433). Date filed in USCA 6/4/13. (H,SP) (Entered: 06/06/2013) |
| 06/12/2013 | 61 | Transcript Request by MRC Innovations, Inc. re 59 Notice of Appeal,. Transcript is unnecessary, there were no hearings. (Digges, Randolph) Wrong form used. No need to refile as no transcripts needed. (S,HR). (Entered: 06/12/2013) |
| 06/17/2013 | 62 | First **Motion** for Bill for costs filed by Hunter MFG, LLP, Hunter MFG, LLP, Defendant Hunter MFG, LLP. (Attachments: # 1 Exhibit Costs under 28 USC 1920(1), # 2 Exhibit Costs under 28 USC 1920(2), # 3 Exhibit Costs under 28 USC 1920(3), # 4 Exhibit Other Costs)(Graves, Trevor) Modified text on 6/19/2013 (S,HR). (Entered: 06/17/2013) |
| 06/18/2013 | 63 | Memorandum in **Opposition** to 62 **Motion** for Bill of Costs filed by MRC Innovations, Inc. (Digges, Randolph) Modified text on 6/19/2013 (S,HR). (Entered: 06/18/2013) |
| 07/08/2013 | 64 | **Order**: Defendant filed a bill of costs seeking to recover a total of $3,486.04. In response, plaintiff objected to the inclusion of certain items. Specifically, plaintiff objects to the inclusion of the following: pro hac vice fees, attorney mileage to attend depositions, overhead fees, the cost "per page" of the deposition of Mr. Cohen, and costs incurred in the prosecution of defendant's counterclaim. Accordingly, costs are reduced by the following amounts: Pro hac vice fees ($200.00); Attorney mileage fees ($93.24); Overhead fees ($66.98); Reduction for per page transcript fee ($189.00); and Costs associated with the prosecution of the counterclaim ($1632.57). Accordingly, the requested costs are reduced by $2,181.79 for a total award of $1,304.25. Judge Patricia A. Gaughan on 7/8/13. (LC,S) re 62 , 63 (Entered: 07/08/2013) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MRC INNOVATIONS, INC. | Civil Action No.: 1:12-cv-00684 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| v. | **SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT WITH DEMAND FOR JURY** |
| HUNTER MFG., LLP, et al. | |
| Defendants. | |

Plaintiff MRC Innovations, Inc., for its Second Amended Complaint against Defendants Hunter MFG., LLP and CDI International, Inc., by and through its attorneys, states and alleges as follows:

## I.    Parties

1.    MRC Innovations, Inc. (hereinafter "MRC") is an Ohio corporation, and has a principal place of business at 3965 Marble Ridge Lane Mason, Ohio 45040.

2.    MRC is the owner, by written assignment, of all right, title and interest in and to U.S. Design Patent No. D634,488 (hereinafter "the '488 Patent"), entitled "Football Jersey for a Dog", which issued on March 15, 2011 to Mark Cohen based on an application filed on September 8, 2010.  A true and accurate copy of the '488 Patent is attached hereto as Exhibit A.

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

 

Hunter purchased the V2 jersey from Stephen Gould Corporation (SGC), for which Cohen was a salesperson, and then sold the V2 jerseys to domestic customers prior to the critical date. *See ¶¶* 2-4, Exhibit A.

In addition, pursuant to instructions from Hunter and patterned off another jersey (identified as the "ACDC jersey" in Tom Neth's deposition), Cohen designed the "Eagles" jersey (shown below) in "between the years 2007-2009." *See* **Exhibit B** attached hereto.

 

Fun In Games, Inc. ("FiG"), a sister company to Plaintiff and also owned by Cohen, sold jerseys of this type to Hunter, who then sold these same jerseys through Wal-Mart and

3

**A125**

In addition to the V2 jersey and the Eagles jersey previously reviewed by this Court and found to render the '488 Patent likely invalid, a third jersey known as the Sporty K9 jersey is shown below:



As discussed below in more detail, the Sporty K9 jersey is "prior art" and includes several key features of the jersey of the '488 Patent as well.

Section 102 of the Patent Act articulates when a particular activity qualifies as "prior art" to a patent. Subsection 102(b) provides that: "A person shall be entitled to a patent unless – . . . (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date the application for patent in the United States." 35 U.S.C. § 102(b). The "critical date" for purposes of the applicability of Section 102(b) is the "date exactly one year prior to the date of application for the patent . . . ." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1327 (Fed. Cir. 2001).

As noted above, the application for the '488 Patent was filed with the USPTO on

11

**A133**

**29**

1     A.   The neck trim, the sleeve trim,
2  the body trim, the sleeve, the neckline, the
3  sides and the chest.
4     Q.   Okay.  So is there any other
5  part -- so I think you've just testified that
6  there's mesh and there's interlock.  Is there
7  anything else?
8     A.   Not in the drawing, no.
9     Q.   Okay.  I mean, how can you tell
10  where the interlock fabric is in the drawing?
11     A.   How can you tell?
12     Q.   How can you tell where it is?
13  If I were to read this --
14     A.   Because it's not mesh.
15     Q.   So any portion that's not
16  interlock -- not mesh, excuse me, is
17  interlock fabric then?
18     A.   As represented in this drawing,
19  yes.
20     Q.   Okay.  Does interlock fabric, if
21  I were holding a piece of it here today, does
22  it have any sort of appearance?
23     A.   Do you know what interlock is?
24     Q.   I'll ask you.  Do you know what

**30**

1  interlock is?
2     A.   Sure.
3     Q.   Why don't you tell me what it
4  is?
5     A.   A hundred percent polyester.
6     Q.   So does it have an appearance,
7  does it have a surface texture?
8     A.   Of course.
9     Q.   Is that represented here in the
10  patent?
11     A.   The texture?
12     Q.   The texture.
13     A.   Well, the interlock can be many
14  different textures.
15     Q.   Okay.  So how would a designer
16  who wanted to avoid your patent be able to
17  know what kind of interlock might infringe
18  this patent and what might not?
19     A.   I don't know what any other
20  designer would do.
21     Q.   But you had a particular
22  interlock fabric in mind when you filed this
23  patent application is what you wanted to
24  claim the materials --

**31**

1     A.   Interlock is like using the word
2  Kleenex for tissue.
3     Q.   Kleenex is a brand name for
4  tissues, right, so that's referring to
5  various -- lots of different people make
6  tissues, right?
7     A.   Right.  Lots of different people
8  make interlock.
9     Q.   Then that wouldn't be like
10  Kleenex because Kleenex refers to one type of
11  tissue?
12     A.   Not the name, the material.
13     Q.   So it's like the material the
14  tissue is made out of, that paper material,
15  it would be the same?
16     A.   It's a hundred percent
17  polyester.
18     Q.   Okay.  Now does the -- I'm going
19  to go back and polish, if you don't mind.  If
20  I could refer you back to the application as
21  you filed it.
22     A.   Uh-huh.
23     Q.   I'm going to ask you to read it
24  and tell me if you see that phrase --

**32**

1     A.   Which part?
2     Q.   I'm going to ask you to read the
3  whole thing.
4     A.   Starting where?
5     Q.   From the top to the bottom.
6  It's only one page long.  It starts with The
7  United States Patent and Trademark Office and
8  ends with a claim.  Do you see that
9  statement, the material the football jersey
10  is primarily of a mesh interlock fabric
11  anywhere in this application?
12     A.   You want me to read this page,
13  page one?
14     Q.   I do.  I don't want you to read
15  it out loud, I just want you to read it to
16  yourself and tell me if you see that
17  statement anywhere in it.
18     A.   Am I reading the right page?
19     MR. DIGGES:  No.
20     Q.   I'm sorry.  It's not the
21  declaration, it's the application.  There you
22  go.  Thank you.
23     A.   Figure one.
24     Q.   So read what the figure one

nically signed by Valerie Jones Conn (401-133-571-6952)          5ad4ea4c-72ed-42d0-9c21-52cdc4d0e5be





# SPORTY K9

**OFFICIALLY LICENSED CANINE APPAREL AND GIFTS**

## ACCESSORIES



### DOG TOYS

**We have team toys for every dog from the little ones to the roughest, toughest ones!!!**

Our "talking " plush bat continues to be a big hit, both with dogs and people!! With custom team chant and squeaker; embroidered team logo; 14" length



Little dogs love our small plush balls with squeaker and embroidered team logo. Baseballs also available. ▶

Need a rugged, durable toy? Try our 100% rubber tug toy with cotton rope in team colors and logo.

◀ Basketballs & Baseballs also available.



### DOG BOWLS & PLACEMATS

These team bowls with matching placemats are the perfect way for your dog to dine in style. Bowls are made of durable plastic with rubber feet; dishwasher safe. Placemats have a sponge base with plastic top coating for easy cleaning.

Bowls: Small 700 ML • Large 1700 ML
Placemat: 13" x 20"   *Bowls and Placemats sold separately.



### SPORTS PILLOW BEDS

Dogs will love this supersoft plush pillow bed. Football, basketball or baseball available, all with embroidered team logo. These beds have a significant loft so your dog can sink in for a long afternoon nap. Removable cover for easy washing.

Football size: Small 33" x 28" • Large 31" x 51"
Round Basketball and Baseball sizes: Small 24" • Large 45"





### DISPLAY HANGERS

Make a big splash with these eye catching display hangers, available for baseball, basketball and football. Designed to avoid confusion with children's clothing, they also attract attention to your entire SportyK9 collection.

Made of heavy chipboard with peg hole. Available in XXS - XL.

**CALL FOR MINIMUMS AND LEAD TIMES: 512.266.3320**

## www.SPORTY K9.com

Sporty K9, Ltd., Austin, TX 78732
512-266-3320 • Fax 512.857.8866 • www.sportyk9.com






Major League Baseball trademarks and copyrights are used with the permission of Major League Baseball Properties, Inc.

© 2007 NBA Properties, Inc. All Rights Reserved.

# APPLE APPAREL





## JERSEYS

**Dress your dog like the Pros in these authentic looking team jersey.**

### FOOTBALL

Made of polyester fabric and mesh; rib trim and v-neck.

Available from XXS - XL

### BASEBALL

Made of polyester fabric rib trim, v-neck and side panels with faux t-shirt, velcro closure and button trim. Embroidered team logos.

Available from XXS - XL

### BASKETBALL

Made of mesh fabric; rib trim and side panels.

Available from XXS - XL







## JACKETS

**What better way to stay warm than with a stylish varsity or dugout jacket.**



### DUGOUT JACKETS

Made of polyester sports twill with snaps and pocket trim, fleece lining and velcro closure. Embroidered team logos.

Available from XXS - XL

### VARSITY JACKETS

Made of fleece with faux leather sleeves and pockets, rib trim and velcro closure. Embroidered team logos.

Available from XXS - XL

## THINK PINK

THINK PINK, the hottest fashion color for pets and sports. Perfect for your special little Princess.

Available from XXS - XL







## CAPS

Caps are not only for people. Our best fans need to shade their eyes too! This fashionable cap is the perfect solution. Made of cotton twill fabric with embroidered team logos; velcro side closures and chin strap - all adjustable.

**Available in XS, S, M/L**





## NOVELTY T-SHIRTS

Show your team loyalty with a novelty tee and start your collection today! Made of cotton, featuring your favorite team logos

**Available from XXS - XL**

# ACCESSORIES



## BANDANAS

A great way to show your team spirit!! This impressive team bandana is perfect for you as well as your pet! Made of cotton featuring team logos; tie-on style.

**Available in S, M/L**



## COLLARS WITH ID TAG*

Show support of your favorite team with this magnificent collar and ID tag engraved with team logo. Made of woven ribbon sewn on high-tensile webbing with quick-release buckle. ID tag in silver or gold-toned finish.

5/8" Small Collar - 9" to 14" neck
1" Med/Lg Collar - 16" to 26" neck



*ID tags also sold separately for use on other items—key chains, harnesses, and other pet accessories.



## LEASHES

Keep your favorite sports fan close by with this 6' leash made of woven ribbon sewn on high-tensile webbing; gold or silver-toned hardware.

**Available in 5/8" and 1" widths; 6' length**



**WWW.SPORTYK9.COM**

Cincinnati Bengals logos). In some circumstances, FiG would apply the transfers and ship a finished product to Hunter (Cohen Dec. at ¶5).

The pet jerseys initially supplied by FiG to Hunter were designed by Cohen and have been identified in this litigation as the "V2 Jersey" (Cohen Dec. at ¶6). "V2" stands for "Version 2", because this particular design of this pet jersey was a new design that replaced an earlier design for a pet jersey previously purchased by Hunter from other suppliers (Cohen Dec. at ¶6). A photograph depicting the front and back, respectively of a representative V2 Jersey is provided in Cohen Dec. at ¶7.

The material of the V2 Jersey was primarily of a mesh and dazzle fabric (Cohen Dec. at ¶7). Dazzle fabric is well known to designers of ordinary skill in the art as being a type of polyester fabric that tends to be sleek and shiny, yet is soft and somewhat silky (Cohen Dec. at ¶7). Dazzle fabric is used in a variety of applications, including sports uniforms, baby carriages and car seats (Cohen Dec. at ¶7). Mesh fabric is also well known to designers of ordinary skill in the art as being a fabric having a large number of closely-spaced holes (i.e., any of the open spaces in a fabric and the material surrounding these spaces; an openwork fabric) (Cohen Dec. at ¶7). Mesh fabric is used in a variety of applications, including laundry bags and athletic jerseys (Cohen Dec. at ¶7). In the photo of the V2 Jersey shown above, the dazzle fabric appears shiny and slightly lighter in color than the mesh fabric (Cohen Dec. at ¶7).

The V2 Jersey also featured a V-neck collar, banded arm holes and narrow panels of dazzle fabric that run from below each arm opening to the bottom of the pet jersey (Cohen Dec. at ¶8). Sales of the V2 Jersey by FiG to Hunter were modest (Cohen Dec. at ¶8).

For a short period of time, FiG supplied a football jersey for a special NFL program to be offered by Hunter (Cohen Dec. at ¶9). A sample of such a jersey has been identified in the litigation as an "Eagles Jersey" (based on the presence of Philadelphia Eagles transfers that were applied to the jersey depicted in the photos below - jerseys of similar design were supplied by FiG in different colors and other NFL team transfers were applied to them by Hunter) (Cohen Dec. at ¶9). A photograph depicting the front and back, respectively of a representative Eagles Jersey is provided in Cohen Dec. at ¶9.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENTANTS' JOINT MOTION FOR SUMMARY
JUDGMENT - 2
CIVIL ACTION NO. 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A167**

The Eagles Jersey represented a substantially different design than the V2 Jersey (Cohen Dec. at ¶10). The material of the Eagles Jersey was primarily of a mesh and interlock fabric (Cohen Dec. at ¶10). No dazzle fabric was used at all in the Eagles Jersey at all (Cohen Dec. at ¶10). Interlock fabric is well known to designers of ordinary skill in the art as being a type of double-knit fabric in which the loops are locked to each other such that both faces of the fabric are substantially smooth and identical (Cohen Dec. at ¶10). Interlock fabric is used in a variety of applications, including T-shirts, sports uniforms and home furnishing products (Cohen Dec. at ¶10).

The design of the V2 Jersey included a V-neck collar, whereas the design of the Eagles Jersey included a crew neck collar (Cohen Dec. at ¶11). The design of the V2 Jersey included dazzle fabric sleeves, whereas the design of the Eagles Jersey included interlock fabric sleeves (Cohen Dec. at ¶11). The design of the V2 Jersey included sleeves that are "drop sleeves", meaning that the sleeve seam drops from the neckline, where the design of the Eagles Jersey included "raglan-style sleeves", meaning that the sleeves are directly attached to the neckline (Cohen Dec. at ¶11). The design of the V2 Jersey included narrow panels of dazzle fabric that ran from below each arm opening to the bottom of the pet jersey, whereas the design of the Eagles Jersey included no such panels at all (Cohen Dec. at ¶11). The design of the V2 Jersey did not include any ornamental serge stitching, whereas the design of the Eagles Jersey included ornamental serge stitching (appears as wide lines formed of white thread in the photos) that extended from the crew neck in the front below each sleeve and to the rear of the crew neck and also horizontally across the chest and rear shoulders of the Eagles Jersey (Cohen Dec. at ¶11).

In 2009, Cohen invented several new designs for pet jerseys (Cohen Dec. at ¶12). One such design has been referred to in this litigation as the "V3 Jersey" (Cohen Dec. at ¶12). "V3" stands for "Version 3", because the design of this pet jersey was a new design that replaced the V2 Jersey design previously purchased by Hunter from FiG (Cohen Dec. at ¶12). A photograph depicting the front and back, respectively of a representative V3 Jersey is provided in Cohen Dec. at ¶12.

The V3 Jersey is a substantially different design than both the V2 Jersey and the Eagles Jersey (Cohen Dec. at ¶13). The material of the V3 Jersey is primarily of a mesh and interlock fabric. No dazzle fabric, which was used extensively in the V2 Jersey, was used in the V3 Jersey

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENTANTS' JOINT MOTION FOR SUMMARY
JUDGMENT - 3
CIVIL ACTION NO. 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A168**

in the V2 Jersey (Cohen Dec. at ¶30). The V2 Jersey thus clearly does not exhibit design characteristics of which are basically the same as the claimed design, as asserted by Defendants (Cohen Dec. at ¶30).

The following drawing composite identifies differences between the claimed design and the Eagles Jersey (Cohen Dec. at ¶31):

The '488 Patent - Fig. 2 (Front)          The '488 Patent - Fig. 4 (Back)

 

Eagles Jersey - Front          Eagles Jersey - Back

 

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENTANTS' JOINT MOTION FOR SUMMARY
JUDGMENT - 14
CIVIL ACTION NO. 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A179**

The '487 Patent (Front)    The '487 Patent (Back)

 

Sporty K9 (Back)



(Front)

Again, Plaintiff has added red arrows to the figures showing the front and back of the design claimed in the '487 Patent. Arrow "A" points to v-neck collar that is present in the claimed design, which is very different than the collar assembly in the Sporty K9 Jersey (baseball version), which appears to consist of a faux t-shirt portion having a crew neck that

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENTANTS' JOINT MOTION FOR SUMMARY
JUDGMENT - 23
CIVIL ACTION NO. 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A188**

65

1    Q.  You've taken the position in
2 this case though that the patent is invalid.
3    A.  Yes.
4    Q.  So are you waiting for a judge
5 to say it's invalid?  What happens then?
6    A.  Presumably we would not be
7 allowed to sell them into the marketplace. I
8 have very little product that is actually
9 marked with a patent number.
10    Q.  Okay. Let's go into the reasons
11 why you think the V3 jersey is not covered by
12 the 488 patent. Can you identify those
13 reasons to me?
14    A.  Yes. The -- let me pull up
15 the -- on the -- looking at figure two of the
16 patent, the V neck is different than what's
17 depicted in the illustration.
18    Q.  And to be specific, that's
19 because the overlap is in the opposite
20 direction?
21    A.  That is correct.
22    Q.  Okay. Any other differences?
23    A.  The -- the -- the stitching.
24 The decorative stitching that is on the

66

1 product from the front side of it is not
2 illustrated. You can see the backside
3 illustration for --
4    Q.  And that would be again in
5 figure two you're saying --
6    A.  Figure two you can see on this
7 jersey that is in front of me that is marked,
8 you can see stitching that runs down on the
9 inside of it is not illustrated or depicted
10 that way in the figure two.
11    MR. GRAVES: He's referring to
12 Exhibit B as the jersey in front of him.
13    MR. DIGGES: Right.
14    A.  The mesh appears different on
15 this particular version.
16    Q.  And any other differences?
17    A.  I think those are the -- those
18 are the basic ones that I see.
19    Q.  You said the mesh appears
20 different. Can you identify in the figures
21 accompanying the 488 patent what is mesh?
22    A.  The area that looks like a grid.
23    Q.  Okay. Did you identify those
24 three principal differences between the V3

67

1 jersey and what's shown in the 488 patent?
2    A.  I identified some of those, yes.
3    Q.  Who else identified them?
4    MR. GRAVES: Objection.
5    Q.  If it's your counsel, don't
6 answer. Okay. We'll leave it at that. When
7 you went to -- let's go into the next -- the
8 next jersey in time I guess. I think. At
9 some point you mentioned that Mark informed
10 FiG wasn't gonna do business with them. I
11 think that's how you characterized -- if I'm
12 characterizing your testimony correctly or
13 how did the relationship between FiG and
14 Hunter end?
15    A.  Mark informed us that he was not
16 interested in continuing our relationship.
17    Q.  Was that a surprise or something
18 you expected?
19    A.  We've had -- had had a number of
20 issues.
21    Q.  What were those issues?
22    A.  They were primarily around
23 payment.
24    Q.  What does that mean?

68

1    A.  Hunter had some challenging
2 financial times and we were slow to pay at
3 times.
4    Q.  And that didn't make Mr. Cohen
5 very happy?
6    A.  Presumably, no.
7    Q.  So when Mr. Cohen informed you
8 that he didn't want to do business with you
9 anymore, is that the gist of the
10 conversation?
11    A.  Yes.
12    Q.  Had you begun to find another
13 supplier for your football jersey before that
14 conversation or after?
15    A.  After.
16    Q.  And so that -- that was one that
17 you said I better find another supplier for
18 football jerseys?
19    A.  Yes. For multiple things that
20 Mark supplied but football jerseys being one.
21    Q.  Okay. Who did you contact or
22 how did Hunter go to find another supplier
23 for that?
24    A.  We did a request for proposal.

Electronically signed by Deanne L. Cartwright (501-202-620-8979)

fff97f6e-cdf5-42c3-ac19-6fae0710d999

69

1    An RFP.
2         Q.   And what does an RFP -- how does
3    that work?
4         A.   We send out a request for quotes
5    on the products that we produce.
6         Q.   Is that sent out to the world in
7    general or to specific suppliers?
8         A.   We chose specific suppliers who
9    had areas that could produce products for us.
10        Q.   Who did you send the RFP to?
11        A.   It would have went to A Plus and
12   to CDI.
13        Q.   I'm not familiar with A Plus.
14   What does that company supply?
15        A.   They supply pet products, supply
16   webbing to us that we use to make collars.
17        Q.   Are they a U.S. company or a
18   foreign company?
19        A.   They are a U.S. company.
20        Q.   Where are they based?
21        A.   In New Jersey.
22        Q.   And CDI is another company that
23   supplied other materials to Hunter at the
24   time?

70

1         A.   That is correct.
2         Q.   Was A Plus also a supplier to
3    Hunter at the time?
4         A.   That is correct.
5         Q.   And what did CDI supply to you?
6         A.   Primarily drinkware:  Glasses,
7    cups.
8         Q.   Did either of those companies
9    provide any type of, I think I will call it,
10   apparel or --
11        A.   A Plus has supplied apparel to
12   us in the past.
13        Q.   Pet jerseys?
14        A.   Not pet jerseys.
15        Q.   Okay.  And so I assume you've
16   got -- you received at some point responses
17   to your RFPs?
18        A.   Correct.
19        Q.   Now, the RFP, what information
20   do you provide to the potential supplier when
21   you send them an RFP?
22        A.   We would give them the rough
23   forecast quantify, we would give them the
24   number of sizes and colors.

71

1         Q.   But they'd also have to know
2    what it is they're supplying, right?
3         A.   Yes.
4         Q.   How did they --
5         A.   And a sample of the product.
6         Q.   So you would also give them a
7    sample of the product?
8         A.   Yes.
9         Q.   So they should have got a V3
10   jersey?
11        A.   They would have got a V3 jersey,
12   yes.
13        Q.   Would they have received
14   anything else?  Specifications for example?
15        A.   No.
16        Q.   We have -- I think it's in
17   Exhibit B actually.  It's pages -- it's
18   marked as exhibit 2 of Exhibit B.  There are
19   four pages.  It's exhibit 2 --
20        A.   Okay.
21        Q.   -- of Exhibit B --
22        A.   Okay.
23        Q.   -- or the pages marked
24   Exhibit 2.  There are four pages there which

72

1    I think at various times yesterday we
2    referred to them as specifications and
3    whatever.  Have you seen these papers before
4    this lawsuit?
5         A.   I have not.
6         Q.   And so none of these papers are
7    in the possession of Hunter?
8         A.   Not that I'm aware of.
9         Q.   And Hunter has never provided
10   any of these papers to anybody as part of a
11   request for proposal?
12        A.   They have not.
13        Q.   So the -- so the request for
14   proposal would have included the quantity,
15   the sizes, the colors, and then a sample of
16   the V3 jersey to be produced?
17        A.   Yes.
18        Q.   Do you have copies of those
19   request for proposals?
20        A.   I'm assuming we do, yes.
21        Q.   And then I assume at some point
22   you got responses from your request?
23        A.   Yes.
24        Q.   Did you receive responses from

Electronically signed by Deanne L. Cartwright (501-202-620-8979)
fff97f6e-cdf5-42c3-ac19-6fae0710d999

A197

73

1  both paries?
2      A.  We did.
3      Q.  And how did you come to choose
4  CDI's response?
5      A.  I think there was a number of
6  factors that were involved in it but
7  primarily it was the supply relationship that
8  we have with them.
9          MR. DIGGES: I don't want to get
10  into --
11          MR. GRAVES: I was gonna say --
12          MR. DIGGES: Yeah. We'll touch
13  that again.
14          MR. GRAVES: Okay.
15          MR. DIGGES: So your
16  understanding is that the -- that the pet
17  jersey to be supplied by the new supplier,
18  ultimately CDI, would be based on the V3
19  jersey that you supplied with the request for
20  proposal.
21      A.  It would be similar to the
22  jersey that we sent to them, yes.
23      Q.  Were there also changes
24  indicated in those request for proposal?

74

1      A.  I do not believe we would have
2  made substantial changes in that at that
3  time.
4      Q.  Why would you think it would
5  only be similar to that jersey?
6      A.  I didn't have specifications. I
7  don't think I can have them make an exact
8  copy.
9      Q.  All right. I'm going to again
10  put a jersey in front of you. This one from
11  my alma mater I think. It's an Ohio State
12  jersey and red. And I want you to confirm
13  that the Exhibit B, and I think it's the last
14  three pages, are photographs of that -- the
15  jersey you have in your hands.
16      A.  Okay.
17      Q.  I'll represent to you that they
18  are. Okay. So that -- this jersey do you
19  know who manufactured that?
20      A.  I do not.
21      Q.  I'll represent to you that it
22  was purchased or I believe it was purchased
23  from a pet store called Moochie's here in the
24  Cincinnati area in 2012 I think. Does that

75

1  have Moochie's in it?
2      A.  Yes.
3      Q.  Yeah. Does that help you
4  identify who might have manufactured it?
5      A.  No.
6      Q.  Is it possible that CDI
7  manufactured it?
8      A.  It's possible.
9      Q.  Inside the label or there's a
10  label on the inside, that has a manufacture
11  date, I assume, of November 5th, 2011.
12      A.  Not this one.
13      Q.  Doesn't it? Oh, I may have grabbed
14  the wrong one. This one says September 19th.
15  Well, does September 19th, 2011 help you
16  identify who manufactured it?
17      A.  It does not.
18      Q.  How many companies were
19  manufacturing jerseys for you in September of
20  2011?
21      A.  Two.
22      Q.  Who were they?
23      A.  Fun In Games and CDI.
24      Q.  So you were buying

76

1  simultaneously for a while from both?
2      A.  Yes.
3      Q.  Okay.
4          MR. GRAVES: Can we state on the
5  record, so that you don't misrepresent and
6  you did it unintentionally, but that jersey
7  he is viewing isn't exactly --
8          MR. DIGGES: Yeah. I think we
9  should clarify that. That's correct.
10          MR. DIGGES: I don't want to --
11          MR. GRAVES: Yeah.
12          MR. GRAVES: It appears to be an
13  Ohio State jersey that's very similar. It
14  definitely has a tag if we want to clear that
15  on the record.
16          MR. DIGGES: You're right. And
17  I'm not sure -- we must have another one. Do
18  you recognize any of the jerseys from
19  yesterday as being a jersey manufactured by
20  CDI for Hunter?
21      A.  Our jerseys aren't marked with
22  who manufactured them so I cannot tell you
23  who manufactured an individual jersey unless
24  I have the case that it came in.

Electronically signed by Deanne L. Cartwright (501-202-620-8979)

fff97f6e-cdf5-42c3-ac19-6fae0710d999

77

1    Q.   If that's -- assuming that
2  that's the case, is there any way visually to
3  tell the difference between a jersey
4  manufactured by Fun In Games for Hunter and a
5  jersey manufactured by CDI for Hunter?
6        MR. GRAVES:  Objection to form.
7  You can answer.
8    A.   Probably not.
9  (Exhibit E identified.)
10   Q.   You've been handed what's been
11 marked as Exhibit E which are Hunter's
12 responses to MRC's request for admission.  I
13 direct your attention to -- by the way, this
14 is a redacted version.  It does not have the
15 attorney's eyes only questions.
16       MR. GRAVES:  Okay.
17       MR. DIGGES:  I'll save those --
18 I have other pages that we'll deal with later
19 just so that's clear on the record.
20 Admission number 13 asks that you admit that
21 CDI's pet jerseys are copies of pet jerseys
22 supplied to Hunter by FiG and very last
23 word -- or last four letters indicate that
24 that is denied.

78

1        MR. GRAVES:  Objection.
2        MR. DIGGES:  I'm letting him
3  read it.
4        MR. GRAVES:  Oh, I'm sorry.  I
5  thought you were pausing.  I didn't know what
6  the question was.
7        MR. DIGGES:  My question is:  If
8  you can't tell them apart visually, how can
9  you deny that they're copies?
10       THE WITNESS:  Am I waiting on
11 you?
12       MR. GRAVES:  No.  I'm sorry.
13       THE WITNESS:  Okay.  I'm sorry.
14 I thought you interrupted him so he
15 interrupted so.  If I can't tell visually,
16 how can I tell that they're copies?
17       MR. DIGGES:  No.  How can you
18 deny that they're copies if you can't tell
19 them apart?
20   A.   I can't confirm that they are
21 copies.
22   Q.   You supplied -- if I understand
23 your prior testimony, you supplied a V3
24 jersey manufactured by Fun In Games to two

79

1  companies with a request for proposal to
2  make --
3    A.   Make a jersey similar to this.
4    Q.   Right.
5    A.   Yes.
6    Q.   And they did.  They supplied it
7  to you.
8    A.   Right.
9    Q.   And now you can't tell that
10 jersey apart from jerseys that were supplied
11 by Fun In Games.  Are you saying the jersey
12 supplied by CDI is not a copy of the FiG
13 jersey?
14       MR. GRAVES:  Objection to form.
15 You can answer.
16   A.   What I'm saying is that I don't
17 know from one jersey to the next jersey
18 whether or not it is an exact copy even if
19 they're supplied by the same manufacturer and
20 so I cannot tell you that one jersey made by
21 one company versus another company are an
22 exact copy of one another.
23   Q.   Are we -- is the basis for your
24 denial the definition of the word copy?  What

80

1  does that mean to you?
2        MR. GRAVES:  Objection to form.
3  You can answer.
4    A.   Copy means an exact copy like a
5  Xerox.  You go to a photocopy machine make a
6  copy of it.  An exact copy.
7    Q.   You cannot photocopy a pet
8  jersey, right?
9    A.   Presumably not.
10   Q.   How would one copy a pet jersey
11 in your words?
12   A.   My guess is that you would have
13 to have the specifications or recipe in order
14 how to make it and then you would make it
15 exactly based on those specifications in
16 order to get a copy.
17   Q.   If those specifications produced
18 this garment and you take it apart and then
19 measure all those pieces and reassemble it,
20 that's not a copy?
21   A.   I don't think there's some
22 things that you can get from that.
23   Q.   Like what?
24   A.   Well, for example, the

Thomas Neth, 5/10/2012

(Pages 81 to 84)                    21

---

**81**

1 stitching, the thickness of the thread used
2 or the type of stitching or -- I don't know
3 how you can determine that based on pulling a
4 garment apart.
5     Q. So those are the reasons why you
6 say this is not a copy?
7     MR. GRAVES: Objection to form.
8 You can answer.
9     A. I deny it because I cannot tell
10 you whether or not it is a copy or not a copy
11 of it.
12     Q. Has Hunter ever had any of its
13 products, I'm not gonna use the word copied,
14 but duplicated by a competitor and sold in
15 the marketplace?
16     A. We have designs that are
17 occasionally copied, yes.
18     Q. Did you ever hear the term
19 knockoff?
20     A. Yes.
21     Q. Do you take the position that
22 those knockoffs are not copies unless they
23 have your specification sheet?
24     MR. GRAVES: Objection to form.

---

**82**

1 You can answer.
2     A. I think many knockoffs, if you
3 will, are not that close if a consumer takes
4 the time to look at them closely.
5     Q. But we took the time earlier and
6 asked an expert, not a consumer, the actual
7 seller, if he could tell the difference
8 between the two and you couldn't do so.
9     MR. GRAVES: Objection to form.
10     Q. And then you tell me they're not
11 a copy.
12     A. I'm not an expert in the design
13 function. I am a salesperson.
14     Q. Okay. A salesperson of pet
15 jerseys couldn't tell the difference in them
16 but it's still not a copy?
17     MR. GRAVES: Objection to form.
18 You can answer.
19     A. I am not an expert in the design
20 or -- of doing that, no.
21     Q. All right. Setting all your
22 qualifications aside, whether an expert or a
23 layperson, you couldn't tell the difference
24 between jerseys manufactured by CDI and FiG,

---

**83**

1 is that true?
2     A. I don't know.
3     Q. Well, if we put them front of
4 you, can you identify differences? Can
5 you --
6     A. I cannot tell you who made
7 them --
8     Q. Is that --
9     A. -- based on looking at them.
10     Q. Is that because they're similar?
11     A. It's because they are both a pet
12 jersey made of similar type of materials,
13 yes.
14     Q. But they're not a copy?
15     A. I don't know if they're a copy
16 or not. I can't tell you. I don't have a
17 ruler. I can't take them apart and do the
18 specifications and those types of things so I
19 can't tell you if it's a copy or not a copy.
20     Q. Would it be a knockoff if I use
21 a different word?
22     MR. GRAVES: Objection to form.
23 You can answer.
24     A. You can call it what you want.

---

**84**

1 It's the same thing.
2     Q. What would you call it?
3     A. I would call it a similar
4 jersey.
5     Q. Okay. Are you continuing --
6 wait. I don't want to get into that. Let's
7 do this as F I guess.
8     (Exhibit F identified.)
9     Q. I'll represent to you that two
10 days ago I went to the Hunter website and
11 downloaded your electronic catalog and
12 because it was so huge I only took -- huge in
13 file size I only took the one page that shows
14 pet jerseys and the cover. Do you recognize
15 that?
16     A. Yes, I do.
17     Q. Okay. And the pet jerseys that
18 are shown it looks like on page 42 of the
19 catalog, it's the second page of Exhibit F,
20 do you know who those are manufactured by?
21     A. I do not.
22     Q. Some could be CDI and some could
23 be FiG?
24     A. That is correct.

---

Electronically signed by Deanne L. Cartwright (501-202-620-8979)    fff97f6e-cdf5-42c3-ac19-6fae0710d999

**A200**

9

```
 1   or so?
 2       A.   Yes.  Correct.
 3       Q.   Was Hunter the first customer
 4   you sold pet jerseys to?
 5       A.   Correct.
 6       Q.   Does CDI sell pet jerseys to any
 7   other customer aside from Hunter?
 8       A.   Not that I'm aware of.
 9       Q.   Does CDI manufacture those
10   themselves or do they have them manufactured
11   for Hunter?
12       A.   We have them manufactured for
13   Hunter.
14       Q.   And from tags I've seen in
15   garments I'm gonna guess that's in China
16   somewhere?
17       A.   Correct.
18           MR. DIGGES:  Do you know the
19   name -- well, first I'll ask Mark.  Is the
20   name of your supplier in China confidential
21   that you don't want Mark Cohen to hear?
22           MR. MURPHY:  I believe so.
23           MR. COHEN:  I already know it.
24           MR. DIGGES:  Save for later.
```

10

```
 1   You were present during the testimony of
 2   Mr. Neth this morning and he testified that
 3   he sent or Hunter sent a request for proposal
 4   to CDI to manufacture a shirt.
 5       A.   Correct.
 6       Q.   Or pet jersey.  Does CDI
 7   maintain that record, that request for
 8   proposal?
 9       A.   I would think it's retrievable.
10   I'm not sure.
11       Q.   Did you see it?
12       A.   Yes.
13       Q.   What information was provided on
14   there?
15       A.   It was basic quantities of --
16   like an annual usage, colors, Pantone colors,
17   PMS colors.
18       Q.   Right.  And then it was
19   accompanied by a sample of a jersey they
20   wanted you to -- to make a similar product?
21       A.   Correct.
22       Q.   Did they say copy this?
23       A.   No.
24       Q.   Did you copy it?
```

11

```
 1           MR. GRAVES:  Objection to form.
 2   You can answer.
 3       A.   To some degree I'd say yes.  In
 4   other ways no because, you know, the weight
 5   of the fabric wasn't the same, the fabric
 6   wasn't made in the same factory, stitching's
 7   not identical.  Things like that.
 8       Q.   So explain to me how you respond
 9   to a request for proposal and specifically
10   that one.  What did you do?
11       A.   Well, first I would ascertain
12   whether we had the capability of sourcing the
13   product.  Okay.  Once that was established
14   then I requested samples.  I receive samples.
15   Sent them to the office in China.  They
16   produce some preproduction samples for
17   approval and then went into all the different
18   Pantone colors which I'm not exactly sure how
19   many off the top of my head, but numerous
20   Pantone colors.  We had the fabric factories,
21   you know, dye the material as close as
22   possible.  They weren't all matches, you
23   know.  And I had a board of samples that were
24   sent to me.  I forwarded them to Hunter and
```

12

```
 1   internally they would approve or say you had
 2   to change this color.
 3       Q.   Okay.  You mentioned samples.
 4   The samples that you sent to China, those
 5   were provided by Hunter?
 6       A.   Correct.
 7       Q.   And then that's -- so the
 8   Chinese supplier or source would have been
 9   tasked with trying to duplicate that?
10           MR. GRAVES:  Objection to form.
11   You can answer.
12       A.   I would say so.
13       Q.   Do the -- do records exist of
14   the instructions you provided to the Chinese
15   supplier when you --
16       A.   You know, probably -- you know,
17   we do this type of work with these people in
18   China for so long, not pet jerseys, but we
19   would supply them with just basically the
20   same information Hunter provided us:  The
21   quantities, the colors, and that.
22       Q.   Would that information have been
23   provided in English or Chinese?
24       A.   English.
```

Electronically signed by Deanne L. Cartwright (501-202-620-8979)          98b71f11-2870-4cef-a108-dc217488a783

```
                                      17
1   difference between pet jerseys that were
2   supplied to Hunter by FiG and pet jerseys
3   that are supplied to Hunter by CDI?
4         MR. GRAVES: Objection to form.
5   You can answer.
6         A.   Probably if I knew they were the
7   ones that we created, you know, that we
8   produced, I could -- if I knew that it was
9   ours I could pick out differences.
10        Q.   And that would be things like
11  material weights and --
12        A.   Stitching.
13        Q.   But just hanging on a shelf in a
14  retail aisle you can't tell the difference?
15        A.   I'm not sure. I haven't had the
16  opportunity to be in that position.
17        Q.   We have half a dozen pet jerseys
18  sitting around on this table. Can you
19  identify any that were made by FiG, version
20  three -- versions that were made by FiG
21  and versions that were made by CDI?
22        A.   It would be difficult for me to
23  do that.
24        Q.   Okay. Is Susan Casey your wife?
```

```
                                      18
1         A.   Yes.
2         Q.   What does she do for CDI?
3         A.   She assists me.
4         Q.   Oh, okay. Rosie, is it
5   Stabilit?
6         A.   Yes.
7         Q.   I got it right.
8         A.   Very good.
9         Q.   Where does Rosie work?
10        A.   CDI in Philadelphia.
11        Q.   Philadelphia.
12        A.   Yes.
13        Q.   And I assume Mr. Edelstein's in
14  Philadelphia?
15        A.   Correct.
16        Q.   Who's Mitch Cannon at Hunter?
17        A.   That would be a person that I
18  know as -- in the art department.
19        Q.   Okay. In interrogatory number
20  eight -- this is exhibit K.
21        A.   Is this in the same group?
22        Q.   Yeah. It's Exhibit K.
23  Interrogatory number eight.
24        A.   No implied?
```

```
                                      19
1         Q.   On page eight.
2         MR. GRAVES: He's referring to
3   this one.
4         Q.   I'm gonna let you read it and
5   your response. Okay.
6         A.   Okay.
7         Q.   When you received the request
8   for proposal --
9         A.   Yes.
10        Q.   -- and there were samples of the
11  jerseys they wanted you to produce, did you
12  know those were made by FiG?
13        A.   No.
14        Q.   You knew they were made by
15  somebody other than CDI?
16        A.   Correct.
17        Q.   Could have been made by Hunter.
18  You didn't know who made them.
19        A.   Well, I knew it wasn't made by
20  Hunter. They don't manufacture.
21        Q.   That's right. They wouldn't
22  have requested them if they --
23        A.   Right.
24        Q.   Did you inquire who made these?
```

```
                                      20
1         A.   No.
2         Q.   And so I take it from this
3   response you don't have possession of the
4   samples anymore that you received?
5         A.   Absolutely not.
6         Q.   Would your Chinese supplier have
7   those?
8         A.   I highly doubt it.
9         Q.   That's something that's simply
10  discarded after it's no longer needed?
11        A.   Well, there's extenuating
12  circumstance. We changed manufacturers.
13        Q.   Oh, so the original manufacturer
14  might have them but you don't know?
15        A.   Correct. We don't have a
16  relationship with the original manufacturer
17  anymore.
18        MR. DIGGES: I see. I think
19  we're to the point where --
20        MR. GRAVES: Confidential
21  portion?
22        MR. DIGGES: Yeah.
23  (Off the record discussion.)
24  (Mark Cohen and Tom Neth leave the room.
```

Electronically signed by Deanne L. Cartwright (501-202-620-8979)    98b71f11-2870-4cef-a108-dc217488a783

Eagles Jersey - Front                          Eagles Jersey - Back




10.    The Eagles Jersey represented a substantially different design than the V2 Jersey.  The
       material of the Eagles Jersey was primarily of a mesh and interlock fabric.  No dazzle
       fabric was used at all in the Eagles Jersey at all.  Interlock fabric is well known to
       designers of ordinary skill in the art as being a type of double-knit fabric in which the
       loops are locked to each other such that both faces of the fabric are substantially smooth
       and identical.  Interlock fabric is used in a variety of applications, including T-shirts,
       sports uniforms and home furnishing products.

11.    The design of the V2 Jersey included a V-neck collar, whereas the design of the Eagles
       Jersey included a crew neck collar.  The design of the V2 Jersey included dazzle fabric
       sleeves, whereas the design of the Eagles Jersey included interlock fabric sleeves.  The
       design of the V2 Jersey included sleeves that are "drop sleeves", meaning that the sleeve
       seam drops from the neckline, where the design of the Eagles Jersey included "raglan-

DECLARATION OF MARK COHEN – 4
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone:  216.566.9700
Fax:  216.566.9711

**A209**

style sleeves", meaning that the sleeves are directly attached to the neckline. The design of the V2 Jersey included narrow panels of dazzle fabric that ran from below each arm opening to the bottom of the pet jersey, whereas the design of the Eagles Jersey included no such panels at all. The design of the V2 Jersey did not include any ornamental stitching, whereas the design of the Eagles Jersey included ornamental stitching (appears as wide lines formed of white thread in the photos) that extended from the crew neck in the front below each sleeve and to the rear of the crew neck and also horizontally across the chest and rear shoulders of the Eagles Jersey. This ornamental stitching is well known to designers of ordinary skill in the art and can be referred to as serge stitching.

12.    In 2009, I invented several new designs for pet jerseys. One such design has been referred to in this litigation as the "V3 Jersey." "V3" stands for "Version 3", because the design of this pet jersey was a new design that replaced the V2 Jersey design previously purchased by Hunter from FiG. The photograph below depicts the front and back, respectively of a representative V3 Jersey.

V3 Jersey - Front

V3 Jersey - Back




DECLARATION OF MARK COHEN – 5
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

13. The V3 Jersey is a substantially different design than both the V2 Jersey and the Eagles Jersey. The material of the V3 Jersey is primarily of a mesh and interlock fabric. No dazzle fabric, which was used extensively in the V2 Jersey, was used in the V3 Jersey at all. The design of the V3 Jersey includes raglan-style sleeves beneath which narrow panels of interlock fabric separating front and rear mesh panels extend to the bottom of the jersey. In contrast, the design of the V2 Jersey included drop sleeves beneath which narrow panels of dazzle fabric separating front and rear mesh panels extended to the bottom of the V2 Jersey. And, the design of the Eagles Jersey included raglan-style sleeves, but no narrow panels of interlock fabric between mesh front panels and rear panels.

14. The design of the V3 Jersey also includes ornamental serge stitching extending from the neckline underneath both sleeves, horizontally across the chest and back, and vertically on the back only between the narrow interlock fabric panel and the rear mesh panel. This differs from the V2 Jersey which did not include any ornamental serge stitching at all, and the Eagles Jersey which did not include the vertical serge stitching on the back only. The ornamental serge stitching in the V3 Jersey is decorative and is provided over the stitching that binds together the respective mesh and interlock fabric panels that form the V3 Jersey.

15. Hunter began purchasing the V3 Jersey from FiG sometime after September 8, 2009. It is my understanding that the V3 Jersey was identified by Hunter as a new design. Sales of the V3 Jersey supplied by FiG to Hunter increased appreciably by comparison to the V2 Jersey.

16. On September 7, 2010, I communicated to one of Hunter's principals, John T. Fitzgerald ("Fitzgerald"), that I intended to file patent applications on my designs for the pet jerseys that FiG was supplying to Hunter, including the V3 Jersey. On September 7, 2010, Fitzgerald (with a copy to the other principal of Hunter, Dan Campbell) sent me an e-mail referenced my intention to file the patent applications. See Exhibit A attached hereto.

17. On September 8, 2010, I filed a design patent application on the design of the V3 Jersey. The application was assigned U.S. Ser. No. 29/369,427, and included drawings that were prepared based on the V3 Jersey and were intended to match, exactly, the V3 Jersey FiG

DECLARATION OF MARK COHEN – 6
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A211**

was supplying to Hunter. Regarding the drawings, and in light of the specification, any ordinary designer having such skill would readily appreciate that the areas in the drawings that are shown with grid lines indicate that such areas would be constructed of mesh fabric, and that the panels shown without such grid lines would be constructed of interlock fabric.

18. On that same date, I also filed a design patent application on a design for a baseball jersey for a dog, which FiG was also supplying to Hunter at the time. The application was assigned U.S. Ser. No. 29/369,425, and included drawings that were prepared based on the baseball jerseys for a pet and were intended to match, exactly, the baseball jerseys for a pet that FiG was supplying to Hunter.

19. In December of 2010, I had a telephone conversation with Hunter's president, Thomas Neth, which included a discussion of my design patent applications. The telephone conversation occurred because Hunter was slow in paying invoices for products that had been ordered by Hunter and then shipped by FiG to Hunter. During the telephone conversation, I stated my intention to cease doing business with Hunter due to the slow pays and other issues. Notwithstanding the telephone conversation in December of 2010, FiG continued to ship pet jerseys to Hunter for several months thereafter.

20. At some point thereafter, and without my knowledge or consent, Hunter contacted two companies requesting that they manufacture the V3 Jersey I had designed and supplied to Hunter through FiG. It is my understanding that Hunter supplied each company an actual sample of a V3 Jersey that had been produced by FIG and supplied to Hunter. Hunter sent the sample V3 Jersey despite having been informed of the patent applications covering the pet jerseys I had designed. Ultimately, Hunter engaged Defendant, CDI International, Inc., to manufacture and supply V3 Jerseys to Hunter.

21. On March 15, 2011, U.S. Pat. No. D 634,487 (hereinafter "the '487 Patent") issued for the design of a Baseball Jersey for a Dog. On that same date, U.S. Pat. No. D634,488 (hereinafter "the '488 Patent") issued for the design of a Football Jersey for a Dog.

22. I assigned both patents to MRC, which granted a license to FiG to produce V3 Jerseys and baseball jerseys for a dog as covered by the patents, reserving to MRC all rights to enforce the patents and to retain damages for infringement thereof. Thereafter, FiG

DECLARATION OF MARK COHEN – 7
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

began marking jerseys covered by the patents as required under 35 U.S.C. §282. For example, V3 Jerseys FiG supplied to Hunter included a label that identified the product as patented and specifically identified the patent number. A photograph of such a label in a V3 Jersey supplied by FiG to Hunter is shown below.

FiG V3 Jersey - Label



23. After issuance of the '487 Patent and the '488 Patent, Hunter continued to buy V3 Jerseys from FiG. No baseball jerseys for a dog were purchased by Hunter from FiG after the issuance of the '487 Patent. Thus, there were no baseball jerseys for a dog in the market that bore a label with the patent number at the time the present litigation commenced. It is my understanding that Hunter, without my knowledge or consent, was also buying V3 Jerseys and baseball jerseys for a dog from CDI.

24. CDI copied my design of the V3 Jersey so well that it is nearly impossible to differentiate a V3 Jersey supplied by FiG to Hunter from a V3 Jersey supplied by CDI to Hunter.

25. By December of 2011, FiG had stopped shipping V3 Jerseys to Hunter. MRC thereafter granted another license under the '488 Patent to an entity that is not wholly owned by

DECLARATION OF MARK COHEN – 8
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A213**

MRC or its principals. I expected that many of the V3 Jerseys and perhaps some of the baseball jerseys for a dog that FiG had supplied to Hunter were likely still in Hunter's inventory, and would continue to appear on the shelves of retailers for some time. Several months after FiG stopped shipping V3 Jerseys and baseball jerseys for a dog to Hunter, I began to suspect, but could not tell for certain, that some of the V3 Jersey products appearing in the marketplace were being supplied to Hunter by someone other than FiG (i.e., more than just remaining inventory of product previously shipped by FiG to Hunter). I eventually found a product with a manufacturing date later than the issue date of the '488 Patent, which did not bear the design patent number. I thereafter determined that CDI was supplying V3 Jersey to Hunter. A copy of a V3 Jersey manufactured by CDI is shown below.

CDI V3 Jersey - Front



CDI V3 Jersey - Back



26.     The V3 Jersey manufactured by CDI would appear substantially the same as the drawing figures accompanying the '488 Patent (see Figs. 2 and 4 below) to an ordinary observer. Further, as shown in the table below, the V3 Jersey manufactured by CDI on behalf of

DECLARATION OF MARK COHEN – 9
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A214**

Hunter and offered by Hunter for sale appears substantially the same to an ordinary observer as the pet jersey manufactured for FiG

The '488 Patent - Fig. 2 (Front)

The '488 Patent - Fig. 4 (Back)







| PATENTED DESIGN | PLAINTIFF'S PRODUCT | DEFENDANTS' PRODUCT |
|---|---|---|

DECLARATION OF MARK COHEN – 10
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A215**

29. The photograph above appears to be the same as the photograph that appears in the Sporty K9 brochure attached as Exhibit 1 to the Declaration of Sharon Kelly. The Sporty K9 brochure states that the Sporty K9 Jersey (football version) is "Made of polyester fabric and mesh, rib trim and v-neck." The photograph above shows that the polyester fabric has a shiny appearance, from which as a designer I can reasonably draw an inference that it is made of dazzle fabric, and not interlock fabric. In any event, no information was provided about the fabric used in the Sporty K9 Jersey beyond that it is made of polyester, which is consistent with dazzle fabric.

30. As a designer skilled in the art, the following drawing composite identifies differences between the claimed design and the V2 Jersey. Red arrows have been added to the figures showing the front and back of the design claimed in the '488 Patent. Arrow "A" points to an interlock fabric panel that is present in the claimed design, which is not present in the V2 Jersey. As noted above, the panel in the V2 Jersey is made of dazzle fabric, which provides a different ornamental appearance (it is shiny). Arrow "B" points to ornamental serge stitching, which appears on the front of the claimed design and which is not present in the V2 Jersey. Arrow "C" points to ornamental serge stitching, which appears on the rear of the claimed design and which is not present in the V2 Jersey. Arrow "D" points to the raglan-style sleeves in the claimed design, which are different than the drop sleeves in the V2 Jersey. In my opinion, the V2 Jersey clearly does not exhibit design characteristics of which are basically the same as the claimed design.

DECLARATION OF MARK COHEN – 12
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A217**



The '488 Patent - Fig. 2 (Front)



The '488 Patent - Fig. 4 (Back)



V2 Jersey - Front



V2 Jersey - Back

31.     As a designer skilled in the art, the following drawing composite identifies differences between the claimed design and the Eagles Jersey.

DECLARATION OF MARK COHEN – 13
CIVIL ACTION NO: 1:12-CV-00684

RANKIN, HILL & CLARK LLP
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A218**

The '488 Patent - Fig. 2 (Front)



The '488 Patent - Fig. 4 (Back)



Eagles Jersey - Front



Eagles Jersey - Back



32.    Again, red arrows have been added to the figures showing the front and back of the design claimed in the '488 Patent.  Arrow "A" points to an interlock fabric panel that is present in the claimed design, which is not present in the Eagles Jersey.  Arrow "B" points to a V-neck collar, which is present in the claimed design and which is not present in the Eagles Jersey.  The design of the Eagles Jersey features a crew neck.  Arrow "C"

DECLARATION OF MARK COHEN – 14
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone:  216.566.9700
Fax:  216.566.9711

**A219**

points to a vertical line of ornamental serge stitching, which appears on the rear of the claimed design and which is not present in the Eagles Jersey. In my opinion, the Eagles Jersey clearly does not exhibit design characteristics of which are basically the same as the claimed design.

33. As a designer skilled in the art, the following drawing composite identifies differences between the claimed design and the Sporty K9 Jersey:






34. Again, red arrows have been added to the figures showing the front and back of the design claimed in the '488 Patent. Arrow "A" points to an interlock fabric panel that is

RANKIN, HILL & CLARK LLP
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A220**

present in the claimed design, which is not present in the Sporty K9 Jersey.  As noted above, the panel in the Sporty K9 Jersey appears to be made of dazzle fabric, which provides a different ornamental appearance (it is shiny).  Arrow "B" points to ornamental serge stitching, which appears on the front of the claimed design and which is not present in the Sporty K9 Jersey.  Arrow "C" points to ornamental serge stitching, which appears on the rear of the claimed design and which is not present in the Sporty K9 Jersey.  Arrow "D" points to the raglan-style sleeves in the claimed design, which are different than the drop sleeves in the Sporty K9 Jersey.  In my opinion, the Sporty K9 Jersey clearly does not exhibit design characteristics of which are basically the same as the claimed design.

35.   On October 17, 2011, I filed an application for a design patent on a hockey jersey for a dog.  The prosecution history and identifying information for the hockey jersey for a dog have been produced to Defendants and is attached hereto as Exhibit B.  Figures 2 and 4 of the hockey jersey for a dog patent application, as originally submitted, are reproduced below (replacement drawing figures were subsequently submitted in that application to correct errors in other drawing figures).

Hockey Jersey (front)

Hockey Jersey (rear)



FIGURE 2



FIGURE 4

DECLARATION OF MARK COHEN – 16
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A221**

36.  I identified the V2 Jersey (in the form of pages from the Hunter catalog depicting the same and a designer specification sheet), the V3 Jersey (in the form of the '488 Patent), the Eagles Jersey (in the form of the same photographs as presented in this litigation) and other known prior art to the U.S. Patent Office in Information Disclosure Statements. The U.S. Patent Examiner issued a Notice of Allowance in the hockey jersey for a dog design patent application on November 15, 2012. The U.S. Patent Examiner did not assert that the design of a hockey jersey for a dog as shown in the above drawing figures was obvious in view of the V2 Jersey, the Eagles Jersey and the design for a football jersey for a dog as shown and described in the '488 Patent.

37.  Exhibit C attached hereto consists of selected copies of prior art patent references cited by the Examiner during prosecution of the design patent application for a hockey jersey for a dog. One can take notice of the similarities between patented designs and the subtle differences therebetween, which is evidence that seemingly minor design differences are regarded as engendering patentable designs in this particular field of art. The differences are not generally regarded as being "trivial" differences, as suggested by Defendants.

38.  Regarding the baseball jersey for a dog as shown and claimed in the '487 Patent, Defendants again provided very little information regarding the Sporty K9 Jersey (baseball version) in their joint motion for summary judgment. For the benefit of the Court, I obtained and enlarged photograph of a Sporty K9 Jersey (baseball version) from the company's website, which is reproduced below.

DECLARATION OF MARK COHEN – 17
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A222**



Sporty K9 (Back)

(Front)

39. The photograph above appears to be the same as the photograph provided in the Sporty K9 brochure attached as Exhibit 1 to the Declaration of Sharon Kelly. The Sporty K9 brochure states that the Sporty K9 Jersey (baseball version) is "Made of polyester fabric rib trim v-neck and side panels with faux t-shirt, velcro [®] closure and button trim".

40. Again, I had created an image that compares the patented design as claimed in the '487 Patent with the Sporty K9 Jersey (baseball version) as shown above. I had added red arrows to the figures showing the front and back of the design claimed in the '487 Patent. Arrow "A" points to v-neck collar that is present in the claimed design, which is very different than the collar assembly in the Sporty K9 Jersey (baseball version), which appears to consist of a faux t-shirt portion having a crew neck that underlies a second collarless portion. Arrow "B" points to the mesh fabric from which the design claimed in the '487 Patent is made, which is different than the polyester fabric of the Sporty K9 Jersey (baseball version). Arrow "C" points to the comparatively wide difference between the length of the front of the jersey as compared to the length of the rear of the jersey in the design claimed in the '487 Patent, which is different than the comparatively

DECLARATION OF MARK COHEN – 18
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A223**

narrow difference in such lengths in the Sporty K9 Jersey (baseball version)). The Sporty K9 Jersey (baseball version) is thus much more "tubular" when donned by a dog as compared to the design shown in the '487 Patent. Finally, Arrow "D" points to the faux t-shirt portion of the Sporty K9 Jersey (baseball version), which is not present at all in the design claimed in the '487 Patent.




The '487 Patent (Front)

The '487 Patent (Back)



Sporty K9 (Back)

(Front)

DECLARATION OF MARK COHEN – 19
CIVIL ACTION NO: 1:12-CV-00684

**RANKIN, HILL & CLARK LLP**
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

**A224**

41. In my opinion as a designer having ordinary skill in the art of designing pet jerseys, no designer having such ordinary skill would have found the designs claimed in either the '488 Patent or the '487 Patent as obvious in view of the prior art references cited by the Defendants in their joint motion for summary judgment.

FURTHER AFFIANT SAIETH NOT.

_____
MARK COHEN

Dated: _11·26·12_____

DECLARATION OF MARK COHEN – 20
CIVIL ACTION NO: 1:12-CV-00684

RANKIN, HILL & CLARK LLP
38210 Glenn Avenue
Willoughby, OH 44094
Phone: 216.566.9700
Fax: 216.566.9711

A225

**From:** John T. Fitzgerald [jfitzgerald@argo-partners.com]
**Sent:** Tuesday, September 07, 2010 12:09 PM
**To:** mcohen@fig-games.com
**Cc:** Dan Campbell
**Subject:** provisional patents

Mark,

I wanted to follow up with you regarding your mention of provisional patents. I don't really want to be adversarial here, but I can tell you that if you continue to go this route, we will be forced to dispute the application. Presumably many of these items would have been developed in conjunction. I don't want to have to get our intellectual property attorney involved, so I thought it best to talk this out with you.

Let me know what your plans are along these lines and what items we're talking about.

JT

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 9.0.851 / Virus Database: 271.1.1/3115 - Release Date: 09/07/10 02:34:00



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 14318 | 7590 | 11/15/2012 |

Rankin, Hill & Clark LLP
23755 Lorain Road, Suite 200
North Olmsted, OH 44070

| EXAMINER |
|---|
| LEE, SUSAN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2917 | |

DATE MAILED: 11/15/2012

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/404,184 | 10/17/2011 | Mark Cohen | MRC-35246 | 1026 |

TITLE OF INVENTION: HOCKEY JERSEY FOR A DOG

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $505 | $0 | $0 | $505 | 02/15/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

## HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

**Complete and send this form, together with applicable fee(s), to: <u>Mail</u>**

**Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**

**or <u>Fax</u>  (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

14318          7590          11/15/2012

Rankin, Hill & Clark LLP
23755 Lorain Road, Suite 200
North Olmsted, OH 44070

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/404,184 | 10/17/2011 | Mark Cohen | MRC-35246 | 1026 |

TITLE OF INVENTION: HOCKEY JERSEY FOR A DOG

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $505 | $0 | $0 | $505 | 02/15/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| LEE, SUSAN M | 2917 | D30-145000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____  Date _____

Typed or printed name _____  Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**A230**

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/404,184 | 10/17/2011 | Mark Cohen | MRC-35246 | 1026 |

14318          7590          11/15/2012

Rankin, Hill & Clark LLP
23755 Lorain Road, Suite 200
North Olmsted, OH 44070

| EXAMINER |
|---|
| LEE, SUSAN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2917 | |

DATE MAILED: 11/15/2012

## Determination of Patent Term Extension or Adjustment under 35 U.S.C. 154 (b)

Design patents have a term measured from the issue date of the patent and the term remains the same length regardless of the time that the application for the design patent was pending. Since the above-identified application is an application for a design patent, the patent is not eligible for Patent Term Extension or Adjustment under 35 U.S.C. 154(b).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| ***Notice of Allowability For A Design Application*** | **Application No.** 29/404,184 | **Applicant(s)** COHEN, MARK | |
|---|---|---|---|
| | **Examiner** SUSAN M. LEE | **Art Unit** 2917 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *10/19/2012 reply w/amendment*.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____;
the restriction requirement and election have been incorporated into this action.

3. ☒ The claim is allowed.

4. ☒ Acceptable drawings:

    (a) ☒ The drawings filed on *19 October 2012* are accepted by the Examiner.

    (b) ☐ Drawing Figures _____ filed on _____ and drawing Figures _____ filed on _____ are accepted by the Examiner.

5. ☐ The claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f) is acknowledged.

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

       * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

    Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

| **Attachment(s)** | |
|---|---|
| 1. ☒ Notice of References Cited (PTO-892) | 4. ☒ Examiner's Amendment/Comment |
| 2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Receipt Date _____ | 5. ☐ Examiner's Statement of Reasons for Allowance |
| 3. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ . | 6. ☐ Other _____. |

**NOTE:**

Application/Control Number: 29/404,184                                      Page 2
Art Unit: 2917

**Examiner's Amendment**

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Specification

For preferred form, the Fig. 1 description is here amended to read as follows:

>> Fig. 1 is a side view of a Hockey Jersey for a Dog, shown in use; <<

Any inquiry concerning this communication or earlier communications from the examiner may be directed to Susan M. Lee whose telephone number is 5712726027. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

/SUSAN MOON LEE/
PRIMARY EXAMINER

**A234**

Application No.: 29/404,184
Amendment Dated: October 19, 2012
Reply to Office action of: August 2, 2012

## REMARKS

The Office's communication dated August 2, 2012 has been received and carefully considered. In conformance with the applicable statutory requirements, this paper constitutes a complete reply and/or a bona fide attempt to advance the application to allowance. Reexamination and/or reconsideration of the application as amended are respectfully requested.

The claim is rejected under 35 U.S.C. § 112, first and second paragraphs, as the claimed invention is not described in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same. The Office further states that the claim is indefinite and nonenabling because the appearance of the pet hockey jersey is depicted differently amongst the views and the proportion of the pet hockey jersey are not corroborating amongst the view.

Applicant submits that with the replacement drawings sheets for Figs. 1-4, the claimed invention is definite and enabling so as to particularly point out and distinctly claim the subject matter which Applicant regards as the invention. Applicant submits that no new matter is added with the replacement drawing sheets for Figs. 1-4, and requests that the §112, first and second paragraphs, rejections against the claim be withdrawn.

In light of the foregoing, it is respectfully submitted that the present application is in a condition for allowance and notice to that effect is hereby requested. If it is determined that the application is not in a condition for allowance, the Examiner is invited to initiate a telephone interview with the undersigned attorney to expedite prosecution of the present application.

If there are any additional fees resulting from this communication, please charge same to our Deposit Account No. 18-0160, our Order No. MRC-33332.

Respectfully submitted,

RANKIN, HILL & CLARK LLP

By   /Robert A. Sidoti/
        Robert A. Sidoti, Reg. No. 48416

38210 Glenn Avenue
Willoughby, Ohio  44094-7808
(216) 566-9700



FIGURE 1



FIGURE 2



FIGURE 3



FIGURE 4

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 14029549 |
| **Application Number:** | 29404184 |
| **International Application Number:** | |
| **Confirmation Number:** | 1026 |
| **Title of Invention:** | HOCKEY JERSEY FOR A DOG |
| **First Named Inventor/Applicant Name:** | Mark Cohen |
| **Customer Number:** | 14318 |
| **Filer:** | Robert A. Sidoti/Diana Palmer |
| **Filer Authorized By:** | Robert A. Sidoti |
| **Attorney Docket Number:** | MRC-35246 |
| **Receipt Date:** | 19-OCT-2012 |
| **Filing Date:** | 17-OCT-2011 |
| **Time Stamp:** | 14:35:43 |
| **Application Type:** | Design |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 35246AmendmentA.pdf | 99749 <br> 3e233aeb5d102l09a6e50a9561a8b12b030 43c79c | yes | 3 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Applicant Arguments/Remarks Made in an Amendment | 2 | 3 |

**Warnings:**

**Information:**

| 2 | Drawings-only black and white line drawings | 35246figures.pdf | 40031<br>4e978cc964ad0cfa1bff7b99d037a2a06438c227 | no | 4 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 139780 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/404,184 | 10/17/2011 | Mark Cohen | MRC-35246 | 1026 |

14318    7590    08/02/2012

Rankin, Hill & Clark LLP
23755 Lorain Road, Suite 200
North Olmsted, OH 44070

| EXAMINER |
|---|
| LEE, SUSAN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2917 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/02/2012 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

sidoti@rankinhill.com
shea@rankinhill.com
dragony@rankinhill.com

| | **Application No.** | **Applicant(s)** |
|---|---|---|
| | 29/404,184 | COHEN, MARK |
| ***Office Action Summary*** | **Examiner** | **Art Unit** |
| | SUSAN M. LEE | 2917 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____.

2a)☐ This action is **FINAL**.  2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) *the single design claim* is/are pending in the application.

  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) *the single design claim* is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>17 October 2011</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

  a)☐ All  b)☐ Some * c)☐ None of:

  1.☐ Certified copies of the priority documents have been received.

  2.☐ Certified copies of the priority documents have been received in Application No. _____.

  3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

  * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO/SB/08)
  Paper No(s)/Mail Date <u>3/16/12,5/7/12</u>

4)☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 29/404,184 Page 2
Art Unit: 2917

Detailed Office Action

**Claim Rejections - 35 USC § 112**

The claim is rejected under 35 U.S.C. 112, first and second paragraphs, as the claimed invention is not described in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same, and in turn, fails to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The claim is indefinite and nonenabling due to a lack of disclosure of the invention sufficient enough to facilitate a clear understanding of the appearance of the design due to the following ambiguities in the drawings:

1. The appearance of the invention is quite different when comparing what is shown in Fig. 1 with Figs. 3 and 4. There's an extra border line running along the bottom hem of the jersey in Fig. 1 which is not present in Fig. 3. There's also decorative stitching depicted in Figs. 3 and 4 which is not at all present in the Fig. 1 view:



2. The proportions of the jersey are not corroborating amongst the views. In Fig. 1, for example, the length of the armsleeves and the length of the bottom bordered hem, as well as the length along the spine from neck to tail are all longer than in the other views. The proportions of the border trim is also different from Fig. 1 to Fig. 3 for example:

Application/Control Number: 29/404,184                                    Page 3
Art Unit: 2917



For the reasons cited above, it is indeterminable what the actual appearance of the present

invention is. Therefore, the present claim is non-enabling and is rejected.

**The claim is rejected for the reasons set forth above.**

When making any attempt at amended or new drawings in reply to an office action, **care must be**

**exercised to avoid introduction of anything which could be construed to be new matter** prohibited by 35

U.S.C. 132 and 37 CFR 1.121. Any amended replacement drawing sheet should include all of the figures

appearing on the immediate prior version of the sheet, even if only one figure is being amended. The

figure or figure number of an amended drawing should not be labeled as "amended." Each drawing

sheet submitted after the filing date of an application must be labeled in the top margin as either

"Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d).

/SUSAN MOON LEE/
PRIMARY EXAMINER

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 29404184 |
| | Filing Date | 2011-10-17 |
| | First Named Inventor | Mark Cohen |
| | Art Unit | 2913 |
| | Examiner Name | N/A |
| | Attorney Docket Number | MRC-35246 |

### U.S.PATENTS — Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button. **Add**

### U.S.PATENT APPLICATION PUBLICATIONS — Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. **Add**

### FOREIGN PATENT DOCUMENTS — Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button **Add**

### NON-PATENT LITERATURE DOCUMENTS — Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.M.L./
A285

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 29404184 |
|---|---|---|
| | Filing Date | 2011-10-17 |
| | First Named Inventor | Mark Cohen |
| | Art Unit | 2913 |
| | Examiner Name | N/A |
| | Attorney Docket Number | MRC-35246 |

| | 1 | Apparel specification sheet dated December 14, 2007. | ☐ |
|---|---|---|---|
| | 2 | Copy of Hunter PetGear catalog disseminated prior to 2007. | ☐ |
| | 3 | Photographs (front and back) of an embodiment of a pet jersey with a manufacturing date of July 30, 2009. | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button  Add

| EXAMINER SIGNATURE | | | |
|---|---|---|---|
| Examiner Signature | /Susan Moon Lee/ | Date Considered | 07/29/2012 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.M.L

Doc code: IDS

Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 29404184 |
| Filing Date | 2011-10-17 |
| First Named Inventor | Mark Cohen |
| Art Unit | 2913 |
| Examiner Name | N/A |
| Attorney Docket Number | MRC-35246 |

## U.S.PATENTS

Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 1437255 | | 1922-11-28 | Mallinson | |
| | 2 | 1595834 | | 1926-08-10 | Griffiths | |
| | 3 | 2103109 | | 1937-12-21 | De Mar | |
| | 4 | 2273706 | | 1942-02-17 | Hafner | |
| | 5 | 2400781 | | 1946-05-21 | Priour | |
| | 6 | 2417803 | | 1947-03-25 | De Mar | |
| | 7 | 3141443 | | 1964-07-21 | Huey | |
| | 8 | D228926 | | 1973-10-30 | Bennett | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.M.L./

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT<br>( **Not for submission under 37 CFR 1.99**) | | Application Number | 29404184 |
| --- | --- | --- | --- |
| | | Filing Date | 2011-10-17 |
| | | First Named Inventor | Mark Cohen |
| | | Art Unit | 2913 |
| | | Examiner Name | N/A |
| | | Attorney Docket Number | MRC-35246 |

| | 9 | 3792687 | | 1974-02-19 | Ehrman | |
| --- | --- | --- | --- | --- | --- | --- |
| | 10 | 4095562 | | 1978-06-20 | Graham | |
| | 11 | 4290386 | | 1981-09-22 | Eiriksson | |
| | 12 | 4355600 | | 1982-10-26 | Zielinski | |
| | 13 | 4527991 | | 1985-07-09 | Msarsa | |
| | 14 | 4577591 | | 1986-03-25 | Wesseldine | |
| | 15 | 4813949 | | 1989-03-21 | O'Rourke | |
| | 16 | 4996949 | | 1991-03-05 | Wunderman et al. | |
| | 17 | 5005525 | | 1991-04-09 | Stanton | |
| | 18 | 5146874 | | 1992-09-15 | Vidal | |
| | 19 | D334252 | | 1993-03-23 | Stubbs | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.M.L

| | | | | | |
|---|---|---|---|---|---|
| **Application Number** | | | 29404184 | | |
| **Filing Date** | | | 2011-10-17 | | |
| **First Named Inventor** | | | Mark Cohen | | |
| **Art Unit** | | | 2913 | | |
| **Examiner Name** | | | N/A | | |
| **Attorney Docket Number** | | | MRC-35246 | | |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( **Not for submission under 37 CFR 1.99**)

| | | | | | |
|---|---|---|---|---|---|
| 20 | 5226386 | | 1993-07-13 | Thoma | |
| 21 | 5234421 | | 1993-08-10 | Lowman | |
| 22 | 5359963 | | 1994-11-01 | Jesse et al. | |
| 23 | D363572 | | 1995-10-24 | Obenchain | |
| 24 | D368338 | | 1996-03-26 | Levengood | |
| 25 | 5537954 | | 1996-07-23 | Beeghly et al. | |
| 26 | 5555847 | | 1996-09-17 | Kelly | |
| 27 | 5632235 | | 1997-05-27 | Larsen et al. | |
| 28 | 5662640 | | 1997-09-02 | Daniels | |
| 29 | 5887772 | | 1999-03-30 | Dooley | |
| 30 | D406410 | | 1999-03-02 | Pasqua | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.M.L

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) |
|---|---|

| Application Number | | 29404184 |
|---|---|---|
| Filing Date | | 2011-10-17 |
| First Named Inventor | Mark Cohen | |
| Art Unit | | 2913 |
| Examiner Name | N/A | |
| Attorney Docket Number | | MRC-35246 |

| | 31 | 5941199 | | 1999-08-24 | Tamura | |
|---|---|---|---|---|---|---|
| | 32 | 5954015 | | 1999-09-21 | Ohta | |
| | 33 | 6024055 | | 2000-02-15 | Jesse Sr. et al. | |
| | 34 | D427734 | | 2000-07-04 | Balzarini | |
| | 35 | D429390 | | 2000-08-08 | Grady et al. | |
| | 36 | D429391 | | 2000-08-08 | Grady et al. | |
| | 37 | 6142105 | | 2000-11-07 | McKnight | |
| | 38 | 6234117 | | 2001-05-22 | Spatt | |
| | 39 | 6267083 | | 2001-07-31 | Chimienti | |
| | 40 | 6368313 | | 2002-04-09 | Howard | |
| | 41 | 6481383 | | 2002-11-19 | Ross et al. | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.M.L
A260

| | | | Application Number | 29404184 |
|---|---|---|---|---|
| | | | Filing Date | 2011-10-17 |
| | | | First Named Inventor | Mark Cohen |
| | | | Art Unit | 2913 |
| | | | Examiner Name | N/A |
| | | | Attorney Docket Number | MRC-35246 |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( **Not for submission under 37 CFR 1.99)**

| | 42 | 6557497 | | 2003-05-06 | Milligan | |
|---|---|---|---|---|---|---|
| | 43 | D480842 | | 2003-10-14 | Grodecki | |
| | 44 | 6651649 | | 2003-11-25 | Spencer | |
| | 45 | 6675745 | | 2004-01-13 | Brewington | |
| | 46 | 6827044 | | 2004-12-07 | Lobanoff et al. | |
| | 47 | 6837191 | | 2005-01-04 | Brewington | |
| | 48 | 6895901 | | 2005-05-24 | Howard | |
| | 49 | 6935278 | | 2005-08-30 | Brewington | |
| | 50 | D634487 | | 2011-03-15 | Cohen | |
| | 51 | D634488 | | 2011-03-15 | Cohen | |
| | 52 | D634901 | | 2011-03-22 | Cohen | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.M.L.

A260

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99**)

| | |
|---|---|
| Application Number | 29404184 |
| Filing Date | 2011-10-17 |
| First Named Inventor | Mark Cohen |
| Art Unit | 2913 |
| Examiner Name | N/A |
| Attorney Docket Number | MRC-35246 |

If you wish to add additional U.S. Patent citation information please click the Add button. **Add**     Remove

## U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code¹ | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20040031448 | | 2004-02-19 | Trepanier | |
| | 2 | 20050072376 | | 2005-04-07 | Kerrigan | |
| | 3 | 20050217609 | | 2005-10-06 | Dorton et al. | |

If you wish to add additional U.S. Published Application citation information please click the Add button. **Add**     Remove

## FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number³ | Country Code² i | Kind Code⁴ | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T⁵ |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button **Add**     Remove

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T⁵ |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button **Add**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.M.L

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 29404184 |
|---|---|---|
| | Filing Date | 2011-10-17 |
| | First Named Inventor | Mark Cohen |
| | Art Unit | 2913 |
| | Examiner Name | N/A |
| | Attorney Docket Number | MRC-35246 |

| EXAMINER SIGNATURE | | | |
|---|---|---|---|
| Examiner Signature | /Susan Moon Lee/ | Date Considered | 07/29/2012 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.M.L

| To: | sidoti@rankinhill.com,shea@rankinhill.com,dragony@rankinhill.com |
|---|---|
| **From:** | PAIR_eOfficeAction@uspto.gov |
| **Cc:** | PAIR_eOfficeAction@uspto.gov |
| **Subject:** | Private PAIR Correspondence Notification for Customer Number 14318 |

Aug 02, 2012 05:22:49 AM

Dear PAIR Customer:

Rankin, Hill & Clark LLP
23755 Lorain Road, Suite 200
North Olmsted, OH 44070
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 14318 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 29404184 | CTNF | 08/02/2012 | MRC-35246 |
| | CTNF | 08/02/2012 | MRC-35246 |
| | 1449 | 08/02/2012 | MRC-35246 |
| | 1449 | 08/02/2012 | MRC-35246 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | 29404184 |
| Filing Date | | 2011-10-17 |
| First Named Inventor | | Mark Cohen |
| Art Unit | | 2913 |
| Examiner Name | N/A | |
| Attorney Docket Number | | MRC-35246 |

**U.S.PATENTS**   Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.   Add

**U.S.PATENT APPLICATION PUBLICATIONS**   Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.   Add

**FOREIGN PATENT DOCUMENTS**   Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button   Add

**NON-PATENT LITERATURE DOCUMENTS**   Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

<table>
<tr><td></td><td>Application Number</td><td>29404184</td></tr>
<tr><td></td><td>Filing Date</td><td>2011-10-17</td></tr>
<tr><td></td><td>First Named Inventor</td><td>Mark Cohen</td></tr>
<tr><td></td><td>Art Unit</td><td>2913</td></tr>
<tr><td></td><td>Examiner Name</td><td>N/A</td></tr>
<tr><td></td><td>Attorney Docket Number</td><td>MRC-35246</td></tr>
</table>

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | | | |
|---|---|---|---|
| 1 | Apparel specification sheet dated December 14, 2007. | | ☐ |
| 2 | Copy of Hunter PetGear catalog disseminated prior to 2007. | | ☐ |
| 3 | Photographs (front and back) of an embodiment of a pet jersey with a manufacturing date of July 30, 2009. | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button **Add**

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 29404184 |
| | Filing Date | 2011-10-17 |
| | First Named Inventor | Mark Cohen |
| | Art Unit | 2913 |
| | Examiner Name | N/A |
| | Attorney Docket Number | MRC-35246 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ None

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Robert A. Sidoti/ | Date (YYYY-MM-DD) | 2012-05-07 |
| Name/Print | Robert A. Sidoti | Registration Number | 48416 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**A268**

Order No.:

last modify: **Dec.14, 2007**

style no.: **ik-d0604**

Unit: **CM**

### V2 Pet Jessy

| | measurement description | | S | M | L | XL |
|---|---|---|---|---|---|---|
| A. | BODY LENGTH | INCL. RIB | 12 | 15 | 20 | 26 |
| B. | 1/2 CHEST | | 8 | 10 | 13 | 16 |
| C. | 1/2 BOTTOM | | 8 | 10 | 13 | 16 |
| D. | SHOULDER WIDTH | | 7 | 9 | 11 | 13 |
| E. | UPPER BACK WIDTH | | 6 | 8 | 10 | 12 |
| F. | SLEEVE LENGTH at UPPER BACK | NOT incl. RIB | 3 | 4 | 4 | 4 |
| G. | SLEEVE LENGTH | both Upper and down | 3 | 4 | 4 | 4 |
| H. | SLEEVE WIDTH | RELAX | 3 | 4 | 5 | 6 |
| Ha. | SLEEVE WIDTH | EXTENDED | 6 | 7 | 7 | 9 |
| | ARMHOLE WIDTH | Straight , P to P | 5 | 6 | 7 | 7 |
| J. | SLEEVE LENGTH at FRONT UPPER CHEST | NOT incl. RIB | 2 | 2 | 2 | 3 |
| K. | BACK NECK WIDTH | Point to Point | 5 | 6 | 7 | 9 |
| L. | FRONT NECK DEPTH | | 2 | 3 | 3 | 4 |
| M. | UPPER CHEST WIDTH | | 5 | 6 | 7 | 9 |
| N. | | | 1 | 1 | 1 | 1 |
| O. | | | 1 | 1 | 1 | 1 |
| P. | BACK NECK DEPTH | | 2 | 3 | 3 | 4 |
| | PATCH HEIGHT AT UPPER FRONT AND BACK | | 1 | 1 | 1 | 1 |
| | PATCH WIDTH AT UPPER | | 4 | 4 | 5 | 6 |
| | PATCH WIDTH AT RIB | | 1 | 2 | 2 | 2 |

pls kindly note: the following sketch is for measuring purpose only







A 270

Case: 1:09-cv-08487 Document 45 Filed: 01/09/12 Page 1 of 1 PageID #: 575



# PET JERSEYS



## NFC TEAMS

| SOUTH | NORTH | EAST | WEST |
|-------|-------|------|------|









**FALCONS** **PACKERS** **REDSKINS** **RAMS**

**PANTHERS** **LIONS** **EAGLES** **SEAHAWKS**

**BUCCANEERS** **BEARS** **GIANTS** **49ERS**

**SAINTS** **VIKINGS** **COWBOYS** **CARDINALS**

| | Size | Length | Girth |
|---|---|---|---|
| #4251 | Small | 12-16 | 12-16 |
| #4252 | Medium | 16-20 | 16-19 |
| #4253 | Large | 20-26 | 19-21 |
| #4254 | Extra Large | 26-30 | 21-22 |



**1** Measure The Length
Measure the top of the back from the base of the neck to the base of the tail.

**2** Measure The Girth
Measure around the ribcage, behind the front legs.

**3** Measure The Neck
Measure around the neck.

A271

NEW!

# PET JERSEYS

NFL

## AFC TEAMS

| SOUTH | NORTH | EAST | WEST |
|-------|-------|------|------|

 TITANS

 RAVENS

 DOLPHINS

 RAIDERS

 COLTS

 STEELERS

 PATRIOTS

 CHARGERS

 JAGUARS

 BROWNS

 JETS

 CHIEFS

 TEXANS

 BENGALS

 BILLS

 BRONCOS

## FEATURES

- Available in all 32 NFL Teams
- Designed in full team colors with official team word mark.
- Features official team number font and primary logo embroidered patch.
- Constructed of breathable micro-mesh polyester.
- Stylish V-neck cut allows for a comfort fit.
- Available in Small, Medium, Large and Extra-Large sizes.
- Decorated in the USA.

A272



OFFICIALLY LICENSED · BY YOUR THE GAME? · PET PRODUCTS



**NEW!**

#4251 - Pet Jersey - Small
#4252 - Pet Jersey - Medium
#4253 - Pet Jersey - Large
#4254 - Pet Jersey - X Large
*Available in select teams.

**NEW!**

## PET BOWLS

#5930
32 oz. Stainless
Steel Pet Bowl
*Available in select teams.

**NEW!**

## RETRACTABLE LEADS

A273
#4071 - Retractable Leads



**PET CAPS**

HUNTER PetGear

Red Cap - #4210/Small, #4220/Large

Navy Cap - #4212/Small, #4222/Large

Royal Cap - #4213/Small, #4223/Large

Black Cap - #4211/Small, #4221/Large

Orange Cap - #4215/Small, #4225/Large

PREMIUM WEBBING

COMING IN 1st QUARTER 2007

#4016 - 6' Lead - Small (5/8" wide)
#4018 - 6' Lead - Large (1" wide)

*Design pending approval for
University of Nebraska

*Design pending approval for
Boston Bruins

#4019 - XX Small 5/8" Collar (7" - 8")
#4010 - X Small 5/8" Collar (8" - 12")
#4011 - Small 5/8" Collar (10" - 14")
#4012 - Medium 3/4" Collar (14" - 20")
#4013 - Large 1" Collar (18" - 26")
#4014 - X Large 1" Collar (26" - 32")

A274

# COLLARS



#4009 – XXS 5/8" Collar (7"-8")
#4000 – XS 5/8" Collar (8"-12")

#4001 – SM 5/8" Collar (10"-14")

#4002 – MD 3/4" Collar (14"-20")

#4003 – LG 1" Collar (18"-26")

#4004 – XL 1" Collar (26"-32")

## 6' LEADS

6' Leads - #4061-Small 5/8" wide), #4062-Medium (3/4" wide), #4063-Large (1" wide)

## ADJUSTABLE HARNESSES

#4080 – XSmall Harness (10"-14")
#4081 – Small Harness (14"-20")
#4082 – Medium Harness (20"-28")
#4083 – Large Harness (28"-36")

A275



**PET SETS**

#4150 - Small Pet Set
#4151 - Medium Pet Set
#4152 - Large Pet Set
    *Pet Set includes a Collar, Lead, and ID Tag.



#4151
Medium Collar
& Leash, I.D. Tag



**ID TAG**



#5077
Instant Pet
I.D. Tag









#1185 - 25 oz Pet Treat Container

A276

#3731 - Collar/Lead Rack

## SPORT BONEZ



**#5162**
**6" Non-Toxic Chew Toy/Sport Bonez**
*Available in select NFL & MLB Teams

## SPORT DISC



**#5160 - 12" Sport Disc**
*Available in select NFL Teams

# HUNTER®

HUNTER MFG., LLC
201 West London Avenue • Lexington, Kentucky 40508
859-254-7573 • 859-254-7614 (fax) 1-800-237-1869

In Canada:
Hunter Licensed Sports Distribution Ltd.
838 Magnetic Drive, North York, Ontario, Canada M3J 2C4
416-736-4573 • 416-736-1513 (fax) 1-800-925-8708

**www.huntermfg.com**
To place an order please call 1-800-237-1869 or fax 859-254-7614



Case 1:05-cv-01417-RCL Document 45 Filed 03/15/2010 Page 127 of 138



# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 12714921 |
| **Application Number:** | 29404184 |
| **International Application Number:** | |
| **Confirmation Number:** | 1026 |
| **Title of Invention:** | HOCKEY JERSEY FOR A DOG |
| **First Named Inventor/Applicant Name:** | Mark Cohen |
| **Customer Number:** | 14318 |
| **Filer:** | Robert A. Sidoti/Audrey Dragony |
| **Filer Authorized By:** | Robert A. Sidoti |
| **Attorney Docket Number:** | MRC-35246 |
| **Receipt Date:** | 07-MAY-2012 |
| **Filing Date:** | 17-OCT-2011 |
| **Time Stamp:** | 14:13:43 |
| **Application Type:** | Design |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Form (SB08) | IDSasFld.pdf | 614230 0239db5cf0557a63bc2ae4064c736da2ddd0057d | no | 4 |

**Warnings:**

**Information:**

A280

A U.S. Patent Number Citation or a U.S. Publication Number Citation is required in the Information Disclosure Statement (IDS) form for autoloading of data into USPTO systems. You may remove the form to add the required data in order to correct the Informational Message if you are citing U.S. References. If you chose not to include U.S. References, the image of the form will be processed and be made available within the Image File Wrapper (IFW) system. However, no data will be extracted from this form. Any additional data such as Foreign Patent Documents or Non Patent Literature will be manually reviewed and keyed into USPTO systems.

| 2 | Non Patent Literature | ApparelSpc.pdf | 67786 | no | 1 |
| | | | aed56dd04a2d0007fc3506df31db10bfb3fe0333 | | |

| Warnings: | | | | | |
| Information: | | | | | |

| 3 | Non Patent Literature | Catalog.pdf | 1730671 | no | 8 |
| | | | 31a506ce298bda2179faf51836dc4f62424a471d | | |

| Warnings: | | | | | |
| Information: | | | | | |

| 4 | Non Patent Literature | FrontPhotoX.pdf | 2212717 | no | 1 |
| | | | 3ca0b13e7f9d72c25edad8532b98525e9eaf7611 | | |

| Warnings: | | | | | |
| Information: | | | | | |

| 5 | Non Patent Literature | BackPhotoX.pdf | 354199 | no | 1 |
| | | | 647a19b166f73a5bcc2844db12acd7005b205511 | | |

| Warnings: | | | | | |
| Information: | | | | | |

| **Total Files Size (in bytes):** | 4979603 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | 29404184 |
| Filing Date | | 2011-10-17 |
| First Named Inventor | | Mark Cohen |
| Art Unit | | 2913 |
| Examiner Name | N/A | |
| Attorney Docket Number | | MRC-35246 |

**U.S.PATENTS**                                                                    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 1437255 | | 1922-11-28 | Mallinson | |
| | 2 | 1595834 | | 1926-08-10 | Griffiths | |
| | 3 | 2103109 | | 1937-12-21 | De Mar | |
| | 4 | 2273706 | | 1942-02-17 | Hafner | |
| | 5 | 2400781 | | 1946-05-21 | Priour | |
| | 6 | 2417803 | | 1947-03-25 | De Mar | |
| | 7 | 3141443 | | 1964-07-21 | Huey | |
| | 8 | D228926 | | 1973-10-30 | Bennett | |

<table>
<tr><td></td><td></td><td></td><td></td><td></td></tr>
</table>

| | | | | | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | | Application Number | | 29404184 | |
| | | Filing Date | | 2011-10-17 | |
| | | First Named Inventor | | Mark Cohen | |
| | | Art Unit | | 2913 | |
| | | Examiner Name | N/A | | |
| | | Attorney Docket Number | | MRC-35246 | |

| | | | | | |
|---|---|---|---|---|---|
| 9 | 3792687 | | 1974-02-19 | Ehrman | |
| 10 | 4095562 | | 1978-06-20 | Graham | |
| 11 | 4290386 | | 1981-09-22 | Eiriksson | |
| 12 | 4355600 | | 1982-10-26 | Zielinski | |
| 13 | 4527991 | | 1985-07-09 | Msarsa | |
| 14 | 4577591 | | 1986-03-25 | Wesseldine | |
| 15 | 4813949 | | 1989-03-21 | O'Rourke | |
| 16 | 4996949 | | 1991-03-05 | Wunderman et al. | |
| 17 | 5005525 | | 1991-04-09 | Stanton | |
| 18 | 5146874 | | 1992-09-15 | Vidal | |
| 19 | D334252 | | 1993-03-23 | Stubbs | |

<table>
<tr><td colspan="2"><strong>INFORMATION DISCLOSURE STATEMENT BY APPLICANT</strong><br>( <strong>Not for submission under 37 CFR 1.99</strong>)</td><td>Application Number</td><td>29404164</td></tr>
</table>

| | | | | | |
|---|---|---|---|---|---|
| | | | Application Number | 29404164 | |

| Field | Value |
|---|---|
| Application Number | 29404164 |
| Filing Date | 2011-10-17 |
| First Named Inventor | Mark Cohen |
| Art Unit | 2913 |
| Examiner Name | N/A |
| Attorney Docket Number | MRC-35246 |

| | | | | | |
|---|---|---|---|---|---|
| 20 | 5226386 | | 1993-07-13 | Thoma | |
| 21 | 5234421 | | 1993-08-10 | Lowman | |
| 22 | 5359963 | | 1994-11-01 | Jesse et al. | |
| 23 | D363572 | | 1995-10-24 | Obenchain | |
| 24 | D368338 | | 1996-03-26 | Levengood | |
| 25 | 5537954 | | 1996-07-23 | Beeghly et al. | |
| 26 | 5555847 | | 1996-09-17 | Kelly | |
| 27 | 5632235 | | 1997-05-27 | Larsen et al. | |
| 28 | 5662640 | | 1997-09-02 | Daniels | |
| 29 | 5887772 | | 1999-03-30 | Dooley | |
| 30 | D406410 | | 1999-03-02 | Pasqua | |

**A284**

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Not for submission under 37 CFR 1.99) | | Application Number | | 29404184 |
|---|---|---|---|---|
| | | Filing Date | | 2011-10-17 |
| | | First Named Inventor | | Mark Cohen |
| | | Art Unit | | 2913 |
| | | Examiner Name | N/A | |
| | | Attorney Docket Number | | MRC-35246 |

| | 31 | 5941199 | | 1999-08-24 | Tamura | |
|---|---|---|---|---|---|---|
| | 32 | 5954015 | | 1999-09-21 | Ohta | |
| | 33 | 6024055 | | 2000-02-15 | Jesse Sr. et al. | |
| | 34 | D427734 | | 2000-07-04 | Balzarini | |
| | 35 | D429390 | | 2000-08-08 | Grady et al. | |
| | 36 | D429391 | | 2000-08-08 | Grady et al. | |
| | 37 | 6142105 | | 2000-11-07 | McKnight | |
| | 38 | 6234117 | | 2001-05-22 | Spatt | |
| | 39 | 6267083 | | 2001-07-31 | Chimienti | |
| | 40 | 6368313 | | 2002-04-09 | Howard | |
| | 41 | 6481383 | | 2002-11-19 | Ross et al. | |

<table>
<thead>
<tr><th colspan="2">INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT<br>( Not for submission under 37 CFR 1.99)</th><th>Application Number</th><th>29404164</th></tr>
</thead>
</table>

| | | | | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE**<br>**STATEMENT BY APPLICANT**<br>**( Not for submission under 37 CFR 1.99)** | | Application Number | 29404164 | |
| | | Filing Date | 2011-10-17 | |
| | | First Named Inventor | Mark Cohen | |
| | | Art Unit | 2913 | |
| | | Examiner Name | N/A | |
| | | Attorney Docket Number | MRC-35246 | |

| | | | | | |
|---|---|---|---|---|---|
| | 42 | 6557497 | | 2003-05-06 | Milligan |
| | 43 | D480842 | | 2003-10-14 | Grodecki |
| | 44 | 6651649 | | 2003-11-25 | Spencer |
| | 45 | 6675745 | | 2004-01-13 | Brewington |
| | 46 | 6827044 | | 2004-12-07 | Lobanoff et al. |
| | 47 | 6837191 | | 2005-01-04 | Brewington |
| | 48 | 6895901 | | 2005-05-24 | Howard |
| | 49 | 6935278 | | 2005-08-30 | Brewington |
| | 50 | D634487 | | 2011-03-15 | Cohen |
| | 51 | D634488 | | 2011-03-15 | Cohen |
| | 52 | D634901 | | 2011-03-22 | Cohen |

Case: Case 1:10-cv-00433-PAG Doc #: 54-5 Filed: 10/15/13 Page: 135 of 138 PageID #: 746

Mark Cohen, 5/9/2012

**45**

1      A.   If you put it on a dog in front
2  of me then I would testify that it is on a
3  dog.
4      Q.   Is there any reason you can
5  think of, looking at this today, it wouldn't
6  fit on a dog?
7      A.   Only that the arms are more
8  towards the side.
9      Q.   Okay.  What do you mean by more
10 towards the side?
11     A.   I mean they're more towards the
12 side, not angled in.
13     Q.   But they're flexible, right?
14 They can flex just like you flexed?
15     A.   It's the difference between a
16 raglan style and a drop sleeve.  Do you know
17 what that is?
18     Q.   I do not.  Please tell me.
19     A.   It's the cut and the sew that is
20 the difference.
21     Q.   Okay.  So what type of -- what
22 cut is this?
23     A.   Somewhere in between the two.
24     Q.   Okay.  What is the cut in your

**46**

1  design patent, in the football jersey shown
2  in your design patent?
3      A.   A raglan style, R-A-G-L-A-N.
4      Q.   And how do you know that,
5  looking at the design patent?  Just because
6  of your expertise in design?
7      A.   Correct.
8      Q.   Have you ever seen the jersey I
9  just handed you?
10     A.   No.
11     Q.   Okay.  You'll agree it has
12 stitching on it --
13     A.   Yes.
14     Q.   -- correct?  You'll agree it's
15 made primarily of a mesh material?
16     A.   Yes.
17     Q.   Okay.  Is it made of an
18 interlock material, as well?
19     A.   Can't tell.
20     Q.   You can't tell, looking at it,
21 if it's interlock?
22     A.   No.
23     Q.   Okay.  Do you think this jersey
24 is similar to the one shown in your design

**47**

1  patent?
2      A.   No.
3      Q.   Not in any respect?
4      A.   Other than it's a jersey.
5      Q.   Okay.  All right.  I think I'm
6  done with that one.  If you want to go off
7  the record.
8      (Off the record.)
9      (Exhibit 6 was marked.)
10     Q.   Mr. Cohen, I'm going to show you
11 another jersey, which is a green jersey with
12 an Eagles logo on it.  Would you agree with
13 that?
14     A.   Yes.
15     Q.   Do you know who designed this
16 jersey?
17     A.   Yes.
18     Q.   Who was that?
19     A.   Me.
20     Q.   You designed it.  When did you
21 do that?
22     A.   Somewhere between the years 2007
23 and nine maybe.
24     Q.   Okay.  So two year span.  You

**48**

1  don't have any more specific recollection?
2      A.   Sometimes I can't remember what
3  I had for breakfast yesterday.
4      Q.   Fair enough.  But you don't have
5  that recollection, I guess is my question?
6      A.   I do not.
7      Q.   Okay.  Do you recall in what
8  capacity you designed it?  Did somebody ask
9  you to design it?
10     A.   Yes.
11     Q.   Who was that?
12     A.   Salespeople at Hunter
13 Manufacturing.
14     Q.   Okay.  Do you recall their
15 names?
16     A.   It could have been a number of
17 different people.
18     Q.   Okay.
19     A.   Lance Hurst, Michael Custer.
20     Q.   These were employees of Hunter,
21 as you understood it?
22     A.   Yes.
23     Q.   Okay.  Who were you working for
24 at the time you designed this jersey?

Case: Case:13:04533-PAG Doc: Dom: 50-45 Filed: 12/30/12 Page: 136 of 15 of 13 ID #: 747

**57**

1 involvement in that process was, I guess.
2     A.  In communicating with the
3 factory?
4     Q.  Yes.
5     A.  Okay. I would go there or I
6 would call them or I would e-mail them.
7     Q.  Okay. You would set this
8 process in motion?
9     A.  The processes are set in
10 motion --
11     Q.  Okay.
12     A.  -- from a global standpoint.
13     Q.  Then you just walked away? You
14 don't know what happened after that?
15     A.  Pretty much, yeah. I don't -- I
16 didn't need to. I was in sales. I wasn't in
17 other departments. Not logistics, not
18 traffic, not billing.
19     Q.  Right, but you were in sales?
20     A.  I knew I sold it but after that
21 it's not -- I don't -- it's like handing a
22 baton off. It's like asking me what happened
23 in the second leg of the race. I mean, I
24 assume they ran from A to B.

**58**

1     Q.  You just said you knew you sold
2 it. When I asked you earlier I think you
3 said you didn't have any involvement in the
4 sale of it?
5     A.  Well, of course I sold it.
6     Q.  Okay.
7     A.  That's what salespeople do.
8     Q.  Right. Who did you sell it to?
9     A.  Probably was Barry Faulkner.
10     Q.  Who is Barry Faulkner?
11     A.  Purchasing guy at Hunter.
12     Q.  Do you think the design of this
13 jersey is similar to the one shown in your
14 design patent?
15     A.  No.
16     Q.  You don't?
17     A.  No.
18     Q.  Does it include decorative
19 stitching?
20     A.  On the top part, yes.
21     Q.  Okay. Does it include a
22 neckband?
23     A.  A neck, of course.
24     Q.  Does it include an armband?

**59**

1     A.  It's trim, yes.
2     Q.  Trim on the sleeve. Yes?
3     A.  Yes.
4     Q.  It has a body, size and shape to
5 fit for a dog?
6     A.  Yes.
7     Q.  You testified earlier about this
8 raglan, and I forget the other term.
9     A.  Drop sleeve.
10     Q.  Drop sleeve. Does this have
11 that similar to what's in your design patent?
12     A.  Yes.
13     Q.  It does. And it includes mesh,
14 you would agree with that?
15     A.  It does.
16     Q.  It has band around what I would
17 call the tail portion of the garment?
18     A.  It does.
19     Q.  Does it include non-mesh
20 material, as well?
21     A.  It does.
22     Q.  Okay. Is this interlock
23 material?
24     A.  I think so.

**60**

1     Q.  Okay. How can you tell?
2     A.  I can feel it.
3     Q.  Okay. So it has a texture that
4 allows you to be able to tell that it's
5 interlock?
6     A.  It does.
7     Q.  Okay. Now it appears -- if
8 you'll flip it over it appears to have a
9 portion that covers the dog's back. Would
10 you agree with that?
11     A.  Meaning this? Yes.
12     Q.  Correct. Just for the record he
13 pointed to the back of the jersey. And
14 you'll agree it has a portion, if you flip it
15 back over, that exposes a dog's underside or
16 belly, at least partially?
17     A.  Yes.
18     Q.  Has a portion that covers the
19 dog's chest?
20     A.  Yes.
21     Q.  Okay. You would agree this
22 appears to be a football jersey for a dog,
23 correct?
24     A.  Yes.

ically signed by Valerie Jones Conn (401-133-571-6952)     5ad4ea4c-72ed-42d0-9c21-52cdc4d0e5be

**65**

1  belly, if you flip it over?
2      A.  Yes.
3      Q.  Has a portion that covers the
4  dog's chest?
5      A.  Yes.
6      Q.  Okay.
7      A.  What is the purpose of showing
8  me this?  It's got no date, you can't tell
9  when it's from.  It's made of a different
10  material.
11          MR. DIGGES:  Wait for a
12  question, please.
13      Q.  So your testimony here today is
14  you've never seen a jersey styled like this
15  before?
16      A.  Don't recall, no.
17      Q.  So you didn't design this
18  jersey?
19      A.  Not that I know of, no.
20      Q.  You don't know when this jersey
21  was first offered for sale or sold?
22      A.  No, not that I recall.
23      Q.  Okay.
24          MR. DORISIO:  Can we take a

**66**

1  break, if you don't mind?
2          MR. DIGGES:  Sure.
3      (Break taken.)
4      Q.  I'm going to show you the jersey
5  of Exhibit 5 again, which has an AC/DC logo
6  on it, it's red.  You've seen this before,
7  correct?
8      A.  Today, yes.
9      Q.  We talked a little bit about
10  whether this could be made for a dog or not,
11  or fit on a dog and you testified, I think,
12  that the sleeves were sort of a different
13  construction than would normally be of the
14  type for a dog jersey, right?
15      A.  I said it's possible.
16      Q.  It's possible.  But it appears
17  to have, just like we've discussed with the
18  other jerseys, a portion for covering a dog's
19  chest?  Portion for chest?  Yes?
20      A.  Yes.
21      Q.  Or underbelly, underside, a
22  portion for covering a dog's back, if you
23  flip it over, correct?  If you flip it back
24  over there's sort of a cutout at the bottom,

**67**

1  right, to allow the dog's belly to be
2  exposed, correct?
3      A.  I don't know the function, if
4  that's what you're saying.  Those are your
5  words.
6      Q.  You'll agree the back panel, if
7  you will --
8      A.  Is open.
9      Q.  -- appears to be longer than the
10  front so there's an opening for them,
11  correct?
12      A.  Yes.
13      Q.  Thank you.
14      (Exhibit 8 was marked.)
15      Q.  Mr. Cohen, I'm going to show you
16  another jersey, ask you if you recognize
17  this?
18      A.  Recognize it in terms of what?
19      Q.  Have you ever seen it before?
20      A.  No, not that I remember.
21      Q.  Besides the green jersey I
22  handed you earlier have you ever seen one
23  like it before?
24      A.  I may have.

**68**

1      Q.  Okay.  Could you look at the tag
2  on the inside of the jersey for me?
3      A.  Yeah.
4      Q.  Tell me what it says.  Can you
5  tell me if -- the date it was manufactured
6  based on what's on the inside tag?
7      A.  August 20th, '09.
8      Q.  You had no hand in the
9  manufacture of this jersey?
10      A.  I don't know that.
11      Q.  It has a mesh material, would
12  you agree with that?
13      A.  Yes.
14      Q.  It also has what appears to be a
15  polyester material; is that correct?
16      A.  Yes.
17      Q.  Is that interlock fabric?
18      A.  No.
19      Q.  How can you tell?
20      A.  Feel.
21      Q.  Okay.  So what would you call
22  that fabric?
23      A.  Dazzle.
24      Q.  Dazzle.

ically signed by Valerie Jones Conn (401-133-571-6952)          5ad4ea4c-72ed-42d0-9c21-52cdc4d0e5be

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 15th day of October, 2013, I caused this Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Andrew D. Dorisio
Trevor T. Graves
KING & SCHICKLI, PLLC
247 N. Broadway
Lexington, Kentucky  40507
(859) 252-0889

*Counsel for Appellee Hunter MFG., LLP*

Peter J. Saidman
SAIDMAN DESIGNLAW GROUP, LLC
8601 Georgia Avenue, Suite 603
Silver Spring, Maryland  20910
(310) 585-8601

Edward D. Manzo
Mark J. Murphy
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois  60606
(312) 655-1500

*Counsel for Appellees*

*Counsel for Appellee CDI International, Inc.*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Joint Appendix will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Randolph E. Digges, III
*Counsel for Appellant*